Michael Machat, Esq. SB#109475
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com

David A. Randall (SBN 156722)
dave@hdmnlaw.com
Ehab Samuel (SBN 228296)
esamuel@hdmnlaw.com
HACKLER DAGHIGHIAN MARTINO & NOVAK P.C.
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Plaintiff
Vampire Family Brands, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| VAMPIRE FAMILY BRANDS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>S.C. CRAMELE RECAS, S.A., TRI-VIN IMPORTS, INC and DOES 1 – 20,<br><br>Defendants. | ) | CASE NO.<br><br>Related Case: 2:06-cv-07793-VBF-JWJ<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff VAMPIRE FAMILY BRANDS, LLC hereby alleges and asserts:

## I. JURISDICTION AND VENUE

1. Plaintiff brings this action for injunctive relief and damages arising out of a breach of a stipulated judgment as well as the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

2. This action arises under the Trademark Laws of the United States, including particularly, Section 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. Jurisdiction is conferred on this Court by 15 U.S.C. Section 1121(a), by 28 U.S.C. Section 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*, and by principles of pendent jurisdiction. Venue is proper in this District under 28 U.S.C. §§ 1391(b).

3. Jurisdiction is also conferred on this Court by 28 U.S.C. §§ 1332 in that the parties are citizens of different states and that the amount in controversy exceeds $75,000.

## II. THE PARTIES

4. Plaintiff VAMPIRE FAMILY BRANDS, LLC ("VAMPIRE FAMILY BRANDS") is a Delaware Limited Liability Company with its main business office located in Los Angeles County, California.

5. Defendant S.C. CRAMELE RECAS, S.A ("CRAMELE RECAS") is upon information and belief, a winery located in Recas, Romania. Cramele Recas has waived any jurisdictional challenge it might conceivably have had to this case when it executed the Stipulated Judgment attached to this Complaint as Exhibit 1.

6. Defendant Tri-Vin Imports, Inc ("Tri-Vin") is a New York corporation with its corporate offices located in New York. Tri-Vin is a US

Importer for Cramele Recas and an agent of Cramele Recas's for its wine sales in the U.S.  Tri-Vin regularly does business in California, regularly buying wine from California that it resells around the country. Tri-Vin also have a California distributor, based in this district, that it sells wine to for distribution.  Tri-Vin regularly apply for and file trademark applications using a lawyer based in this District.  Tri-Vin representatives, including Marc Oliveira, regularly travel to California for wine shows such as the ECRM which has been held in rotating locations, including Napa, San Diego, and Orange County.  Tri-Vin are targeting sales of the accused product into California.

7.     TI Beverage Group, Ltd ("TI Beverage Group" or "TIBEV") is a Delaware Corporation that assigned its interest in the Vampire wine business to Plaintiff Vampire Family Brands in 2017, including its interest in the Settlement Agreement (discussed below) with defendant Cramele Recas.  TI Beverage Group is the predecessor in interest to Vampire Family Brands – both companies were and are primarily owned by Michael Machat, the founder and creator of the Vampire Brand, and Plaintiff's in-house counsel.

8.     Plaintiff does not know the true names or capacities of defendants named herein as DOES 1 through 20 inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names, capacities, and circumstances alleging the liability of said defendants at such time as the same is ascertained.  Plaintiff is informed and believes and, on that basis, alleges that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by the conduct of such defendants.

9.     At all times herein mentioned, Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, each of the defendants

sued herein, were the agents, servants, employees or attorneys of their co-defendants, and in doing the things hereinafter alleged were acting within the purpose, course and scope of such agency and employment, and with the authority, permission, and consent of their co-Defendants.

## III. FACTS GIVING RISE TO THIS ACTION

10. Plaintiff VAMPIRE FAMILY BRANDS via its predecessors in interest has been marketing food and beverages under the following brand names for many years, including: VAMPIRE (for wines – US Trademark Registration No. 2263907); DRACULA (for wine – US Trademark Registration No. 3319536); VAMPYRE (for Spirits – US Trademark Registration No. 3082097); VAMPIRE (for chocolate and coffee - US Trademark Registration No. 3669827) VAMPIRE for Olive oil and Balsamic vinegar – US Trademark Registration No. 4776927); VAMP H20 (for Water – US Trademark Registration No. 3895288); VAMPIRE (for Restaurant and Bar Services – US Trademark Registration No. 3978444); VAMPIRE (for Glass beverage-ware -- US Trademark Registration No. 3290011); and VAMPIRE TACO (for Tacos – US Trademark Registration No. 4939034).

11. By virtue of its extended use in commerce, several of the aforementioned registrations have become incontestable, including its registration numbers 2263907, 3082097, 3290011, 3319536, 3669827, and 3978444.

12. VAMPIRE FAMILY BRANDS also is the owner of the slogans TASTE OF IMMORTALITY and SIP THE BLOOD OF THE VINE, (TM Registrations 3167606 and 3079403, respectfully.) Both of these marks also have become incontestable.

13. The origin of Vampire wine, and VAMPIRE FAMILY BRAND's claim of right goes back to 1988, when its founder released a French bottled Algerian Syrah under the brand name Vampire. The first sale was to MCA

Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine."  Vampire Family Brand's predecessors in interest began to use the slogan "Taste of Immortality" by at least 1995, if not earlier.  Although the labels have changed over the years, along with the sourcing from Algeria to Italy to Transylvania and finally to Napa, the marketing has remained playful.

14.     However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was actually extremely good, with Vampire wine having won numerous gold medals throughout the years and winning scores of 90 Points and higher.

15.     Plaintiff via its predecessors' in interest expanded its wine and spirits business into gourmet quality foods, including Vampire Fine Belgian Chocolate and Vampire Gourmet Coffee (US Reg. No. 3669827) and Vampire Gourmet Olive Oil and Vampire Gourmet Balsamic Vinegar (US. Reg. No. 4776927).

16.     Plaintiff is also the owner of the US Registration No. 5444375 for the word mark VAMPIRE for Pre-mixed alcoholic beverages, other than beer based, and Prepared Alcoholic Cocktails.  Plaintiff has a great tasting Gourmet Bloody Mary cocktail, that it markets as its VAMPIRE Gourmet Bloody Mary Cocktail.

17.     Plaintiff's VAMPIRE family of brands are available for the world to see on its website VAMPIRE.COM, and Plaintiffs' family of VAMPIRE Brands have received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, The Star Tribune, The Chicago Sun Times, and many more.  In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper for approximately five minutes with Ashley Greene from

Twilight fame, CNN Headline News, MTV's Viva La Bam, Food TV, and many more.

