

1  CRAIG J. MARIAM  (SBN:  225280)
   cmariam@grsm.com
2  DINESH JOSHI  (SBN:  303275)
   djoshi@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
   633 West Fifth Street, 52nd Floor
4  Los Angeles, CA 90071
   Telephone:  (213) 576-5000
5  Facsimile:  (877) 306-0043

6  Attorneys for Defendant
   TRI-VIN IMPORTS, INC.
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  VAMPIRE FAMILY BRANDS, LLC         Case No. 2:20-cv-08223-VBF-PVC

12                    Plaintiff,       **MEMORANDUM OF POINTS
                                       AND AUTHORITIES IN
13         vs.                         SUPPORT OF MOTION TO
                                       DISMISS FOR LACK OF
14  S.C. CRAMELE RECAS, S.A., TRI-     PERSONAL JURISDICTION
    VIN IMPORTS, INC. and DOES 1 - 20  OR, ALTERNATIVELY, FOR
15                                     FAILURE TO STATE A CLAIM
                      Defendants.      [FRCP 12(b)(2); 12(b)(6)]**
16

17                                     Complaint Filed: September 8, 2020

18

19

20

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

-1-
MEMORANDUM OF POINTS AND AUTHORITIES

*Gordon Rees Scully Mansukhani, LLP*
*633 West Fifth Street, 52nd Floor*
*Los Angeles, CA 90071*

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................... 7

II.   STATEMENT OF FACTS ......................................................................... 8

      A.   The Complaint and Plaintiff's Allegations .......................................... 8

           1.   Tri-Vin's Nature of Business, New York Domicile and
                Operations ................................................................................. 9

           2.   Tri-Vin Has No Sufficient Minimum Contacts with
                California .................................................................................. 9

III.  LEGAL STANDARDS AND ARGUMENT ............................................. 10

      A.   This Court Lacks Personal Jurisdiction Over Tri-Vin ....................... 10

           1.   Legal Standard Under Rule 12(b)(2) ...................................... 11

           2.   General Jurisdiction Does Not Exists over Tri-Vin ................ 12

           3.   Specific Jurisdiction Does Not Exist Over Tri-Vin ................ 14

                a.   Plaintiff Cannot Establish Purposeful Direction by Tri-
                     Vin ................................................................................. 15

                b.   Plaintiff's Claims Do Not Arise Out of Tri-Vin's
                     Contacts with California ................................................ 16

                c.   Exercising Specific Jurisdiction over Tri-Vin is
                     Unreasonable ................................................................. 18

                     (1)   There Is No Purposeful Injection by Tri-Vin ........... 18

                     (2)   Defense in California Is Unduly Burdensome for Tri-Vin ....... 18

                     (3)   California Lacks Significant Interest in Adjudicating This
                           Dispute ................................................................... 18

                     (4)   Most Efficient Judicial Resolution & Alternative Forum
                           in New York ............................................................ 19

      B.   Plaintiff Failed to State a Claim Upon Which Relief Can Be
           Granted ............................................................................................ 20

           1.   Legal Standard Under Rule 12(b)(6) ...................................... 20

           2.   Count III Fails: There is No Intentional Interference with
                Contractual Relations When Defendant Did Not Know of
                Any Contract ........................................................................... 20

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-2-

MEMORANDUM OF POINTS AND AUTHORITIES

3. Counts IV-VII Fail: There is No Likelihood of Confusion Between Defendant Recas' "Bloody Merlot" Wine and Plaintiff's "Vampire" Wine .......................................................21

4. Counts VI & VII Fail: VFB's Unfair Competition Claims Under California Business and Professions Codes §§ 17200 and 17500.................................................................24

5. The Complaint Violates Federal Rule of Civil Procedure 8(a)(2) ..............................................................................25

IV. CONCLUSION .................................................................................27

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES

<div style="text-align:left; font-weight:bold;">

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

</div>

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*AMF, Inc. v. Sleekcraft Boars,*
  599 F.2d 341, 348-49 (9th Cir. 1979) ...................................................22

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
  7 Cal. 4th 503, 869 P.2d 454 (1994) ....................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..........................................20

*Ayla, LLC v. Alya Skin Pty. Ltd.,*
  No. 19-CV-00679-HSG, 2019 WL 5963149, at *4 (N.D. Cal. Nov. 13, 2019)..17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .....................20

*Better Homes Realty, Inc. v. Watmore*, No. 3:16-cv-01607-BEN-MDD,
  2017 U.S. Dist. LEXIS 59982, at *9-10 (S.D. Cal. Apr. 18, 2017)...............25, 26

*Boyer v. Becerra*, No. 17-cv-06063-YGR,
  2018 U.S. Dist. LEXIS 72470, at *17 (N.D. Cal. Apr. 30, 2018) ......................25

*Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco County,*
  137 S. Ct. 1773 (2017) ...........................................................................11, 16

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,*
  174 F.3d 1046, n. 6 (9th Cir. 1999)...........................................................22, 23

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)...........15, 16, 17, 18

*CollegeSource, Inc. v. AcademyOne, Inc.,*
  653 F.3d 1066, 1075-76 (9th Cir. 2011) .............................................17

*Core-Vent Corp. v. Nobel Indus. AB,*
  11 F.3d 1482, 1487-88 (9th Cir. 1993) .................................................18, 19

*Crisp v. Kernan*, No. 2:17-cv-2431 KJN P,
  2018 U.S. Dist. LEXIS 96221, at *15 (E.D. Cal. June 7, 2018).........................25

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .................................7, 11, 12, 13, 14

*Dreamwerks Prod. Grp., Inc. v. SKG Studio,*
  142 F.3d 1127, 1129 (9th Cir. 1998).......................................................22