18. In 2017 Plaintiff began selling VAMPIRE Gourmet Bloody Mary Cocktails in a can which are designed to be the go-to ready to drink premixed Bloody Mary, perfect for busy bars, outdoor venues, picnics, and anyone on the go wanting a gourmet ready to drink Bloody Mary cocktail.

19. Plaintiff also markets and sells wine branded as Dracula and has been doing so for more than a dozen years. Plaintiff is the owner of US Trademark Registration No. 3319536 or Dracula for wine.

20. Plaintiff's VAMPIRE wines have traditionally sold very well during the Halloween season. For example, in 2016, 2017, and 2018 VAMPIRE wine was a top selling wine in Publix during the month of October. VAMPIRE Cabernet and VAMPIRE Pinot Noir were the number 8 and 9 top selling red wines at Publix in October 2018--with the VAMPIRE Cabernet being the 4th bestselling cabernet in Publix during the month of October and VAMPIRE Pinot Noir being the 2nd bestselling Pinot Noir after Meiomi Pinot Noir.

**A. The Early Years of Vampire Wine**

21. Back in the mid-1980s, when Michael Machat first thought up the idea of branding a wine as Vampire all those he discussed the idea with thought he was crazy. They didn't get the marketing idea because back then wine was meant to be revered and the idea seemed almost sac-religious to the staid wine industry. But the idea stayed with Machat. At first, Machat attempted to find a winery supplier in Transylvania. That was in the late 1980's and Romania was a communist country. There was only one exporter of wine, government controlled, and they told him they already had a US Importer – Monsieur Henri, a subsidiary

of Pepsi Cola.  They also told Machat they had a UK importer, so they were not interested in hearing Machat's ideas.

22.    So unperturbed, beginning in 1988, Machat began selling in England, an Algerian Syrah, bottled in France, that was packaged in a coffin shaped box. The first customer was Alice Cooper's record company, MCA Records.

23.    In 1989, Machat moved the production to Italy.  Around that time he exported some of his Vampire Wine to the US, which found its way to the Anne Rice Fan Club in New Orleans.

24.    After the Berlin Wall fell, Machat contacted the Pepsi Cola Company. He obtained a meeting with the man who ran the US Romanian wine import side of the company.  He was about to retire, and after first presenting Machat's concept of marketing VAMPIRE Wine from Transylvania to his employer (who passed), he agreed to introduce Machat to the people that ran the Romanian export operation in Bucharest.

25.    A few months later, Machat was on his way to Transylvania where he began to source wine suitable for his nascent VAMPIRE brand.  There were many starts and stops, as the Romanian people didn't understand the concept.  Marketing had been illegal since 1945, and the Romanian people had no idea how to market.

26.    For example, when Machat first arrived at Bran Castle in 1991, the castle where Vlad Tepes—also known as Dracula—lived, and the place—some say—that inspired Bram Stoker to write Dracula, was nothing but a furniture museum.

27.    As Machat toured wineries, some winemakers screamed in horror when told that Machat wanted to label their prized wine as VAMPIRE.

28.    Machat persevered and eventually he was able to find Romanian wineries to supply wine for his VAMPIRE brand.  Unfortunately, over the years,

the supply was not consistent and problems always seemed to arise. So Machat kept changing wineries in Romania looking for a satisfactory one.

29.     Eventually Machat met Philip Cox, an Englishman who runs Cramele Recas with his Romanian wife, Elvira Cox. Machat trusted them and arranged for Cramele Recas to make Vampire wine.

30.     Unfortunately, they became greedy and got tired of listening to Machat's quality control demands. They decided to come out with their own wine brand that took elements of Machat's designs.

31.     At that time, and still to this day, Machat's VAMPIRE wine labels, featured a V with a drop of blood at the beginning of the word Vampire. The back of Machat's labels used to say "The Legend Lives."

32.     Eventually Machat discovered that Cramele Recas was selling wine with a prominent V (both with a drop of blood and without) over the words "The Legend Lives" and the word Transylvania, falsely giving the impression that the wine was the same wine as Vampire wine. TI Beverage Group sued for trademark infringement and during the discovery process acquired video footage from over twenty retail stores in which store clerks were telling patrons the counterfeit wine was the same as VAMPIRE Wine.

33.     At that time, TI Beverage Group had a credit line with the winery for approximately one million dollars. In the fall of 2006, TI Beverage withheld payment otherwise due to Cramele Recas but for the trademark infringement and put the amount owed to Cramele Recas into a CD. Later that year, TI Beverage Group sued Cramele Recas and Cox for trademark infringement.

34.     The case settled, and the parties executed a Stipulated Judgment which was signed by the Judge and became an Order of this Court. It provided in part that, in exchange for TI Beverage Group paying Cramele Recas Five Hundred

Fifty Thousand Dollars, Cramele Recas and Cox and each of their agents and assigns agreed to cease and desist from any of the following:

> Using Vampire, Vampyre, Vampire Vineyards, Vamp, the Vamp icon, or any other word or words or marks which are confusingly similar to, or a colorable imitation of any of the aforementioned trade names and marks, either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of beverage products and beverage accessories anywhere throughout the World.

35. The Settlement agreement also provided for liquidated damages of $10,000 per incident plus $1 a bottle sold, giving TI Beverage Group the option to forego the liquidated damages and seek the full extent of damages, if it chooses.

**B. Cramele Recas and Philip Cox's prior breach.**

36. Just several years after stipulating to the Judgment referenced above, Cramele Recas began selling a wine called DRACULA'S BLOODLUST to a company in Missouri. TI Beverage Group sued. In letters to Machat, Cox argued that Dracula was not covered by the settlement agreement even though he should have known Dracula is the most famous of all Vampires.

37. Cramele Recas defaulted and TI Beverage Group obtained a default judgment against Cramele Recas for $25,192. [Dkt No. 87 in related case 2:06-cv-07793-VBF-JWJ.]

38. In 2017, Vampire Family Brands acquired TI Beverage Group's interest in the Settlement Agreement and all aspects of the Vampire Wine business. Upon information and belief, the Missouri company stopped selling the infringing wine when it was sued.

**C. Cramele Recas and Philip Cox's latest breach.**

39. Now Cramele Recas and Cox have breached the settlement agreement again. This time they are selling a wine with a blood stained label and bats with the words, BLOODY MERLOT, from the land of the vampires. Other versions of the label say BLOODY MERLOT, from the LAND OF THE BLOOD SUCKERS. Cramele Recas is also selling a Cabernet Sauvignon version of these wines.