*E & J Gallo Winery v. Gallo Cattle Co.,*
  967 F.2d 1280, 1290 (9th Cir. 1992).......................................................22

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) .............23

*Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).......................25

*Gonzales v. City of Clovis*, No. 1:12-cv-00053-AWI-SKO,
  2013 U.S. Dist. LEXIS 12719 (E.D. Cal. Jan. 29, 2013)...................................26

*Goodyear*, 564 U.S. at 915 .............................................................11, 12, 14

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199, 1206 (9th Cir. 2000)...................................................................23

*Gray & Co. v. Firstenberg Machinery Co.*,
  913 F.2d 758, 761 (9th Cir. 1990).......................................................................19

*GT Sec., Inc. v. Klastech GmbH*, No. C-13-03090 JCS,
  2014 U.S. Dist. LEXIS 88237, at *53 (N.D. Cal. June 27, 2014) ......................18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408, 416 (1984)....................................................................................12

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310, 316 (1945) ..............................................................................19, 20

*iPhone Application Litig.*, No. 11-MD-02250-LHK,
  2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sep. 20, 2011) ..........................25, 27

*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011).............10, 11, 12, 14

*Jacques v. Bank of Am. Corp.*, No. 1:12-CV-00821-SAB,
  2016 WL 4548863, at *22 (E.D. Cal. Aug. 31, 2016) ........................................21

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)..................................................15

*M2 Software, Inc. v. Madacy Entertainment*,
  421 F.3d 1073, 1082 (9th Cir. 2005) ..................................................................23

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988) ...................16

*Millennium Enterprises, Inc. v. Millennium Music, LP*,
  33 F. Supp. 2d 907, 911 (D. Or. 1999) ...............................................................17

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214,
  1226 (C.D. Cal.), aff'd, 114 F. App'x 921 (9th Cir. 2004)...............................23

*Murray v. Cable Nat. Broad. Co.*,
  86 F.3d 858, 861 (9th Cir. 1996).........................................................................22

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993)...............23

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437, 446 (1952)....................................................................................12

*Pom Wonderful LLC v. Tropicana Prod., Inc.* No.
  CV 09-566 DSF (CTX), 2009 WL 10674426, at *4(C.D. Cal. July 6, 2009).....24

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797, 802 (9th Cir. 2004)................................................................13, 15

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943, 951 (N.D. Cal. 2017) ..................................................16, 17

MEMORANDUM OF POINTS AND AUTHORITIES

*Swipe & Bite, Inc. v. Chow*,
   147 F. Supp. 3d 924, 934 (N.D. Cal. 2015) ........................................ 21

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763, 781 (1992) ............................................................ 22

*Walden v. Fiore*, 571 U.S. 277 (2014) ............................................ 11, 16

*Ziegler v. Indian River Cnty.*,
   64 F.3d 470, 476 (9th Cir. 1995) ................................................ 19, 20

## **Statutes**

15 U.S.C. § 1114 ........................................................................ 21

15 U.S.C. § 1125(a)(1) ................................................................ 21

California Business and Professions Code § 17200 .............................. 24

California Business and Professions Code § 17500 .............................. 24

Federal Rule of Civil Procedure § 8 ................................................ 25

Federal Rule of Civil Procedure § 8(a)(2) .......................................... 8

Federal Rule of Civil Procedure § 12(b)(6), ..................................... 20

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court lacks general and specific personal jurisdiction over defendant Tri-Vin Imports, Inc. ("Tri-Vin"). Tri-Vin is a wine importer and distributor, formed and incorporated in the state of New York on September 9, 1988, with its principal place of business in New York. All corporate files and records are maintained in Tri-Vin's office in New Rochelle, New York, where all management decisions as to marketing and wine purchases are made and where management personnel are located. Tri-Vin is not registered to do business in California, does not maintain an agent for service of process in California, and does not maintain any corporate offices or bank accounts in California. Tri-Vin primarily serves New York, New Jersey, and Connecticut. Accordingly, under the stringent test outlined by the Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), Tri-Vin is not at home in California, and it is not subject to general jurisdiction in California courts.

Tri-Vin is also not subject to specific jurisdiction in California. Plaintiff Vampire Family Brands, LLC's ("Plaintiff" or "VFB") cannot establish purposeful direction by Tri-Vin as to the alleged acts underlying Plaintiff's claims, which do not arise out of Tri-Vin's contacts with California. Accordingly, exercising specific jurisdiction over Tri-Vin is unreasonable and defending this matter in California poses an undue burden on Tri-Vin, particularly when efficient relief is available in New York, where Tri-Vin can be found.

In addition to the lack of jurisdiction over Tri-Vin, the Complaint is also legally infirm as a matter of law because Plaintiff fails to state a claim of trademark infringement or false designation under the Lanham Act. None of Plaintiff's claims against Tri-Vin plausibly or sufficiently state a Lanham Act violation because Plaintiff does not and cannot allege trademark use by Tri-Vin of any protectable mark belonging to Plaintiff. Buried in obfuscation and a myriad of irrelevant

-7-

allegations, Plaintiff's asserted marks center upon the word "vampire," yet the only accused product attributed to Tri-Vin is the "Bloody Merlot." On the face of Plaintiff's allegations, the term "Bloody Merlot" is not confusingly similar to any of Plaintiff's asserted marks, nor can it be: "bloody" is a purely descriptive term for the deep red color of red wine varietals—in this case, merlot.

Indeed, many other wine purveyors use the term "blood" or "bloody" in this way, and these terms are no more associated with or indicative of Tri-Vin or Plaintiff as the source of this wine than the many other wine purveyors who use these words. Request for Judicial Notice, Exhibits 1-14 (existing trademark registrations issued by the USPTO for the words "blood" or "bloody" for wine products). Plaintiff's scattershot allegation of its "Vampire family or marks" centered on the word "vampire" fails to state claim against Tri-Vin as to the "Bloody Merlot" wine, which is the only product attributed by Plaintiff to Tri-Vin for its claims.