40. On the back label of the wines is a QVR code that when scanned shows Vampire bats flying in the air. As such, defendants are using the word vampire, an obvious synonym for vampire, and Vampire imagery to sell their wine – all in contravention of the Settlement Agreement.

D. **Tri-Vin's Connection to Cramele Recas and Philip Cox's latest breach.**

41. Defendant Tri-Vin is acting as defendant Cramele Recas's agent and importer for the accused product. They are importing the accused product into the United States. Sometime in August of this year, they posted an ad for the accused product on Facebook, and when asked where will it be available, they answered "everywhere." When asked in California too, they answered "yes."

42. Tri-Vin is no stranger to Vampire Wine. In fact, Tri-Vin was the first large customer of Plaintiff's founder, Michael Machat, for Vampire Wine.

43. From 1995 through approximately 2017, with the exception of a couple of years in the late 2000s, Plaintiff's predecessors in interest sold its Vampire wine to Tri-Vin for Tri-Vin to distribute.

44. In the early 2000's, when TI Beverage Group switched Romanian producers and began doing business with Cramele Recas, Tri-Vin followed and began its own business relationship with Cramele Recas, importing various non-infringing wines from Cramele Recas over the years.

45.    Just prior to TI Beverage Group suing Cramele Recas in 2006, TI Beverage Group stopped selling VAMPIRE wine to Tri-Vin and began to sell to Southern Wine & Spirits in NY.

46.    Not long afterwards, Tri-Vin created and began selling Werewolf Wine from Romania, as a thematic replacement to VAMPIRE Wine.   Werewolf was also supplied by Cramele Recas.   Tri-Vin apparently didn't care what Werewolf tasted like, but instead just wanted a wine from Transylvania.  Their lack of care in the quality showed.

47.    Nevertheless, in or around 2008, for reasons unrelated to this lawsuit, TI Beverage Group and Southern Wine & Spirits relationship soured, and Tri-Vin agreed to become the NY distributor for Vampire once again.

48.    This time around, however, the sourcing of Vampire wine had changed.  In 2007, TI Beverage Group and Machat moved the sourcing of the wine from Transylvania to California, first Paso Robles and ultimately Napa in 2009, to take better control over the brand.

49.    Overnight, the wine quality became much better and consistent compared to when the wine was produced in Romania.   The California based Vampire wine gets lots of critical acclaim and wins gold medals.  That was not the case with the Transylvania predecessor, although there was a period when VAMPIRE Pinot Grigio won a gold medal, but inexplicable a year later, to save a nickel the winery TI Beverage Group were working with cut the quality.  Such was the frustrating mentality TI Beverage Group had to put up with when sourcing its wine from Romania.

50.    As time went by, it seemed Tri-Vin were improperly linking TI Beverage Group's critically acclaimed VAMPIRE wine with the not so good tasting Werewolf wine from Romania, and selling them together.  Wanting to disassociate TI Beverage Group's gold medal winning VAMPIRE brand from Tri-

Vin's lesser quality Werewolf wine, in 2017, TI Beverage Group once again switched distributors in NY and stopped selling VAMPIRE wine to Tri-Vin.

51. Apparently Tri-Vin have missed selling VAMPIRE wine and now they have unlawfully aided Carmele Recas's breach of the settlement agreement, and conspired with Cramele Recas to produce a confusingly similar product, which has led to this lawsuit.

52. Plaintiff first came to learn about the accused product after Tri-Vin posted an ad on Facebook showing a short video of Vampire bats flying around that followed a picture of the label that says, "BLOODY MERLOT FROM THE LAND OF VAMPIRES." Plaintiff Vampire Family Brands was alerted to this by someone who thought it was a new offering by Plaintiff.

D. **More background on Plaintiff and Vampire Wine.**

53. Plaintiff markets its brands through a national network of wholesalers, and via the website: www.vampire.com. VAMPIRE wine sells for anywhere between $10 to $15 per bottle nationally at retail stores. Vampire wine is also available in bars and restaurants on wine lists.

54. Plaintiff and its associates have worked hard to insure that they put the best wine in the bottle as possible. Over the last few years, Plaintiff's VAMPIRE family of wines have received some great reviews and have won Gold Medals, including Gold Medals at the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, Vampire Pinot Noir, a Gold Medal and 92 Rating from the Los Angeles International Wine & Spirits Competition awarded to Vampire Cabernet Sauvignon, Gold Medals at the Texas International Rodeo Wine Competition, and 92 and 97 ratings for its highest end Trueblood Cabernet Sauvignon.

55. Plaintiff has spent substantial amounts of time and money building up, advertising, and promoting its brands. By virtue of the popularity of its brands, its

advertising, promotion, and sales, plus the popularity of its websites, including vampire.com, Plaintiff has built up and owns extremely valuable goodwill which is symbolized by Plaintiff's various marks.

56. Each of the Defendants knew of Plaintiff's VAMPIRE family of brands, including VAMPIRE Wine, but decided to go ahead with their plans to advertise, market and sell wine bearing the word Vampire or suggesting Vampire anyway, because they believed that they could get away with it and they wanted to make easy money capitalizing on Plaintiff's built up goodwill over the years.

57. If Defendants are not stopped from marketing wine with a name such as Vampire or making obvious references to Vampire then consumers will be confused as to the source of origin of defendants' confusingly similar wine.

58. Also, if defendants are not stopped from marketing wine with Plainiff's Vampire mark or a name obviously suggesting Vampire, it is likely that consumers will become confused about the source and origin of Plaintiff's products, and mistakenly conclude that Plaintiff's products are produced by or otherwise associated with Defendants.

## COUNT I

## BREACH OF CONTRACT

**(Against Cramele Recas and Does 1 – 10)**

59. Plaintiff repeats each allegation contained in paragraphs 1 through 58 as though set forth herein at length.

60. A copy of the Stipulated Judgment in the case entitled *TI Beverage Group, LTD v S.C. Cramele Recas S.A. et al* in Case No. CV-06-7793 VBF is attached as Exhibit 1 to this Complaint. The Stipulation is a contract ("the Contract") agreed to by TI Beverage Group and Cramele Recas and Philip Cox. Vampire Family Brands is the assignee of TI Beverage Group.