Furthermore, Plaintiff violated Federal Rule of Civil Procedure 8(a)(2) by lumping all defendants into Counts IV-VIII, without clarifying which marks are allegedly being infringed upon by which defendant. Instead, Plaintiff generally alleges defendants have committed trademark infringement of Plaintiff's family of vampire trademarks. This is improper and insufficient as a matter of law.

## II.   STATEMENT OF FACTS

### A.   The Complaint and Plaintiff's Allegations

This is a diversity action between Plaintiff, a Delaware company based in California, and Tri-Vin, a New York company headquartered in New York. In its Complaint, Plaintiff alleges claims for intentional interference with contractual relations, trademark infringement, false designation, and unfair competition against Tri-Vin. Plaintiff's Complaint, ECF No.1 ("Compl.") ¶¶ 1, 4, 6. Plaintiff asserts a "family" of trademarks incorporating the word "vampire," and based on these

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-8-

asserted marks, claims that Tri-Vin committed infringement and related violations for selling and marketing a merlot wine called "Bloody Merlot." Compl. ¶¶ 39, 52.

### 1. Tri-Vin's Nature of Business, New York Domicile and Operations

Tri-Vin is an importer and distributor of wine, servicing retailers, wholesalers, and distributors. Declaration of Marc Oliveira in Support of Motion to Dismiss ("Oliveira Decl.") ¶ 2. Tri-Vin is a New York corporation with its principal place of business in New Rochelle, New York. *Id.* at ¶ 3. All corporate decision-making, including any marketing and advertising campaigns, policies, and strategies, as well as wine purchasing decisions, occur in New York, where Tri-Vin's corporate business records and executive management personnel are located. *Id.* Tri-Vin's executive management team, including its current President Marc Oliveira, is based in New York or elsewhere on the East Coast. *Id.* All accounting and bookkeeping are also performed and maintained in New York. *Id.*

### 2. Tri-Vin Has No Sufficient Minimum Contacts with California

By contrast to its presence in New York, Tri-Vin has no significant presence in California. *See id.* at ¶¶ 4, 6-10.  Tri-Vin has no corporate office or address in California, nor does it own or operate any corporate property or facility there. *Id.* at ¶ 8.  Tri-Vin is not registered to do business in California, does not maintain an agent for service of process in California, and does not maintain any bank accounts in California. *Id.* Tri-Vin Imports, Inc. previously registered its New York corporation with the State of California on June 9, 2003, but that registration was surrendered over fourteen years ago, on October 16, 2006. *Id.* at ¶ 7. Tri-Vin does not tailor and target its advertising or marketing at California, including through its website, www.tri-vin.com, which is registered to Tri-Vin at its New York address. *Id.* at ¶ 4.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES

1    Visitors to Tri-Vin's website can use a zip code search to locate wines and
2    vendors. *Id.* Searches for zip codes within California return the following
3    statement: "www.tri-vin.com says Zip Code is not in our system. We primarily
4    serve NY, NJ, and CT. Please contact us at products@tri-vin.com to get product
5    stock information nationally." *Id.* The website does not contain any content
6    directed specifically at residents of California. *Id.*

7    Tri-Vin's President Marc Oliveira does not regularly travel to California for
8    wine shows and has not attended any wine shows here in the past several years. *Id.*
9    at ¶ 9. One such wine, beer and spirits show, hosted by an industry organization
10   known as ECRM, who connects buyers and suppliers in various goods related
11   services, rotates around the country in different states such as Georgia and
12   Louisiana, not just California. *Id.* In 2020, Tri-Vin sold 391 units of "Bloody
13   Merlot" to California, constituting a mere 0.0122% of Tri-Vin's total national
14   sales. *Id.* at ¶ 10. Tri-Vin has imported wine from defendant Cramele Recas in
15   Romania in the past, but it does not act as an agent for Cramele Recas. *Id.* at ¶ 11.

16   ## III.   LEGAL STANDARDS AND ARGUMENT

17   ### A.   This Court Lacks Personal Jurisdiction Over Tri-Vin

18   Plaintiff's Complaint should be dismissed because the Court's exercise of
19   personal jurisdiction over Tri-Vin would not be consistent with due process
20   requirements. A court may exercise personal jurisdiction over a defendant only
21   when that exercise is consistent with the due process requirements of the United
22   States Constitution. "[T]hose who live or operate primarily outside a State have a
23   due process right not to be subjected to judgment in its courts as a general matter."
24   *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011).

25   It would offend all notions of fair play and substantial justice to require Tri-
26   Vin—a non-resident defendant, whose attenuated connection to this dispute is
27   through procurement of the accused wine from Romania—to be haled into court in
28   California. *See Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco*

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-10-

MEMORANDUM OF POINTS AND AUTHORITIES

*County*, 137 S. Ct. 1773 (2017); *Daimler*, 577 U.S. 117 (2014); *Walden v. Fiore*, 571 U.S. 277 (2014); *Goodyear Dunlop v. Brown*, 564 U.S. 915 (2011); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). Plaintiff cannot establish that the Court may exercise either general or specific jurisdiction over Tri-Vin.

### 1.    Legal Standard Under Rule 12(b)(2)

Courts may exercise personal jurisdiction over a non-resident defendant only if the requirements of both the due process clause of the Fourteenth Amendment to the United States Constitution and the state's long-arm statute are satisfied. *See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). Under the California long-arm statute, a court may exercise personal jurisdiction over a non-resident defendant to the limits of due process. *See* Cal. Code Civ. P. §410.10; *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). As a result, the requirements of the California long-arm statute are met only where the exercise of personal jurisdiction over a non-resident defendant comports with due process.  *See Bristol-Myers*, 137 S. Ct. 1773 (2017); *Daimler*, 571 U.S. 117 (2014); *Walden*, 571 U.S. 277 (2014); *Goodyear*, 564 U.S. at 915; *J. McIntyre*, 564 U.S. 873 (2011).