61.     As described above, in addition to violating a Court Order, Cramele Recas and Philip Cox and their agents breached Paragraph A. 1 of the Contract by:

(i)  Using the word Vampire in connection with the sale of beverages;

(ii) Using the word Vampire in connection with the advertising of beverages;

(iii) Using the word Vampire in connection with the promotion of beverages;

(iv) Using other words (such as BLOOD SUCKERS) which are confusingly similar to or a colorable imitation of vampire in connection with the sale of beverages;

(v)   Using other words (such as BLOOD SUCKERS) which are confusingly similar to or a colorable imitation of vampire in connection with the advertising of beverages;

(vi)  Using other words (such as BLOOD SUCKERS) which are confusingly similar to or a colorable imitation of vampire in connection with the promotion of beverages;

62.     As a result of all the breaches to the Contract, Plaintiff asks that this Court order the defendants pay as damages, Plaintiff's lost profits, calculated by multiplying Plaintiff's average profit per bottle of wine times the total number of accused products sold by defendants.

63.     In addition, and/or in the alternative, Plaintiff seeks recovery of all sums paid to defendants and each of them for sales of the accused product.

64.     In addition, and/or in the alternative, Plaintiff seeks its liquidated damages of $10,000 per incident plus $1 per bottle sold.  Plaintiff reserves the right to make its election of remedies closer to the time of trial.

65.     Plaintiff also seeks its Attorney Fees and Costs as provided for in the Settlement Agreement.

## COUNT II

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

**(Against Cramele Recas and Does 1 – 10)**

66. Plaintiff repeats each allegation contained in paragraphs 1 through 65 as though set forth herein at length.

67. The Contract contains a covenant implied by law that defendants and each of them will act toward Plaintiffs in good faith and fair dealing.

68. The implied covenant of good faith and fair dealing imposes upon defendants and each of them, the duty not to take any action with the motive to frustrate Plaintiff's enjoyment of rights under the Contract.

69. Unfortunately, defendants have done just what the covenant of good faith and fair dealing prohibits them from doing by taking action designed to frustrate Plaintiff's enjoyment of rights under the Contract.

70. Defendants conspired to utilize Plaintiff's VAMPIRE mark on beverage products by selecting a term (i.e. BLOOD SUCKER, as used in "FROM THE LAND OF BLOOD SUCKERS") to attempt to frustrate Plaintiff's enjoyment of rights under the Contract.

71. Defendants improper use of words and images in selling, advertising and promoting wine, as described herein amounts to a violation of the covenant of good faith and fair dealing.

## COUNT III

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

**(Against Tri-Vin And Does 11 - 20)**

72. Plaintiff repeats each allegation contained in paragraphs 1 through 70 as though set forth herein at length.

73. Defendant Tri-Vin knew that Plaintiff had a contractual relationship with Cramele Recas and intentionally interfered with that relationship. Tri-Vin's conduct prevented and interfered with Plaintiff from enjoying the benefits of the Contract its predecessor in interest made with Cramele Recas. Tri-Vin's acts and omissions were intentional and done knowing that they would be disrupting and interfering with Plaintiff's business in California and elsewhere.

74. As a result of Tri-Vin's wrongful acts and omissions, Plaintiff has been damaged in a sum to be proven at trial but is estimated to be at least One Hundred Fifty Thousand Dollars. Defendant Tri-Vin's acts of interference with Plaintiff's contract with Cramele Recas were done intentionally to deprive the Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice or oppression under California Civil Code Section § 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendant Tri-Vin.

## COUNT IV

## VIOLATION OF LANHAM ACT 15 U.S.C. §1114

**(Against All Defendants)**

75. Plaintiff repeats each allegation contained in paragraphs 1 through 74 as though set forth here at length.

76. Plaintiff and its predecessors in interest long have used the word "blood" and images of blood in their marketing, beginning with the slogan, "Sip the Blood of the Vine," a registered trademark that Machat first used in 1988.

77. In 1997 or 1998, Plaintiff's predecessors in interest first began to market its products with a drop of blood hanging off the end of the letter V (for Vampire). Plaintiff owns an incontestable trademark for this image – US Trademark Registration Number 4196305.

78.   At one point, Plaintiff's predecessors in interest were actively selling a Romanian wine called Dracula's Blood, for which it had a trademark.  Plaintiff still have some of this wine.   Unfortunately, even the people that worked for Plaintiff's predecessors in interest got confused between Plaintiff's Napa Carneros Dracula Pinot Noir (which retails for approximately $35) with the far less expensive Dracula's Blood Pinot Noir.  Occasionally the warehouse would ship the expensive Carneros Dracula Pinot Noir instead of the less expensive Dracula's Blood.

79.   Additionally, Plaintiff sell a Spanish sangria, playfully branded as FANGRIA.   Plaintiff has an incontestable trademark registration for this too, US Trademark registration no. 4451648.   Plaintiff's promotional materials for FANGRIA feature illustrations of vampires, bats and blood.

80.   Also, Plaintiff's Vampyre Vodka is blood red.  One of the attributes that many like about it is that there is so much red coloring that it turns your lips red, so people know if someone's been drinking it.

81.   So defendants use of blood and blood images and bats, in conjunction with the word "vampire" or colorable imitations of "vampire" such as "blood sucker," in connection with wine is similarly confusing to Plaintiff's family of VAMPIRE Trademarks.  Defendants have committed trademark infringement of Plaintiff's trademarks in their deceptive marketing of wine, using VAMPIRE or other similarly confusing names.

82.   Defendants have induced others to infringe Plaintiff's trademarks and trade names.

83.   Defendants have acted with bad intent and culpably in selecting using, and/or approving of the use of Plaintiff's trademarks and other words and/or images in the distribution, marketing, promotion, advertisement, offering for sale, and/or sale of wine.

84.   Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, beverage products branded under the VAMPIRE mark or other similarly confusing names, and continue to do so.   Defendants have promoted, advertised, offered for sale, and/or sold, beverage products using the VAMPIRE mark through persons not authorized, employed by, or associated in any way with Plaintiff and have used the aforementioned trade names and trademarks as false designation and false representation for beverages.

85.   None of the activities alleged in this complaint have been authorized by Plaintiff, and such unauthorized use by Defendants of Plaintiff's trademarks and/or trade names in interstate commerce, commerce substantially affecting interstate commerce in this district, and elsewhere throughout the United States, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names, and such activities are likely to cause confusion, mistakes, and to deceive the public at large.

86.   Upon information and belief, Defendants have acted with the unlawful purpose of:

  a.   Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

  b.   Soliciting Plaintiff's customers and/or potential customers, attempting to sell, and selling to such customers and potential customers, beverages marketed under the VAMPIRE mark and other confusingly similar names to Vampire through persons not authorized by, employed by, or associated in any way with Plaintiff;

  c.   Inducing others to infringe Plaintiff's trademarks and trade names; and

d. Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

87. Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1114.