To establish personal jurisdiction over a non-resident defendant, a plaintiff must plead and prove that the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden*, 571 U.S. at 283 (internal quotation omitted); *see also Daimler*, 571 U.S. at 126; *Goodyear*, 564 U.S. at 923; *J. McIntyre*, 564 U.S. at 880.  The requirement of "fair play and substantial justice" is carried into effect through the concepts of specific and general jurisdiction. *Goodyear*, 564 U.S. at 923-24. In other words, in order to satisfy constitutional requirements, plaintiff is required to prove the court has general jurisdiction or specific jurisdiction over the defendant. *Daimler*, 571 U.S. at 122. Where the

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-11-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  nonresident defendant's forum-related activities are not "substantial, continuous,
2  and systematic," the Court must evaluate whether the specific activity giving rise
3  to the plaintiff's causes of action is sufficiently related to the forum state (specific
4  jurisdiction). *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446
5  (1952).

## 2. General Jurisdiction Does Not Exists over Tri-Vin

7  General personal jurisdiction exists only where a defendant's contacts with
8  the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia,*
9  *S.A. v. Hall*, 466 U.S. 408, 416 (1984). The "continuous and systematic" contacts
10  must be sufficient enough so as to consider the proposed forum the corporation's
11  "home." *See Daimler*, 571 U.S. at 138 (citations omitted). For a corporation,
12  "home" is where it is incorporated and where it maintains its principal place of
13  business. *See Goodyear*, 564 U.S. at 924; *see also Daimler*, 571 U.S. at 137.
14  Indeed, "those who live or operate primarily outside a State have a due process
15  right not to be subjected to judgment in its courts as a general matter." *J. McIntyre*,
16  564 U.S. at 881. It is not appropriate to rely on the magnitude of the defendants'
17  in-state activities because "a corporation that operates in many places can scarcely
18  be deemed at home in all of them . . . [o]therwise, 'at home' would be synonymous
19  with "doing business[.]" *Daimler*, 571 U.S. at 139, n. 20. Rather, courts should
20  look to the place of incorporation and principal place of business as the
21  paradigmatic bases for general jurisdiction. *Id*. at 137.

22  The Complaint does not sufficiently allege that Tri-Vin is subject to general
23  jurisdiction. Nor could it. The place of incorporation and principal place of
24  business are the "paradig[m] bases" of general personal jurisdiction. *Daimler*, 571
25  U.S. at 137 (alternations in original). Tri-Vin is incorporated in and has its
26  principal place of business in New York, where its executive management
27  personnel and business records are located, and where its corporate marketing and
28

MEMORANDUM OF POINTS AND AUTHORITIES

1  advertising, and wine purchasing decisions are made. Compl. ¶ 6; Oliveira Decl. ¶¶
2  2-3.

3  Despite conceding that Tri-Vin is a New York corporation based in New
4  York, Plaintiff alleges that Tri-Vin is subject to jurisdiction in California because
5  "Tri-Vin is a US Importer for Cramele Recas and an agent of Cramele Recas's for
6  its wine sales in the U.S." Compl. ¶ 6. Such a broad allegation based on Tri-Vin's
7  wine sales in the United States is not a proper basis for personal jurisdiction in
8  California. Rather, the jurisdictional inquiry is forum-specific. *See*
9  *Schwarzenegger*, 374 F.3d at 802. Under Plaintiff's logic, Tri-Vin is subject to
10  jurisdiction everywhere in the U.S. simply because it sells wine in the U.S. That is
11  not the law. *See Daimler*, 571 U.S. at 139, n. 20.

12  Plaintiff's remaining jurisdictional allegations are equally insufficient and
13  also false. Plaintiff alleges that "Tri-Vin regularly does business in California,
14  regularly buying wine from California that it resells around the country. Tri-Vin
15  also have [sic] a California distributor, based in this district, that it sells wine to for
16  distribution. Tri-Vin regularly apply for and file trademark applications using a
17  lawyer based in this District. Tri-Vin representatives, including Marc Oliveira,
18  regularly travel to California for wine shows such as the ECRM which has been
19  held in rotating locations, including Napa, San Diego, and Orange County."
20  Compl. ¶ 6. That Napa Valley, one of the world's wine capitals is located in
21  California, is not a basis to find that Tri-Vin is subject to general jurisdiction in
22  California, lest all wine merchants who buy wine from Napa Valley be subjected to
23  suit for all general purposes in California. But even accepting Plaintiff's faulty
24  premise, forum would still be improper in Los Angeles based on Tri-Vin's wine
25  purchases from Napa Valley wine makers—Napa Valley is not Los Angeles.

26  Plaintiff's assertion that Tri-Vin is subject to suit in California merely
27  because it uses a trademark lawyer here for trademark prosecution completely
28  unrelated to this suit is also insufficient for jurisdiction. *See Daimler*, 571 U.S. at

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-13-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

139, n. 20.  Indeed, under that theory, Tri-Vin would also be subject to jurisdiction in Virginia, where the USPTO is located and where Tri-Vin's trademark applications are submitted, examined, and processed.  Plaintiff is grasping at jurisdictional straws.