88. If Defendants are allowed to continue marketing and selling the accused product, Plaintiff will be damaged as alleged in this complaint, and the Defendants will profit thereby. Furthermore, unless the Court permanently enjoins Defendants' conduct as alleged in this complaint, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

89. Defendants' aforementioned acts and conduct is being done willfully and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Plaintiff is therefore entitled to treble damages arising therefore, as well as reimbursement of Plaintiff's attorneys' fees and costs.

90. The intentional nature of defendants' acts makes this an exceptional case under 15 U.S.C. §1117(a).

91. The intentional nature of defendants' acts and conduct makes this a case suitable for an award of Three Times Defendants' profits. Further Defendants' acts of trademark infringement were done intentionally to deprive the Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice or oppression under California Civil Code Section § 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendants.

**COUNT V**

**VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)**

**(Against All Defendants)**

92. Plaintiff repeats each allegation contained in paragraphs 1 through 91 as though set forth here at length.

93. Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered Vampire family of marks.

94. Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, to be deceived, and to erroneously assume that Defendants' marketing and sale of their wine as packaged, advertised and promoted, are those of Plaintiff, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

95. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff. Furthermore, Plaintiff has not approved any of the goods or services offered or sold by the Defendants.

96. Defendants' aforesaid infringing conduct has been willful and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their accused wine will hurt the prospects of future commercial success of Plaintiff's VAMPIRE family of brands, including its VAMPIRE and DRACULA brands. Plaintiff is therefore entitled to treble damages arising therefore, as well as reimbursement of Plaintiff's attorneys' fees and costs. Further Defendants' acts of unfair competition under 35 U.S.C. § 1125(a) were done intentionally to deprive the Plaintiff of property, legal rights or to otherwise cause injury, such as to

constitute malice or oppression under California Civil Code Section § 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Defendants.

**COUNT VI**

**UNFAIR COMPETITION – COMMON LAW, AND CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et seq.**

**(Against All Defendants)**

97. Plaintiff repeats each allegation contained in paragraphs 1 through 96 as though set forth herein at length.

98. Defendants has engaged in unfair competition perpetrated against Plaintiff by reason of the conduct alleged herein.

99. The unlawful and unfair conduct is injuring the goodwill of Plaintiff.

100. Defendants are each liable for the unfair competition, and/or are liable for aiding and abetting such conduct.

101. By this conduct, Plaintiff has directly suffered injuries and each Defendant has been unjustly enriched.

102. Plaintiff is entitled to restitution, the recovery of damages, and the recovery of the profits earned by Defendants by virtue of their conduct.

103. As a consequence of the unfair competition by Defendants, Plaintiff is suffering irreparable injury, by reason of which such conduct should be enjoined.

104. Plaintiff is entitled to reasonable attorneys' fees.

105. Plaintiff is informed and believes, and on that basis allege, that the aforementioned conduct of Defendants is willful, oppressive, fraudulent, and malicious, and Plaintiff is therefore entitled to punitive damages.

## COUNT VII

## UNFAIR COMPETITION – COMMON LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500 et seq.

**(Against All Defendants)**

106. Plaintiff repeats each allegation contained in paragraphs 1 through 105 as though set forth here at length.

107. Defendants' use of the trade names and trademarks VAMPIRE and similarly confusing names, such as BLOOD SUCKERS misrepresents the nature, characteristics, identity, and source or sponsorship of Defendants' goods, constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, inter alia, California Business and Professions Code §§17500 et seq. and California common law.

108. Defendants' use of the trade name and trademark VAMPIRE and similarly confusing names, such as BLOOD SUCKERS and related trademarks misrepresents, and are likely to deceive and will continue to deceive the consuming public. Defendants knew, recklessly disregarded, or reasonably should have known that such packaging, advertising, marketing, and promotion was untrue and/or misleading.

109. As a result of the conduct described above, Defendants have been and/or will be unjustly enriched at the expense of Plaintiff and the general public. The interests of the general public and Plaintiff are, therefore, closely related.

110. Defendants have been unjustly enriched, among other things, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing Plaintiff's VAMPIRE FAMILY of branded beverage-alcohol products or accessories, both in California and throughout the world, but instead were purchasing Defendants' goods which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

111.   Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff, on behalf of itself and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendants immediately to cease such support for acts of unfair competition and false advertising, and enjoining Defendants from continuing to import or export, distribute, market, promote, advertise, offer for sale, and sell, Defendants' infringing beverage labels and/or beverage accessory products that contain any of Plaintiff's trademarks (or names confusingly similar to Plaintiff's trademarks) which falsely advertise or conduct business via the unlawful, deceptive, unfair or fraudulent business acts and practices, and the untrue and misleading advertising complained of herein. Plaintiff additionally requests an order disgorging Defendants' ill-gotten gains and restitution of all monies wrongfully acquired by Defendants by means of their support of such acts of unfair competition and false advertising, damages, interest and attorneys' fees.

WHEREFORE, Plaintiff prays for judgment as follows:

1.   That the Court adjudge and decree that Defendants have falsely designated the origin of certain beverage products as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such products, and have unfairly competed with Plaintiff at common law.

2.   That the Court adjudge and decree that Defendants have infringed Plaintiff's registered trademarks, including that for VAMPIRE.

3.   That the Court permanently enjoin Defendants, its agents, servants,

employees, attorneys, and all persons acting in concert or participation with them, or with any of them from:

    a.  Using VAMPIRE, BLOOD SUCKER, BLOOD or BATS or DRACULA, or any other word or words which are similar to, or a colorable imitation of, Plaintiffs' trade names and marks, (including VAMPIRO or  Vlad Tepes) either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of beverage products and beverage accessories;

    b.  Selling, offering to sell, marketing, distributing, advertising and/or promoting any BEVERAGE product or BEVERAGE accessory or label with the words VAMPIRE, BLOOD SUCKER, BLOOD, BATS or DRACULA displayed on the product, its packaging, advertising or promotional materials;

    c.  Representing directly or indirectly by words or conduct that any beverage product or beverage accessory offered for sale, sold, promoted, or advertised by Defendants, is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

    d.  Aiding or abetting in unfair competition against Plaintiff;

    e.  Aiding or abetting in false advertising; and

    f.  Inducing others to engage in any of these aforementioned acts.

    4.  That the Court award an amount to be determined at trial but at least an amount equivalent to treble the amount of Defendants' illicit profits or Plaintiff's lost profits, whichever is greater.

5.      That the Court award an additional amount to be determined at trial sufficient to cover the costs of prospective corrective advertising, which amount is requested to be at least ten times the amount of advertising dollars spent by defendants.

6.      That the Court decree that the intentional nature of defendants' acts and conduct makes this a case suitable for an award of Three Times Defendants' profits.