Plaintiff's allegations that jurisdiction is proper because Tri-Vin has a wine distributor in this district for wines unrelated to the claims in this case and that Tri-Vin's President Mr. Oliveira travels here to attend wine shows are also insufficient.[1]  These activities hardly reach the level of "continuous and systematic" conduct that makes Tri-Vin at home in California; these activities do not establish that Tri-Vin "operate[s] primarily" in California. *See J. McIntyre*, 564 U.S. at 881; *Goodyear*, 564 U.S. at 924; *see also Daimler*, 571 U.S. at 139, n. 20 ("a corporation that operates in many places can scarcely be deemed at home in all of them . . . [o]therwise, 'at home' would be synonymous with "doing business[.]"");

Without any physical presence or personnel in California, or other activity that occurs primarily and systematically in California, Tri-Vin's conduct of business here can scarcely be equated to Tri-Vin being "at home" in California. *See Daimler*, 571 U.S. at 137.  Accordingly, Tri-Vin is not subject to general jurisdiction in California courts. *See Goodyear*, 564 U.S. at 924.

### 3.   Specific Jurisdiction Does Not Exist Over Tri-Vin

Specific jurisdiction requires the following three elements: "(1) The non-resident defendant must purposefully direct [its] activities [. . . .] with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must

---

[1] Indeed, Plaintiff's assertion that Mr. Oliveira regularly travels here to attend wine shows is patently false.  During 2020, such a show did not occur in person given the pandemic, and Mr. Oliveira has not been to a wine show in California in the past four or five years. The ECRM trade show was held in Georgia and Louisiana in 2018 and 2019.  Oliveira Decl. ¶ 9.

MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  comport with fair play and substantial justice, i.e. it must be reasonable."

2  *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004).

3  Plaintiff bears the burden on the first two factors, then the burden shifts to the

4  defense to a make a "compelling case" that exercise of jurisdiction is unreasonable.

5  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

### a.   Plaintiff Cannot Establish Purposeful Direction by Tri-Vin

8  "'A purposeful availment analysis is most often used in suits sounding in

9  contract,' while a 'purposeful direction analysis . . . is most often used in suits

10  sounding in tort. *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  In tort cases,

11  the Ninth Circuit evaluates whether there exists "purposeful direction" using a

12  three-part test called the "*Calder* Effects Test," under which "'the defendant

13  allegedly must have (1) committed an intentional act, (2) expressly aimed at the

14  forum state, (3) causing harm that the defendant knows is likely to be suffered in

15  the forum state.'"  *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d

16  1124, 1128 (9th Cir. 2010) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

17  Here, Plaintiff does not allege any "intentional act" by Tri-Vin expressly

18  aimed at California that caused harm that Tri-Vin knew would likely be suffered in

19  California. Plaintiff vaguely alleges in a conclusory manner that "Tri-Vin are [sic]

20  targeting sales of the accused product into California." Compl. ¶ 6.  This is false.

21  Tri-Vin's sales—particularly as to the accused product—are neither targeted nor

22  directed to California. *See* Oliveira Decl. ¶¶ 4, 10. Tri-Vin's website states "[w]e

23  primarily serve NY, NJ, and CT" and the website does not contain content directed

24  or tailored specifically to residents of California. *Id.* at ¶ 4.  Indeed, Tri-Vin does

25  not perform any marketing targeted and tailored to California, which is not its

26  primary service area.  *See id.*  As it relates to Tri-Vin's dealings with defendant

27  Cramele Recas – Tri-Vin understood Cramele Recas to be operating out of

28  Romania.  *Id.* at ¶ 11; Compl. ¶ 5.  Thus, Tri-Vin's procurement of wines from

MEMORANDUM OF POINTS AND AUTHORITIES

Cramele Recas in Romania with the phrase "Bloody Merlot"—not any of Plaintiff's asserted "vampire family of marks" (Compl. ¶¶ 10, 93)—means that Tri-Vin could not have aimed conduct at California knowing harm would be allegedly suffered by Plaintiff here.

### b. Plaintiff's Claims Do Not Arise Out of Tri-Vin's Contacts with California

The relationship between the defendant's suit-related conduct and the forum state "must arise out of contact that the 'defendant <u>himself</u>' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)). The analysis "must be focused on the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (affirming the district court's dismissal of the complaint for lack of personal jurisdiction) ("[N]o authorized agents of [the defendant] were alleged to have performed or executed any portion of the contract in California.").

Plaintiff's primary basis for bringing suit in California is that it is based here and the stipulated judgment vests jurisdiction in this forum as to any claims of violations of the judgment. Compl. ¶¶ 51. However, Tri-Vin is not a party to that stipulated judgment, and indeed, had no knowledge of its existence. Oliveira Decl. ¶ 12. Neither Plaintiff's residence in California nor the stipulated judgment is a sufficient basis for specific personal jurisdiction over Tri-Vin. *See Bristol-Myers*, 137 S. Ct. at 1781; *Walden*, 571 U.S. at 286; *Smith v. Facebook, Inc.,* 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) ("[p]ersonal jurisdiction requires 'something more'—namely, 'wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'") (internal citations omitted). Plaintiff's illogical theory that Tri-Vin interfered with the stipulated judgment about which Tri-Vin was completely unaware is insufficient to

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

confer personal jurisdiction over Tri-Vin.  "[C]ontacts resulting from the 'unilateral activity of another party or third person' are not attributable to a defendant."  *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999) (citing *Burger King,* 471 U.S. at 475 & n. 17).

Furthermore, Plaintiff incorrectly claims an inquiry related to a Facebook post creates sufficient contacts to subject Tri-Vin to this jurisdiction. Compl. ¶ 41. Plaintiff's argument is flawed: a non-descript response that the accused wine would be available in California without any indication that the user who inquired purchased the wine in California, let alone in this District, does not open Tri-Vin to jurisdiction for suit here.  *See Smith*, 262 F. Supp. At 951 (Nonresident operators of medical websites did not purposefully direct their conduct towards forum state of California, … and thus specific personal jurisdiction did not exist over operators); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075-76 (9th Cir. 2011) ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result.").