7.      Punitive and exemplary damages in an amount in excess of $2,000,000.

8.      That the Court, pursuant to the Settlement agreement, Order Cramele Reccas and Philip Cox  to pay $10,000 per incident plus $1 a bottle of accused product sold, giving Plaintiff the option to forego the liquidated damages and seek the full extent of damages, if it chooses.

9.      That the Court decree that the intentional nature of defendants' acts makes this an exception case under 15 U.S.C §1117(a).

10.     That the Court award Judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

11.     That the Court Order such other, further and different relief as the nature of this action may require and as the Court may deem just and proper.

12.     That the Court retain jurisdiction of this action for the purpose of

enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

Respectfully submitted,

Dated: September 8, 2020

By: *Michael Machat*

Michael Machat, Esq. (SBN 109475)
michael@machatlaw.com
**MACHAT & ASSOCIATES, P.C.**
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Tel.: (310) 860-1833

David A. Randall (SBN 156722)
dave@hdmnlaw.com
Ehab Samuel (SBN 228296)
esamuel@hdmnlaw.com
**HACKLER DAGHIGHIAN MARTINO & NOVAK P.C.**
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Plaintiff
Vampire Family Brands, LLC

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues raised by the Complaint.

Respectfully submitted,

Dated: September 8, 2020

By: Michael Machat

Michael Machat, Esq. (SBN 109475)
michael@machatlaw.com
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Tel.: (310) 860-1833

David A. Randall (SBN 156722)
dave@hdmnlaw.com
Ehab Samuel (SBN 228296)
esamuel@hdmnlaw.com
HACKLER DAGHIGHIAN MARTINO & NOVAK P.C.
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Plaintiff

# EXHIBIT 1

## (Copy of Stipulated Judgment – The Contract)

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

TI BEVERAGE GROUP, LTD., et al.
Plaintiffs,
vs.
S.C. CRAMELE RECAS S.A., et al.,
Defendants,

AND RELATED CASE

**Case No. CV-06-7793 VBF (JWJx)**

**STIPULATION AND [PROPOSED] ORDER FOR ENTRY OF JUDGMENT**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

This Stipulation and [Proposed] Order of Entry of Judgment ("Stipulation") is entered into by and between TI BEVERAGE GROUP, LTD., a Delaware Corporation dba TRANSYLVANIA IMPORTS , VAMPIRE, INC., CUPID WINES, INC. and MICHAEL MACHAT, an Individual, (collectively "TI" or the "TI parties"); and S.C. CRAMELE RECAS S.A., a Romanian company, PROVINUM SR, a Romanian Company; PHILIP COX, an Individual, and BASIL ZARNOVEANU, an Individual (collectively "the RECAS parties").

**RECITALS**

A. WHEREAS, to avoid the uncertainty and expense of litigation, the TI parties and the RECAS parties (collectively, "the Parties") now desire to settle all matters related to the Complaint and Counter-Claim by executing this Stipulation and request that the Court entered the same as an order and judgment of the Court;

B. WHEREAS, the following allegations are provided merely to give context to this Stipulation and in order to effectuate settlement of the Complaint and Counter-Claim. The following factual allegations may or may not be true. Any allegation made by the TI parties is disputed by the RECAS parties. Any allegation made by the RECAS parties is disputed by the TI parties.

C. WHEREAS the TI parties have alleged that MACHAT through various entities, including TI Beverage Group, Ltd., has been selling beverages under the Vampire brand for close to twenty years;

D. WHEREAS the TI parties have alleged that MACHAT is the owner of various Vampire related trademarks throughout the world, including amongst others, U.S. trademark registrations 2263907, 3082097, 2681906, 3196399, 3141345 for Vampire, Vampyre, Vamp, Vampire.com, Vamp icon respectively, and Canadian trademark registrations TMA535141, TMA651914, and TMA662183 for Vampire, Vampyre and V with blood drop logo respectively.

E. WHEREAS the TI parties have alleged that, beginning in approximately September of 1997, MACHAT began to use a V with a blood drop dripping off the V in Vampire as part of a design logo for his Vampire branded wines.

F. WHEREAS the TI parties have alleged that, on or about June 11, 2001 MACHAT, COX, and ZARNOVEANU, entered into an three-party agreement ("the Three-Party Agreement") which provided, amongst other things, that MACHAT would from time to time place orders for wine to be bottled under the VAMPIRE brand; COX via his winery would supply the wine bottled under the VAMPIRE brand to MACHAT or his designee; and that PROVINUM would bill MACHAT or his designee for the wine ordered.

G. WHEREAS the TI parties have alleged that the Three-Party Agreement also provided that the VAMPIRE brand was MACHAT'S property throughout the world; that the RECAS parties would not sell wine bearing the VAMPIRE mark to anyone throughout the world other than MACHAT or his designee; and that the RECAS parties would take all actions to protect MACHAT'S VAMPIRE brand throughout the world.

H. WHEREAS the TI parties have alleged that, in approximately 2002, MACHAT expanded his use of the V with blood drop by using it standing alone as a trademark for his VAMPYRE vodka in the U.S. and elsewhere.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

I. WHEREAS the TI parties have alleged that MACHAT has a pending trademark application no. 78605786 for the V with blood drop design;

J. WHEREAS the TI parties have alleged that, sometime in approximately April of 2005, RECAS began supplying wine to parties other than MACHAT (or MACHAT's designees) that was branded with a V that sometimes had a blood drop dripping of the V, and sometimes did not contain the blood drop dripping off the V;

K. WHEREAS in December of 2006, TI BEVERAGE GROUP LTD dba TRANSYLVANIA IMPORTS and MICHAEL MACHAT filed suit (Case No. CV-06-7793 VBF (JWJx) against the RECAS parties alleging breach of the Three-Party Agreement, trademark infringement, and unlawful competition;

L. WHEREAS the RECAS parties filed a Counter-Claim against the TI parties plus TRANSYLVANIA IMPORTS, INC., CUPIDO, PATHWAYTODARKNESS.COM, and VAMPIRE.COM alleging breach of contract for failure to pay for goods had and received, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, fraud, and trade libel amongst other claims;

M. WHEREAS PROVINUM and BASIL ZARNOVEANU allege the filing of the Complaint against them was malicious and without any foundation because PROVINUM and BASIL ZARNOVEAUNU allege that they had no dealings whatsoever with the entities the TI parties allege infringe on their intellectual property; and

N. WHEREFORE, in consideration of the mutual covenants and conditions contained and referenced here, the Parties agree as follows:

**I. ENTRY OF JUDGMENT**

A. THE RECAS PARTIES COVENANT

1. Each of the RECAS parties and each of their agents and assigns agree to cease and desist from any of the following:

a. Using Vampire, Vampyre, Vampire Vineyards, Vamp, the Vamp

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

icon, or any other word or words or marks which are confusingly similar to, or a colorable imitation of any of the aforementioned trade names and marks, either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of beverage products and beverage accessories anywhere throughout the World.

b. Using the letter V, as a trademark, either alone, or with a blood drop, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of beverage products and beverage accessories anywhere throughout North America.

c. Representing directly or indirectly by words or conduct that any beverage product or beverage accessory offered for sale, sold, promoted, or advertised by any of the RECAS parties, is authorized, sponsored by, endorsed by, or otherwise connected with any of the TI parties.