As noted above, Tri-Vin did not specifically target California as to its sales of wine generally, and as to the specific accused wine—Bloody Merlot—sales of which are *de minimis*: 0.0122% of total sales in 2020, which is the only year that Tri-Vin sold this product here.  Oliveira Decl. ¶¶ 4, 10.  *See Ayla, LLC v. Alya Skin Pty. Ltd.*, No. 19-CV-00679-HSG, 2019 WL 5963149, at *4 (N.D. Cal. Nov. 13, 2019) ("Defendant's sales in California constitute less than 2% of all sales ... This de minimis amount cannot show express aiming when the 'overwhelming majority' of sales occur [elsewhere]. The Court concludes that Plaintiff fails to allege facts showing that Defendant engaged in conduct expressly aimed at California.")

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES

### c. Exercising Specific Jurisdiction over Tri-Vin is Unreasonable

Even where a court concludes that a defendant purposefully directed its activities to the forum (which the allegations and facts do not support here), the exercise of jurisdiction by local courts must also "comport with fair play and substantial justice" – or, in other words, be reasonable. *Burger King*, 471 U.S. at 486. Reasonableness is assessed by numerous factors, the most relevant of which are discussed below.  *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993) (enumerating reasonableness factors).

#### (1) There Is No Purposeful Injection by Tri-Vin

The "purposeful injection" factor parallels the analysis for purposeful direction. *GT Sec., Inc. v. Klastech GmbH*, No. C-13-03090 JCS, 2014 U.S. Dist. LEXIS 88237, at *53 (N.D. Cal. June 27, 2014) (defendant's activities that satisfied the "'purposeful direction' prong" also "demonstrate a sufficient level of purposeful injection[.]"). As such, because Tri-Vin has not purposefully directed conduct to Plaintiff, *a fortiori*, it has not purposefully injected itself either.

#### (2) Defense in California Is Unduly Burdensome for Tri-Vin

Tri-Vin primarily serves New York, New Jersey, and Connecticut.  Oliveira Decl. ¶ 4. Tri-Vin's business records and executive management personnel are in New Rochelle, New York. Oliveira Decl. ¶ 3. Thus, requiring Tri-Vin to defend this action in California poses an undue burden, particularly given Tri-Vin's lack of sufficient contacts to warrant general jurisdiction, let alone specific jurisdiction for Plaintiff's claims that do not arise out of Tri-Vin's limited activities in this state.

#### (3) California Lacks Significant Interest in Adjudicating This Dispute

This factor considers California's interest in adjudicating the controversy.

-18-

MEMORANDUM OF POINTS AND AUTHORITIES

*Core-Vent Corp.*, 11 F.3d at 1487-88. A forum state's interest is insignificant where, as here, the "case does not involve a tort or a contract that would implicate an ongoing relationship." *Gray & Co. v. Firstenberg Machinery Co*., 913 F.2d 758, 761 (9th Cir. 1990). Tri-Vin's only relevant connection to California as it pertains to this case is that Tri-Vin once sold Plaintiff's wine, and that relationship is over. Compl. ¶ 43. Tri-Vin was unaware and not a party to the settlement agreement or stipulated judgment between Plaintiff and defendant Cramele Recas. Oliveira Decl. ¶ 12. Regardless, Plaintiff's *tort* claims as to Tri-Vin cannot arise out of that settlement agreement for purposes of personal jurisdiction because Tri-Vin was not party to that agreement. Moreover, Tri-Vin does not tailor and target sales— particularly as to the accused product—in California, which is not its primary service area, thereby making Tri-Vin's connection with California all the more attenuated. *See* Oliveira Decl. ¶¶ 4, 10.

### (4)  *Most Efficient Judicial Resolution & Alternative Forum in New York*

The factors of efficiency and California's importance to Plaintiff's interest in convenient and effective relief primarily focus on the location of the evidence and the witnesses from the nonresident defendant's perspective. *See Core-Vent Corp.*, 11 F.3d at 1487-88; *Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945); *see also Ziegler v. Indian River Cnty*., 64 F.3d 470, 476 (9th Cir. 1995) ("neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the Plaintiff").

Here, it is undisputed Tri-Vin is headquartered in New York, where its business records and management personnel are located. *See* Oliveira Decl. ¶¶ 2-3, 6.  For Tri-Vin, it would be contrary to the principles of judicial economy to continue the proceedings in California when the records and witnesses are in New York.  Effective relief is available in the U.S. District Court for the Southern District of New York, where Tri-Vin and its management, records, and witnesses

MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

reside and can be found. Whatever inconvenience plaintiff is faced in litigating in New York is outweighed by Tri-Vin's right to "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *see also Ziegler*, 64 F.3d at 476.

### B.   Plaintiff Failed to State a Claim Upon Which Relief Can Be Granted

#### 1.   Legal Standard Under Rule 12(b)(6)

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires a plaintiff to allege facts that add up to "more than a sheer possibility that a [d]efendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.  And, while a court must generally accept factual allegations as true, it should not draw unreasonable inferences, credit conclusory legal allegations cast in the form of factual allegations, or credit allegations inconsistent with matters subject to judicial notice. *See Twombly*, 550 U.S. at 553-56, 558.

#### 2.   Count III Fails: There is No Intentional Interference with Contractual Relations When Defendant Did Not Know of Any Contract

To recover in tort for intentional interference with performance of contract, plaintiff must prove: (1) valid contract between plaintiff and another party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of contractual relationship; (4) actual breach or disruption of contractual relationship; and (5) resulting damage. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 869 P.2d 454 (1994).