2. As additional consideration for the Settlement Agreement, the RECAS parties agree to the following:

a. Provide a complete accounting of all VAMPIRE labeled wine sold by the RECAS parties over the last thirteen months to any entities other than the TI parties unless an accounting has already been provided to the TI parties within six months from the date this judgment is entered;

b. Immediately cease and desist from selling any VAMPIRE labeled wine to any entity, anywhere throughout the world, other than to TI or MACHAT.

c. Destroy all dry goods including but not limited to labels, branded corks, boxes, and capsules that display any trademark of the TI parties such as VAMPIRE, CUPIDO or the VAMP design and logo.

d. Immediately cease and desist from selling any V labeled wine (regardless of whether or not the V wine comes with or without a blood drop) to any

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

entity for sale in North America.

3. The RECAS parties each agree that for any violation of its obligations specified herein, the breaching party(ies) will be obligated to pay the TI parties liquidated damages in the amount of ten thousand dollars and no cents only ($10,000.00) per incident plus one dollar and no cents only ($1.00) per bottle or dry good as the case may be. The Parties expressly agree that said liquidated damages constitutes a reasonable estimate of the harm such unauthorized conduct is likely to cause the TI parties and should not be construed as an unenforceable penalty. The Parties further agree that, in case of a breach of this Agreement by any of the RECAS parties, the TI parties shall have the option of electing to seek actual damages in lieu of liquidated damages.

B. MICHAEL MACHAT, TI BEVERAGES GROUP LTD dba TRANSYLVANIA IMPORTS, VAMPIRE, INC., and CUPID WINES, INC. hereby agree to have judgment entered against them on the Counter-Claim in the amount of five hundred and fifty thousand dollars and no cents only ($550,000.00).

Based on the express representation of the TI parties that the following entities no longer or have never existed, the RECAS parties agree that they will take nothing on their Counter-Claim against VAMPIRE.COM, CUPIDO, TRANSYLVANIA IMPORTS, INC., and PATHWAYTODARKNESS.COM. Absent such an express representation of the TI parties that these entities are not viable, the RECAS parties would have required that the foregoing monetary judgment apply to VAMPIRE, COM, CUPIDO, TRANSYLVANIA IMPORTS, INC., and PATHWAYTODARKNESS.COM in addition to MICHAEL MACHAT, CUPID WINES, INC., VAMPIRE, INC. and TI BEVERAGES GROUP LTD dba TRANSYLVANIA IMPORTS.

## II. MISCELLANEOUS PROVISIONS

Binding Effect. This Stipulation shall be binding upon the parties and the parties' successors-in-interest.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Entire Agreement. This Stipulation constitutes the final, complete, and exclusive statement of the terms of the Stipulation between the Parties pertaining to the subject matter of the Stipulation and supersedes all prior and contemporaneous understandings or agreements regarding the Stipulation only of the Parties.

Modification of Stipulation. This Stipulation may be supplemented, amended, or modified only by mutual agreement of the parties. No supplemental, amendment, or modification of this Stipulation shall be binding unless it is in writing and signed and notarized by all parties.

Ambiguities. Each party and its counsel have participated fully in the review and revision of this Stipulation. Any rule of construction to the effect that ambiguities are to be resolved against the drafting parties shall not apply in interpreting this Stipulation.

Waiver. No waiver of a breach, failure of a condition, or any right or remedy contained in or granted by the provisions of this Stipulation shall be effective unless it is in writing and signed by the party waiving the breach, failure, right or remedy. No waiver of any breach, failure, right, or remedy shall be deemed a waiver of any other breach, failure, right or remedy whether or not similar, nor shall any waiver constitute a continuing waiver unless the writing so specifies.

Heading. The headings in this Stipulation are included for convenience only and shall neither affect the construction or interpretation of any provision in this Stipulation nor affect any of the rights or obligations of the parties to this Stipulation.

Attorneys Fees. In any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Stipulation (whether in contract, tort, or otherwise) or seeks a declaration of any rights or obligations under this Stipulation, the prevailing party shall be awarded reasonable attorneys fees, together with any costs and expenses, to resolve the dispute and to enforce the final judgment.

No Third-Party Rights. This Stipulation is made solely for the benefit of the Parties and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Stipulation.

Jurisdiction. The Parties agree that this Court has and shall continue to have jurisdiction to enter judgment both against and for them in this case. Any objections any party may have regarding this Court's jurisdiction to enter judgment against them, if any, are waived.

Counterparts. This Stipulation may be executed in counterparts and all so executed, shall constitute an agreement which shall be binding upon all parties hereto, notwithstanding that the signature of the parties do not appear on the same page.

**IT IS SO STIPULATED.**

Dated: September 5, 2007

WINSTON & STRAWN LLP

By: [signature]
Jonathan M. Cohen
Daniel F. Bailey
Attorneys for Defendants and Cross-Claimants S.C. CRAMELE RECAS S.A., et al.

Dated: September ___, 2007

CISLO & THOMAS LLP

By: ______________________
Daniel M. Cislo
Kelly W. Cunningham
Attorneys for Plaintiffs and Cross-Defendants MICHAEL MACHAT., et al.

Dated: September ___, 2007

By: ______________________
PHILIP COX

Dated: September ___, 2007

By: ______________________
BASIL ZARNOVEANU

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Case 2:06-cv-07793-VBF-JWJ Document 66 Filed 01/10/08 Page 9 of 14 Page ID #:240

No Third-Party Rights. This Stipulation is made solely for the benefit of the Parties and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Stipulation.

Jurisdiction. The Parties agree that this Court has and shall continue to have jurisdiction to enter judgment both against and for them in this case. Any objections any party may have regarding this Court's jurisdiction to enter judgment against them, if any, are waived.

Counterparts. This Stipulation may be executed in counterparts and all so executed, shall constitute an agreement which shall be binding upon all parties hereto, notwithstanding that the signature of the parties do not appear on the same page.