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Plaintiff does not and cannot plead that prior to this lawsuit, Tri-Vin was aware and had knowledge of a stipulated judgment or settlement agreement between Plaintiff and Cramele Recas.  This is because Tri-Vin is not a party to that stipulated judgment or settlement agreement.  Accordingly, Tri-Vin was unaware of any ongoing contractual relationship between Plaintiff and Cramele Recas. *See Jacques v. Bank of Am. Corp.*, No. 1:12-CV-00821-SAB, 2016 WL 4548863, at *22 (E.D. Cal. Aug. 31, 2016) (internal citations omitted) ("If a potential defendant was completely unaware of contractual relations with a third party, then it would be impossible to infer any intent to interfere on the defendant's part"); s*ee also Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 934 (N.D. Cal. 2015) (motion to dismiss granted as to intentional tortious interference for failure to allege sufficient facts to show knowledge of agreements.)

Plaintiff cannot plead any facts to show that Tri-Vin intended to interfere with a contract that it knew nothing about, nor that Tri-Vin had any intent to do so.

### 3. Counts IV-VII Fail: There is No Likelihood of Confusion Between Defendant Recas' "Bloody Merlot" Wine and Plaintiff's "Vampire" Wine

15 U.S.C. § 1114 outlines the elements of infringement of registered trademarks as follows:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant.

Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides:

MEMORANDUM OF POINTS AND AUTHORITIES

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person… shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The test for likelihood of confusion is whether a "reasonably prudent consumer" in the marketplace is likely to be confused as to the origin of the good or service. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). The likelihood of confusion must be probable, not just possible. *Murray v. Cable Nat. Broad. Co*., 86 F.3d 858, 861 (9th Cir. 1996).

In order to determine the likelihood of confusion, courts use the trademark infringement analysis. *See Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 781 (1992) (Stevens J., concurring) ("Whether we call the violation infringement, unfair competition, or false designation of origin, the test is identical – is there a likelihood of confusion?"); *see also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1046, n. 6 (9th Cir. 1999) (a claim for false designation of origin is subject to the same standard as trademark infringement but does not require the mark to be registered).

Accordingly, the Court may look to the *Sleekcraft* factors in its analysis: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of sight, sound, meaning; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser care; (7) intent; and (8) likelihood of expansion. *AMF, Inc. v. Sleekcraft Boars,* 599 F.2d 341, 348-49 (9th Cir. 1979). Several of these factors are uniquely applicable to trademark infringement, but the overall framework is helpful to assess whether there is a likelihood of confusion. *See E & J Gallo Winery v. Gallo Cattle Co*., 967 F.2d 1280, 1290 (9th Cir. 1992) ("The list of factors… is neither exhaustive nor exclusive. Rather, the factors are intended to

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1   guide the court in assessing the basic question of likelihood of confusion"); *see*

2   *also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)

3   ("Although the *Sleekcraft* test plays an important role in the analysis of whether a

4   likelihood of confusion exists, it is the totality of facts in a given case that is

5   dispositive").

6           In determining whether two marks are similar, courts consider their sight,

7   sound and meaning. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th

8   Cir. 2000); *Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir. 1993)*.

9   "In analyzing this factor, the marks must be considered in their entirety and as they

10  appear in the marketplace." *Brookfield*, 174 F.3d at 1054 (citations omitted).

11  According to the "anti-dissection" rule, courts may not dissect marks to examine

12  and compare their component parts. *M2 Software, Inc. v. Madacy Ent., 421 F.3d*

13  *1073, 1082 (9th Cir. 2005)*; *Moose Creek, Inc. v. Abercrombie & Fitch Co., 331 F.*

14  *Supp. 2d 1214, 1226 (C.D. Cal.), aff'd, 114 F. App'x 921 (9th Cir. 2004)*.

15  Although the court may give greater weight to a dominant feature of a mark, the

16  court's analysis must ultimately consider and compare the marks in their entirety

17  because "the validity and distinctiveness of a composite trademark is determined

18  by viewing the trademark as a whole, as it appears in the marketplace." *Id.*; *Official*

19  *Airline Guides, Inc.*, 6 F.3d at 1392.

20          Plaintiff's asserted marks center on the word "vampire" and expressly

21  include that word.  Compl. ¶ 10 (alleging a "family" of marks for VAMPIRE,

22  VAMPYRE, VAMP H20, VAMPIRE TACO).  Plaintiff also asserts a mark for

23  SIP THE BLOOD OF THE VINE.  *Id.* at ¶ 10.  None of these asserted marks are

24  even remotely close to the name of the accused product "Bloody Merlot."

25  Therefore, on the face of the allegations, there can be no infringement because

26  none of Plaintiff's alleged "family" of registered marks cover the phrase "Bloody

27  Merlot."

28          Plaintiff's allegations of similarity and confusion, and that its registered

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES

marks cover "blood and blood images and bats . . ." and "blood sucker" strain credulity.  Compl. ¶ 81.  Plaintiff's marks are those incorporating the word "vampire" or variants like "vampire" and "vamp"; these registered marks plainly do not include "blood and blood images and bats."  Compl. ¶¶ 10, 81.  Plaintiff's mark in the phrase "SIP THE BLOOD OF THE VINE" must be examined in its entirety, and in that context, there can be no confusion with the phrase "Bloody Merlot" on the accused product attributed to Tri-Vin.

Plaintiff makes several conclusory statements and does not plead facts, let alone facts sufficient to state a plausible claim that Tri-Vin violated the Lanham Act, resulting in a likelihood of confusion. Plaintiff simply states "vampire" and "blood sucker" are confusing, but by their sight, sound, and appearance, they are not.  In any event, Plaintiff does not allege with specificity facts about how "Bloody Merlot" infringes asserted marks in "vampire" or "sip from the blood of the vine," or how Tri-Vin specifically has committed any infringement through the sale of the accused product "Bloody Merlot."  Plaintiff does not have any rights in the words "blood" or "bloody," which are used by many wine purveyors, including for red wine for its blood-like color, showing that these words are not indicative of Plaintiff as the products' source nor exclusive to Plaintiffs.  *See* Request for Judicial Notice, Exhibits 1-14 (existing trademark registrations issued by the USPTO for the words "blood" or "bloody" for wine products); *compare* Compl. ¶ 80 (acknowledging descriptive product attribute of having "so much red coloring that it turns your lips red . . .").