**IT IS SO STIPULATED.**

Dated: September 5, 2007

WINSTON & STRAWN LLP

By: ______________________
Jonathan M. Cohen
Daniel F. Bailey
Attorneys for Defendants and Cross-Claimants
S.C. CRAMELE RECAS S.A., et al.

Dated: September 6, 2007

CISLO & THOMAS LLP

By: ______________________
Daniel M. Cislo
Kelly W. Cunningham
Attorneys for Plaintiffs and Cross-Defendants MICHAEL MACHAT., et al.

Dated: September ___, 2007

By: ______________________
PHILIP COX

Dated: September ___, 2007

By: ______________________
BASIL ZARNOVEANU

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

No Third-Party Rights. This Stipulation is made solely for the benefit of the Parties and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Stipulation.

Jurisdiction. The Parties agree that this Court has and shall continue to have jurisdiction to enter judgment both against and for them in this case. Any objections any party may have regarding this Court's jurisdiction to enter judgment against them, if any, are waived.

Counterparts. This Stipulation may be executed in counterparts and all so executed, shall constitute an agreement which shall be binding upon all parties hereto, notwithstanding that the signature of the parties do not appear on the same page.

**IT IS SO STIPULATED.**

Dated: September 5, 2007 WINSTON & STRAWN LLP

By: [signature]
Jonathan M. Cohen
Daniel F. Bailey
Attorneys for Defendants and Cross-Claimants
S.C. CRAMELE RECAS S.A., et al.

Dated: September ___, 2007 CISLO & THOMAS LLP

By: ____________
Daniel M. Cislo
Kelly W. Cunningham
Attorneys for Plaintiffs and Cross-Defendants MICHAEL MACHAT, et al.

Dated: September 7, 2007 By: [signature]
PHILIP COX

SOCIETATEA COMERCIALĂ 7 R 1854176 CRAMELE RECAŞ S.A. RECAŞ - TIMIŞ

Dated: September ___, 2007 By: ____________
BASIL ZARNOVEANU

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

No Third-Party Rights. This Stipulation is made solely for the benefit of the Parties and their respective permitted successors and assigns, and no other person or entity shall have or acquire any right by virtue of this Stipulation.

Jurisdiction. The Parties agree that this Court has and shall continue to have jurisdiction to enter judgment both against and for them in this case. Any objections any party may have regarding this Court's jurisdiction to enter judgment against them, if any, are waived.

Counterparts. This Stipulation may be executed in counterparts and all so executed, shall constitute an agreement which shall be binding upon all parties hereto, notwithstanding that the signature of the parties do not appear on the same page.

**IT IS SO STIPULATED.**

Dated: September 5, 2007

WINSTON & STRAWN LLP

By: [signature]
Jonathan M. Cohen
Daniel F. Bailey
Attorneys for Defendants and Cross-Claimants
S.C. CRAMELE RECAS S.A., et al.

Dated: September ___, 2007

CISLO & THOMAS LLP

By: ______________________
Daniel M. Cislo
Kelly W. Cunningham
Attorneys for Plaintiffs and Cross-Defendants MICHAEL MACHAT., et al.

Dated: September ___, 2007

By: ______________________
PHILIP COX

Dated: September 07, 2007

By: [signature]
BASIL ZARNOVEANU

Case 2:06-cv-07793-VBF-JWJ Document 66 Filed 01/16/08 Page 12 of 14 Page ID #:243

Dated: September 7, 2007

By: ______________________
S.C. CRAMELE RECAS S.A. by Philip Cox, Managing Director

SOCIETATEA COMERCIALA 7 R 1854176 CRAMELE RECAS S.A. RECAS - TIMIS

Dated: September ___, 2007

By: ______________________
PROVINUM SR. by Basil Zarnoveanu, Managing Director

Dated: September ___, 2007

By: ______________________
MICHAEL MACHAT

Dated: September ___, 2007

By: ______________________
TI BEVERAGE GROUP, LTD. by MICHAEL MACHAT

Dated: September ___, 2007

By: ______________________
CUPID WINES, INC by MICHAEL MACHAT

Dated: September ___, 2007

By: ______________________
VAMPIRE, INC by MICHAEL MACHAT

**IT IS SO ORDERED.**

On consideration of the Stipulation between the TI parties and the RECAS parties, IT IS HEREBY ORDERED that this Stipulation will be adopted and entered into the records as this Court's Order and Judgment.

Dated: ________________, 2007

______________________
JUDGE OF THE U.S.D.C.
CENTRAL DISTRICT

SF:182490.1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Dated: September ___, 2007 By: ______________________
S.C. CRAMELE RECAS S.A. by Philip Cox, Managing Director

Dated: September 07, 2007 By: ______________________
PROVINUM SR. by Basil Zarnoveanu, Managing Director

S.C. PROVINUM S.R.L. PROVINUM ...ESTI - ROMANIA

Dated: September ___, 2007 By: ______________________
MICHAEL MACHAT

Dated: September ___, 2007 By: ______________________
TI BEVERAGE GROUP, LTD. by MICHAEL MACHAT

Dated: September ___, 2007 By: ______________________
CUPID WINES, INC by MICHAEL MACHAT

Dated: September ___, 2007 By: ______________________
VAMPIRE, INC by MICHAEL MACHAT

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**IT IS SO ORDERED.**

On consideration of the Stipulation between the TI parties and the RECAS parties, IT IS HEREBY ORDERED that this Stipulation will be adopted and entered into the records as this Court's Order and Judgment.

Dated: ________________, 2007

______________________
JUDGE OF THE U.S.D.C.
CENTRAL DISTRICT

SF:182490.1

Dated: September ___, 2007 By: ______________________
S.C. CRAMELE RECAS S.A. by Philip Cox, Managing Director

Dated: September ___, 2007 By: ______________________
PROVINUM SR. by Basil Zarnoveanu, Managing Director

Dated: September 6, 2007 By: [signature]
MICHAEL MACHAT

Dated: September 6, 2007 By: [signature]
TI BEVERAGE GROUP, LTD. by MICHAEL MACHAT

Dated: September 6, 2007 By: [signature]
CUPID WINES, INC by MICHAEL MACHAT

Dated: September 6, 2007 By: [signature]
VAMPIRE, INC by MICHAEL MACHAT

**IT IS SO ORDERED.**

On consideration of the Stipulation between the TI parties and the RECAS parties, IT IS HEREBY ORDERED that this Stipulation will be adopted and entered into the records as this Court's Order and Judgment.

Dated: ________________, 2007

______________________
JUDGE OF THE U.S.D.C.
CENTRAL DISTRICT

SF:182490.1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894