### 4.  Counts VI & VII Fail: VFB's Unfair Competition Claims Under California Business and Professions Codes §§ 17200 and 17500

Because VFB's state law claims are predicated upon the Lanham Act violations, which are insufficient as discussed above, those state claims also fail. *Pom Wonderful LLC v. Tropicana Prod., Inc.* No. CV 09-566 DSF (CTX), 2009 WL 10674426, at *4(C.D. Cal. July 6, 2009) (Finding state law claims under

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-24-

MEMORANDUM OF POINTS AND AUTHORITIES

§17200 and §17500 failed to plead with sufficient particularity after an analysis and dismissal of plaintiff's Lanham Act claim). Plaintiff's Lanham Act and state law claims rise, and in this case, fall together.  *Id.*

### 5.   The Complaint Violates Federal Rule of Civil Procedure 8(a)(2)

Federal Rule of Civil Procedure 8 ("Rule 8") requires that a complaint contain "a short plain statement," which provides defendants fair notice of the grounds upon which it rests. Fed. R. Civ. Proc. 8(a)(2). A complaint, however, "which lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Boyer v. Becerra*, No. 17-cv-06063-YGR, 2018 U.S. Dist. LEXIS 72470, at *17 (N.D. Cal. Apr. 30, 2018); *see Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing complaint where "all defendants are lumped together in a single, broad allegation").

Thus, where an action is brought against multiple defendants, the plaintiff must state, "what role each [d]efendant played in the alleged harm." *Better Homes Realty, Inc. v. Watmore*, No. 3:16-cv-01607-BEN-MDD, 2017 U.S. Dist. LEXIS 59982, at *9-10 (S.D. Cal. Apr. 18, 2017) (dismissing complaint for failure to provide fair notice, where it merely contained "cursory references" to individual defendants and allegations against "all defendants"). For example, in *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sep. 20, 2011), the plaintiffs grouped together eight defendants and set forth generalized allegations against those "defendants" as a whole. *Id.* at *26-27.  The court found that, "by lumping all eight of [the defendants] together," plaintiffs had "not stated sufficient facts to state a claim for relief that is plausible against *one* [d]efendant." *Id.* at *26 (emphasis in original).

Notably, this requirement that a plaintiff plead <u>each</u> defendant's role in the alleged harm extends to matters involving named defendants lumped together with fictitiously-named defendants. *See Crisp v. Kernan*, No. 2:17-cv-2431 KJN P,

MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

2018 U.S. Dist. LEXIS 96221, at *15 (E.D. Cal. June 7, 2018) ("[P]laintiff does not identify each doe defendant and his or her alleged act . . . This lack of information is insufficient to put prospective defendants on notice . . ."). For example, in *Gonzales v. City of Clovis*, No. 1:12-cv-00053-AWI-SKO, 2013 U.S. Dist. LEXIS 12719 (E.D. Cal. Jan. 29, 2013), the plaintiff set forth generalized allegations against all "Defendants," which included a single named defendant and seventy-five fictitiously named defendants. *Id.* at *37-38. There, the court dismissed the complaint, holding that the plaintiff must "allege each Defendant's conduct or participation in the events." *Id.* at 38. The court further instructed that, although the plaintiff may "may use "Doe" designations," he must "distinguish each defendant" and "identify how each defendant, including those named as Doe, is liable . . ." *Id.*

Here, Plaintiff makes no attempt to distinguish between the named defendants and/or the Doe defendants as to Counts IV-VII. *See generally* plaintiff's Complaint. Instead, Plaintiff lumps the defendants together and makes generalized allegations against "Defendants" as a whole. *Id.* Indeed, of the 111 paragraphs contained in the Complaint, only thirteen of the paragraphs even reference Tri-Vin. (*See*, ¶¶ 6, 41-47, 50-52, 73-74.) Tri-Vin is not specifically mentioned at all in Counts IV-VII. Such cursory references to Defendants, coupled with the numerous allegations against all "Defendants," are insufficient to provide fair notice of Plaintiff's claims as to Tri-Vin. *Watmore*, 2017 U.S. Dist. LEXIS 59982, at *11.

Plaintiff's generalized allegations prove particularly problematic due to the subject matter of the Complaint: in pleading trademark infringement, Plaintiff alleges that "Defendants" infringed upon the Plaintiff's family of Vampire marks and brands. *See* Compl.¶¶ 17, 56, 81, 91, 96, 110. It is impossible to determine with any specificity which of the numerous marks or brands Plaintiff is alleging were infringed by which defendant. Plaintiff cannot simply list its "family" of

MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

marks and expect the defendants to infer which alleged conduct relates to which alleged infringement.

Thus, requiring a response to the Complaint would improperly saddle Defendants with the "exceedingly difficult, if not impossible" task of preparing a response to inappropriately broad and generalized allegations. *In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, at *26-27.

## IV.   **CONCLUSION**

For the foregoing reasons, Tri-Vin respectfully requests the Court dismiss the Complaint based on a lack of personal jurisdiction and failure to state a claim.

Respectfully submitted,

Dated:   January 25, 2021

GORDON REES SCULLY MANSUKHANI, LLP

By:   /s/ Craig J. Mariam

Craig Mariam
Dinesh Joshi
Attorneys for Defendant
TRI-VIN IMPORTS, INC.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1225042/56112330v.1

MEMORANDUM OF POINTS AND AUTHORITIES