1    CRAIG J. MARIAM  (SBN:  225280)
cmariam@grsm.com
2    DINESH JOSHI  (SBN:  303275)
djoshi@grsm.com
3    GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
4    Los Angeles, CA 90071
Telephone:  (213) 576-5000
5    Facsimile:  (877) 306-0043

6    Attorneys for Defendants
TRI-VIN IMPORTS, INC.
7    and BRACUS IMPORTS LLC

8

9            UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA

10

11

12    VAMPIRE FAMILY BRANDS, LLC | Case No. 2:20-cv-08223-VBF-PVC
*Honorable Valerie B. Fairbank*

13                  Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, FOR FAILURE TO JOIN AN INDISPENSABLE PARTY [FED. R. CIV. P. 12(b)(6)-(7), 19]**

14        vs.

15    S.C. CRAMELE RECAS, S.A., TRI-VIN IMPORTS, INC., BRACUS IMPORTS LLC and DOES 1 - 20

16

17                 Defendants.

18

19 | First Amended Complaint Filed: February 15, 2021

20

21

22

23

24    ///

25    ///

26    ///

27    ///

28    ///

MEMORANDUM OF POINTS AND AUTHORITIES

*Gordon Rees Scully Mansukhani, LLP*
*633 West Fifth Street, 52nd Floor*
*Los Angeles, CA 90071*

1

# **TABLE OF CONTENTS**

2

3  I.   INTRODUCTION ...................................................................................6

4  II.  STATEMENT OF FACTS ......................................................................8

5       A.   The Complaint and Plaintiff's Allegations ..................................8

6  III. LEGAL STANDARDS AND ARGUMENT ...........................................8

7       A.   Plaintiff Fails to State a Claim Upon Which Relief Can Be
            Granted .........................................................................................8

8            1.   Legal Standard Under Rule 12(b)(6) ...............................8

9
             2.   Counts IV-VIII Fail: As a Matter of Plausibility, There is
10                No Likelihood of Confusion Between Defendant Recas'
                  "Bloody Merlot" and "Bloody Cabernet" Wines and
11                Plaintiff's "Vampire" Wine ...........................................9

12           3.   Counts IV-VIII Fail: VFB Fails to State Sufficient Facts
                  to Show Common Law Trademarks or Trade Dress in the
13                Generic, Commonplace Idea and Theme of Vampires ...........13

14           4.   Count VI Fails: VFB Fails to State a Claim for
                  Trademark Dilution Under 15 U.S.C. § 1125(c) .....................17

15
             5.   Counts VII & VIII Fail: VFB's Unfair Competition
16                Claims Under California Business and Professions Codes
                  §§ 17200 and 17500 .........................................................18

17           6.   Counts III, IV, V, VI, and VII Fail: VFB's Request for
18                Punitive Damages Fails ...................................................18

19      B.   Plaintiff Failed to Join a Party, Fior Di Sole, LLC, Under Rule
            19 ...............................................................................................20

20           1.   Legal Standard Under Rule 12(b)(7) ...............................20

21 IV.  CONCLUSION ....................................................................................22

22

23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

## Cases

*AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979) ....................10

*Antiaging Inst. of California, Inc. v. Solonova, LLC,*
    2015 WL 12792028 (C.D. Cal. Nov. 19, 2015)..............................................13, 14

*Arcsoft, Inc. v. Cyberlink Corp.,*
    153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) .......................................................18

*Aromatique, Inc. v. Gold Seal,*
    28 F.3d 863, 31 U.S.P.Q.2d 1481, 1483 (8th Cir. 1994) ......................................15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)............................................................8, 9

*Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) .................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................8, 9

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,*
    174 F.3d 1046, n. 6 (9th Cir. 1999)..................................................................10, 11

*Camacho v. Major League Baseball,*
    297 F.R.D. 457, 461 (S.D. Cal. 2013)..................................................................20

*Choice Sports Medicine Prods., Inc. v. Eurow & O'Reilly Corp.,*
    2013 WL 12077438 at *3–4 (S.D. Cal. Nov. 12, 2013) ......................................14

*Chronicle Pub. Co. v. Legrand,*
    No. C-88-1897-DLJ, 1992 WL 420808, at *3 (N.D. Cal. Sept. 3, 1992)...........19

*Coll. Hosp., Inc. v. Super. Ct.*, 8 Cal. 4th 704, 725 (1994) ...................................19

*Credit One Corp. v. Credit One Fin., Inc.,*
    661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009) .....................................................14

*Dreamwerks Prod. Grp., Inc. v. SKG Studio,*
    142 F.3d 1127, 1129 (9th Cir. 1998).....................................................................10

*E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) .....10

*E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005)............20, 21

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)............10

*Ferrer v. Hollywood for Children, Inc.*, No. 2:17-CV-7318-CBM-FFM,
    2018 WL 5267084 (C.D. Cal. Mar. 14, 2018) ....................................................20

*Getty Petroleum Corp, v. Bartco Petroleum Corp.,*
    858 F.2d 103, 109 (2nd Cir. 1988)........................................................................18

*Golden Temple of Oregon, LLC v. Wai Lana Prods., LLC,*
    No. 03:09-CV-902-HZ, 2011 WL 6070385, at *2 (D. Or. Dec. 5, 2011) ...........20

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-3-

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000)............11

*Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014) .......13

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197, 200 n. 1 (9th Cir. 1989)....................................................18

*Jeffrey Milstein, Inc. v. Gregor, Lawlor, Roth, Inc.*,
    58 F.3d 27, 32-33 (2d Cir. 1995) ..........................................................14

*JL Beverage Co., LLC v. Beam, Inc.*, 899 F. Supp. 2d 991 (D. Nev. 2012) ..........12

*M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1082 (9th Cir. 2005).............11

*Marvel Enter., Inc. v. NCSoft Corp.*,
    2005 WL 878090 at *4 (C.D. Cal. Mar. 9, 2005) ...................................13

*McShan v. Sherrill*,
    283 F.2d 462, 464 (9th Cir. 1960)...........................................................20

*Mintz v. Subaru of Am., Inc.*,
    2016 WL 5909360 at *1–2 (N.D. Cal. Oct. 11, 2016)..........................13

*Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 328 (1992) .................19

*Moose Creek, Inc.*, 331 F. Supp. 2d at 1226-27 ........................................11

*Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996)............10, 12

*Nature's Way Products, Inc. v. Nature-Pharma, Inc.*,
    736 F. Supp. 245, 16 U.S.P.Q.2d 1063 (D. Utah 1990).......................15

*Nurmi v. Peterson* 1989 U.S. Dist. LEXIS 9765
    *10-11, 10 U.S.P.Q.2d (BNA) 1775 (C.D. Cal. 1989) .........................18

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993)...............11

*Parkinson v. Robanda Int'l, Inc.*,
    2016 WL 6953456 at *2 (C.D. Cal. Sep. 6, 2016)................................21

*Playboy Enters. Inc. v. Welles,* 279 F.3d 796, 806 n. 41 (9th Cir.2002)................17

*Pom Wonderful LLC v. Tropicana Prod., Inc.* No. CV 09-566 DSF (CTX),
    2009 WL 10674426, at *4(C.D. Cal. July 6, 2009) ...............................18

*Razavi v. Caliber Home Loans, Inc.*,
    2018 WL 6016168 at *4 (C.D. Cal. Apr. 9, 2018) ...............................21

*Revlon, Inc. v. Jerell, Inc.*,
    713 F. Supp. 93, 11 U.S.P.Q.2d 1612 (S.D.N.Y. 1989) ......................15

*Sebastian Brown Prods., LLC v. Muzooka, Inc.*,
    143 F. Supp. 3d 1026, 1040–41 (N.D. Cal. 2015) ...............................14

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-4-

MEMORANDUM OF POINTS AND AUTHORITIES

*Thane Int'l Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir.2002) ..............17

*Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 781 (1992) .........................10

*Walker & Zanger, Inc. v. Paragon Industries, Inc.*,
   549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007) .....................................................15

*Woodsmith Publishing Co. v. Meredith Corp.*,
   904 F.2d 1244, 15 U.S.P.Q.2d 1053 (8th Cir. 1990) ..........................................15

**Statutes**

15 U.S.C. § 1114.......................................................................................................9

15 U.S.C. § 1125(a)(1) .............................................................................................9

15 U.S.C. § 1125(c) ..............................................................................................7, 17

California Civil Code §3294....................................................................................18, 19

California Business and Professions Code § 14330 ..............................................17

California Business and Professions Codes §§ 17200 and 17500 ...................17, 18

Federal Rules of Civil Procedure 12(b)(6), ...........................................................8

Federal Rules of Civil Procedure 12(b)(7) ............................................................21

Federal Rules of Civil Procedure 19(c) .................................................................21

Federal Rules of Civil Procedure 19(a) .................................................................20

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On February 15, 2021, Plaintiff Vampire Family Brands, LLC ("Plaintiff" or "VFB") filed its First Amended Complaint ("FAC") (ECF No. 27) in response to Tri-Vin Imports, Inc.'s ("Tri-Vin") pending motion to dismiss.  Plaintiff's FAC fares no better, fails to remedy its previous shortcomings, and adds insufficiently-pled claims for dilution, common law trademark infringement, and an unregistered trade dress claim – all of which fail as a matter of law for the following reasons:

First, Plaintiff fails to state a claim of trademark infringement or false designation under the Lanham Act. None of Plaintiff's claims against Tri-Vin or Bracus Imports LLC ("Bracus") (collectively "Defendants") plausibly or sufficiently state a Lanham Act violation because Plaintiff does not and cannot allege trademark use by Tri-Vin or Bracus of any protectable mark belonging to Plaintiff. Buried in obfuscation and a myriad of irrelevant allegations, Plaintiff's asserted marks center upon the word "vampire," yet the only accused products attributed to Tri-Vin and Bracus are the red wine products called "Bloody Merlot" and "Bloody Cabernet." On the face of Plaintiff's allegations, the terms "Bloody Merlot" and "Bloody Merlot" are not confusingly similar to any of Plaintiff's asserted marks, nor can it be: as Plaintiff concedes, "bloody" is a purely descriptive term for the deep red and blood-like color of red wine varietals—in this case, merlot and cabernet.

Indeed, many other wine purveyors use the term "blood" or "bloody" in this way, and these terms are no more associated with or indicative of Tri-Vin, Bracus, or Plaintiff as the source of this wine than the many other wine purveyors who use these words.  Request for Judicial Notice, Exhibits 1-14 (existing trademark registrations issued by the USPTO for the words "blood" or "bloody" for wine products).  Plaintiff's scattershot allegations of its registered and common law marks centered on the word "vampire" fails to state a claim against Tri-Vin and

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Bracus as to the "Bloody Merlot" and "Bloody Cabernet" wines, which are the only products attributed by Plaintiff to Defendants for its claims.

Second, Plaintiff's claim for dilution fails as a matter of law because Plaintiff has not sufficiently alleged its "Vampire" mark is famous. Plaintiff does not and cannot allege sufficient facts that its mark is truly prominent and renowned such that is a household name under the exceedingly stringent test for fame. Thus, this claim fails as a matter of law.[1]

Third, Plaintiff's claims for common law trademark and unregistered trade dress infringement are also not sufficiently alleged to provide adequate notice to Defendants as to what actual marks or packaging Plaintiff asserts as infringed. Plaintiff's common law infringement and trade dress claims hinge on Plaintiff's untenable and broad claims of common law ownership for anything vampire-themed, which is beyond the scope of any rights that trademark law may confer. Plaintiff cannot claim trademark or trade dress ownership of a theme or a concept and, thus, these claims also fail.

Fourth, Plaintiff's request for punitive damages is improper and unallowable for trademark claims under the Lanham Act. Similarly, for its state law claims, Plaintiff has not alleged any conduct by Defendants even remotely rising to the level of "oppression, fraud, or malice," rendering punitive damages unavailable as a matter of law under Cal. Civ. Code § 3294(a).

Fifth, Plaintiff has also failed to join a necessary party, Fior Di Sole, LLC, a California company, co-owns the Vampire trademark registration number 2263907 for wine, which is the principal mark at the heart of this matter. As Fior Di Sole's rights may be impacted in this suit, it is a necessary party. Request for Judicial Notice, Ex. 15, available at:

---

[1] During the meet and confer process, Plaintiff's counsel has agreed to withdraw Count VI for dilution under 15 U.S.C. 1125(c).

MEMORANDUM OF POINTS AND AUTHORITIES

https://assignments.uspto.gov/assignments/assignment-tm-5950-0355.pdf. (last visited February 23, 2021.)

## II.   STATEMENT OF FACTS

### A.   The Complaint and Plaintiff's Allegations

In its FAC, Plaintiff alleges claims for intentional interference with contractual relations against Tri-Vin, and trademark infringement, false designation, dilution, and unfair competition against Tri-Vin and Bracus. FAC ¶¶ 1, 4-7. Plaintiff asserts a series of registered and common law trademarks incorporating the word "vampire," and based on these asserted marks, claims that Tri-Vin and Bracus committed infringement and related violations for selling and marketing wines called "Bloody Merlot" and "Bloody Cabernet." FAC ¶¶ 44-45, 52, 67.

Tri-Vin and Bracus are importers and distributors of wine, servicing retailers, wholesalers, and distributors. FAC ¶¶ 6-8. Tri-Vin has imported wine from defendant Cramele Recas in Romania in the past, but it does not act as an agent for Cramele Recas, which is a distinct, unrelated, and separate entity. FAC ¶¶ 6, 52.

## III.   LEGAL STANDARDS AND ARGUMENT

### A.   Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

#### 1.   Legal Standard Under Rule 12(b)(6)

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires a plaintiff to allege facts that add up to "more than a sheer possibility that a [d]efendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-8-

suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.  And, while a court must generally accept factual allegations as true, it should not draw unreasonable inferences, credit conclusory legal allegations cast in the form of factual allegations, or credit allegations inconsistent with matters subject to judicial notice. *See Twombly*, 550 U.S. at 553-56, 558.

> 2.    **Counts IV-VIII Fail: As a Matter of Plausibility, There is No Likelihood of Confusion Between Defendant Recas' "Bloody Merlot" and "Bloody Cabernet" Wines and Plaintiff's "Vampire" Wine**

15 U.S.C. § 1114 outlines the elements of infringement of registered trademarks as follows:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant.

Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person… shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES

1   The test for likelihood of confusion is whether a "reasonably prudent

2   consumer" in the marketplace is likely to be confused as to the origin of the good

3   or service. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th

4   Cir. 1998). The likelihood of confusion must be probable, not just possible.

5   *Murray v. Cable Nat. Broad. Co*., 86 F.3d 858, 861 (9th Cir. 1996).

6   In order to determine the likelihood of confusion, courts use the trademark

7   infringement analysis. *See Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763,

8   781 (1992) (Stevens J., concurring) ("Whether we call the violation infringement,

9   unfair competition, or false designation of origin, the test is identical – is there a

10   likelihood of confusion?"); *see also Brookfield Commc'ns, Inc. v. W. Coast Ent.*

11   *Corp.*, 174 F.3d 1046, n. 6 (9th Cir. 1999) (a claim for false designation of origin is

12   subject to the same standard as trademark infringement but does not require the

13   mark to be registered).

14   Accordingly, the Court may look to the *Sleekcraft* factors in its analysis: (1)

15   strength of the mark; (2) relatedness of the goods; (3) similarity of sight, sound,

16   meaning; (4) evidence of actual confusion; (5) marketing channels; (6) type of

17   goods and purchaser care; (7) intent; and (8) likelihood of expansion. *AMF, Inc. v.*

18   *Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979). Several of these factors are

19   uniquely applicable to trademark infringement, but the overall framework is

20   helpful to assess whether there is a likelihood of confusion. *See E & J Gallo*

21   *Winery v. Gallo Cattle Co*., 967 F.2d 1280, 1290 (9th Cir. 1992) ("The list of

22   factors… is neither exhaustive nor exclusive. Rather, the factors are intended to

23   guide the court in assessing the basic question of likelihood of confusion"); *see*

24   *also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)

25   ("Although the *Sleekcraft* test plays an important role in the analysis of whether a

26   likelihood of confusion exists, it is the totality of facts in a given case that is

27   dispositive").

28   ///

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-10-

In determining whether two marks are similar, courts consider their sight, sound and meaning. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000); *Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir. 1993)*. "In analyzing this factor, the marks must be considered in their entirety and as they appear in the marketplace." *Brookfield*, 174 F.3d at 1054 (citations omitted). According to the "anti-dissection" rule, courts may not dissect marks to examine and compare their component parts. *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1082 (9th Cir. 2005); *Moose Creek, Inc. v. Abercrombie & Fitch Co., 331 F. Supp. 2d 1214, 1226 (C.D. Cal.), aff'd, 114 F. App'x 921 (9th Cir. 2004)*. Although the court may give greater weight to a dominant feature of a mark, the court's analysis must ultimately consider and compare the marks in their entirety because "the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace." *Id.*; *Official Airline Guides, Inc.*, 6 F.3d at 1392.

Plaintiff's asserted registered marks center on the word "vampire" and expressly include that word. FAC ¶ 12 (alleging a "family" of marks for VAMPIRE, VAMPYRE, VAMP H20, VAMPIRE TACO). Plaintiff also asserts marks for TASTE OF IMMORTALITY and SIP THE BLOOD OF THE VINE. *Id.* at ¶¶ 14, 16. None of these asserted marks are even remotely close to the name of the accused products "Bloody Merlot" and "Bloody Cabernet." Therefore, on the face of the allegations, there can be no infringement because none of Plaintiff's alleged marks cover the phrase "Bloody Merlot" or "Bloody Cabernet."

Plaintiff's allegations of similarity and confusion, and that its registered marks cover "blood and blood images and bats . . ." and "blood sucker" strain credulity. FAC ¶¶ 16, 106. Plaintiff's registered marks are those incorporating the word "vampire" or variants like "vampire" and "vamp"; these registered marks plainly do not include "blood and blood images and bats." FAC ¶¶ 12. Plaintiff's mark in the phrase "SIP THE BLOOD OF THE VINE" must be examined in its

MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  entirety, and in that context, there can be no confusion with the phrase "Bloody

2  Merlot" or "Bloody Cabernet" or "Land of the Blood Suckers" on the accused

3  products attributed to Defendants.

4        Plaintiff makes several conclusory statements and does not plead facts, let

5  alone facts sufficient to state a plausible claim that Tri-Vin or Bracus violated the

6  Lanham Act as to Plaintiff's registered marks, resulting in a likelihood of

7  confusion. Plaintiff simply states "vampire" and "blood sucker" are confusing, but

8  by their sight, sound, and appearance, they are not. In any event, Plaintiff does not

9  allege with specificity facts about how "Bloody Merlot" and "Bloody Cabernet"

10 infringe asserted marks in "vampire" or "sip from the blood of the vine," or how

11 Defendants specifically have committed any infringement through the sale of the

12 accused products "Bloody Merlot" and "Bloody Cabernet."  Plaintiff does not have

13 any rights in the words "blood" or "bloody," which are used by many wine

14 purveyors, including for red wine for its blood-like color, showing that these words

15 are not indicative of Plaintiff as the products' source nor exclusive to Plaintiffs.

16 *See* Request for Judicial Notice ("RJN"), Exhibits 1-14 (existing trademark

17 registrations issued by the USPTO for the words "blood" or "bloody" for wine

18 products); *compare* FAC ¶ 121 (acknowledging descriptive product attribute of

19 having "so much red coloring that it turns your lips red . . .").

20       "If the pleadings show that confusion between the alleged infringing term

21 and the registered trademark is unlikely, the claim for infringement should be

22 dismissed." *Murray v. Cable NBC*, 86 F.3d 858, 860 (9th Cir.1996). Courts facing

23 similar facts have reached the same conclusion. *See, e.g., JL Beverage Co., LLC v.*

24 *Beam, Inc.*, 899 F. Supp. 2d 991 (D. Nev. 2012) (denying preliminary injunction

25 where plaintiff asserted trademark rights in JOHNNY LOVE VODKA and a

26 design of lips, finding that defendant's use of PUCKER and a similar but non-

27 identical lip design was not likely to be held infringing because plaintiff's mark

28 lacked conceptual strength in a crowded field, marks sounded nothing alike and

1   used different fonts and colors, and the lips designs were distinguishable); *Marvel*

2   *Enter., Inc. v. NCSoft Corp.*, 2005 WL 878090 at *4 (C.D. Cal. Mar. 9, 2005)

3   (Klausner, J.) (dismissing claim for trademark infringement finding no plausible

4   likelihood of confusion between STATESMAN and CAPTAIN AMERICA);

5   *Mintz v. Subaru of Am., Inc.*, 2016 WL 5909360 at *1–2 (N.D. Cal. Oct. 11, 2016)

6   (dismissing claim for trademark infringement finding no plausible likelihood of

7   confusion between SHARE THE LOVE and A WORLD OF LOVE).

8           **3.**     **Counts IV-VIII Fail: VFB Fails to State Sufficient Facts to**

9                **Show Common Law Trademarks or Trade Dress in the Generic, Commonplace Idea and Theme of Vampires**

10        Plaintiff alleges broad monopolistic rights in unregistered common law

11   trademarks for the concept and idea of vampires and associated imagery, which is

12   within the public domain and generic.  Plaintiff avers that its unregistered common

13   law marks and trade dress include "vampire bats, and blood drops on wine bottle

14   labels, and other associated product packaging product packaging and promotional

15   materials, the use of coffin shaped boxes for wine, the use of vampire capes for

16   draping on bottles of wine, and the use of blood red capsules on its bottles of

17   Vampire Wine." FAC ¶ 15-16, 46, 51, 67, 120-121.

18        "To establish common law trademark rights in the absence of federal

19   registration, a plaintiff must plead and prove that it is the senior user of the mark

20   with sufficient market penetration to preclude the defendant from using the mark in

21   a specific geographic market. . . ."  *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d

22   1109, 1118 (S.D. Cal. 2014). "[T]hese are two independent determinations—

23   seniority of use and market penetration—both of which must be satisfied in the

24   absence of federal registration." *Id. See Antiaging Inst. of California, Inc. v.*

25   *Solonova, LLC*, 2015 WL 12792028 (C.D. Cal. Nov. 19, 2015) (Birotte, J.)

26   (dismissing § 1125 claim where plaintiff failed to plead that it was the first ever to

27   use an asserted mark in commerce, even where plaintiff had pled priority as to

28   defendant). Sufficient market penetration is determined by "examining the

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-13-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  trademark user's volume of sales and growth, number of persons buying the

2  trademarked product in relation to the number of potential purchasers, and the

3  amount of advertising" in a given market. *Credit One Corp. v. Credit One Fin.,*

4  *Inc., 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009).*

5       VFB's claims are premised on alleged common law rights, but the FAC does

6  not allege any facts related to its priority in such mark, nor any allegations related

7  to its market penetration.  Its allegations, however, go no further than asserting that

8  it sold wine under these brands—without describing when those sales first took

9  place or any other details. FAC. ¶¶ 23, 35, 77.  Courts routinely dismiss trademark

10 infringement claims where plaintiffs fail to adequately allege protectable common-

11 law trademarks. *See Antiaging Inst.*, 2015 WL 12792028 (dismissing complaint);

12 *Pro.'s Choice Sports Medicine Prods., Inc. v. Eurow & O'Reilly Corp.*, 2013 WL

13 12077438 at *3–4 (S.D. Cal. Nov. 12, 2013) (dismissing claims based on common-

14 law trademark infringement where plaintiff's allegations lacked facts related

15 priority of use and market penetration); *Sebastian Brown Prods., LLC v. Muzooka,*

16 *Inc.*, 143 F. Supp. 3d 1026, 1040–41 (N.D. Cal. 2015) (dismissing infringement

17 claim where plaintiff failed to adequately allege when its common-law trademark

18 priority arose).

19       Moreover, on the face of Plaintiff's allegations, Plaintiff has not sufficiently

20 pleaded how Tri-Vin or Bracus has infringed these alleged common law rights—

21 i.e., what elements of Plaintiff's unregistered trade dress, and what aspects of the

22 unspecified common law marks are allegedly infringed—beyond permissible use

23 of vampire imagery that is commonplace and generic as part of the vampire idea

24 and theme that is not proprietary to any single person, much less Plaintiff.

25       Trade dress does not protect "an idea, a concept, or a generalized type of

26 appearance." *Jeffrey Milstein, Inc. v. Gregor, Lawlor, Roth, Inc.*, 58 F.3d 27, 32-33

27 (2d Cir. 1995). "The concept of 'trade dress' is pliable, but it cannot be stretched to

28 give exclusive rights to a vague and abstract image or marketing theme of a

-14-

MEMORANDUM OF POINTS AND AUTHORITIES

product." 1 McCarthy on Trademarks and Unfair Competition § 8:6 (5th ed.)
"'Protection of a marketing approach [as trade dress] under [Lanham Act] section
43(a) would be inconsistent with the goals of our free enterprise system.'  While
similar marketing techniques may be considered in comparing the similarity of
allegedly conflicting marks, 'it is clear that such techniques are not, in and of
themselves, *independently* protectable.' . . . The Lanham Act is designed to protect
specific trademarks, not a generalized marketing practice.  *Id.* (citing *Woodsmith
Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 15 U.S.P.Q.2d 1053 (8th Cir.
1990); *Revlon, Inc. v. Jerell, Inc.*, 713 F. Supp. 93, 11 U.S.P.Q.2d 1612 (S.D.N.Y.
1989); *Nature's Way Products, Inc. v. Nature-Pharma, Inc.*, 736 F. Supp. 245, 16
U.S.P.Q.2d 1063 (D. Utah 1990)) (alterations and emphasis in original).  "The rule
that generalized concepts and marketing themes are not protectable property
cannot be side-stepped by using the tort of conversion and suing for 'conversion'
of a business concept.  1 McCarthy on Trademarks and Unfair Competition § 8:6
(citing *Aromatique, Inc. v. Gold Seal*, 28 F.3d 863, 31 U.S.P.Q.2d 1481, 1483 (8th
Cir. 1994) ("Trade dress does not protect one from a competitor's imitation of
one's marketing concept."); *Hurst v. Dezer/Reyes Corp.*, 82 F.3d 232, 38
U.S.P.Q.2d 1589 (8th Cir. 1996) (concept and theme for a bar-restaurant could not
be "converted" as property apart from traditional trademark law)).

There are no exclusive trademark or trade dress rights in thematic designs
and concepts emanating from styles or trends in existence long before a plaintiff's
trademark claims.  For example, in *Walker & Zanger, Inc. v. Paragon Industries,
Inc.*, 549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007), the court held that there were
no trade dress protections for designs for decorative tiles described by terms such
as "a palette of colors reminiscent of Provence" and "a rustic look." 1 McCarthy on
Trademarks and Unfair Competition § 8:6 (citing *Walker & Zanger, Inc. v.
Paragon Industries, Inc.*, 549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007).  The court
held that these designs and concepts "fail to prove adequate notice to competitors

-15-

MEMORANDUM OF POINTS AND AUTHORITIES

1   in the decorative tile business regarding the breadth of plaintiff's exclusivity

2   rights." *Id.*  The design was held to be "generic" because it was used by several

3   other competitors in the market to copy "styles that craftsmen have used for

4   centuries." *Id.*  "While a product or package may be the embodiment of a new idea

5   or concept, the only candidate for the market exclusivity granted by trade dress

6   protection is the specific embodiment, not the idea or concept itself." 1 McCarthy

7   on Trademarks and Unfair Competition § 8:6 (5th ed.).

8        Plaintiff attempts to make the same flawed arguments as the plaintiff in

9   *Walker* by claiming common law trademark and trade dress protection for a mere

10  marketing theme, concept and idea of vampires and vampire lore dating back

11  centuries, not the specific embodiment of its trade dress. Trademark law does not

12  allow for Plaintiff's appropriation of culture and folklore in the manner that

13  Plaintiff urges.  Plaintiff argues for protection because it has used "vampires,

14  vampire bats and blood" in promotional materials in the past. *See* FAC ¶ 15-16.

15  These arguments are insufficient to state a claim because they are based on

16  appropriation of a commonplace theme and concept—vampires—that are not

17  exclusive to Plaintiff.  To hold otherwise would grant Plaintiff trade dress

18  protection for any product using any marketing theme, concept or idea involving

19  bats, vampire bats, vampire fangs, blood, blood drops, coffins, and capes, which

20  have existed as part of vampire myths for centuries. *See* FAC ¶ 15-16, 46, 51, 67,

21  120-121. Trademark law does not allow Plaintiff to monopolize the themes,

22  concept or idea of vampires or vampirism which has existed for hundreds of years.

23  ///

24  ///

25  ///

26

27

28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-16-

#### 4.  Count VI Fails: VFB Fails to State a Claim for Trademark Dilution Under 15 U.S.C. § 1125(c)[2]

In order to prove a violation, a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment. 15 U.S.C. § 1125(c)(1); California Business and Professions Code § 14330.

To meet the "famousness" element, "a mark must be truly prominent and renowned." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999); *see also Thane Int'l Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir.2002) (noting that trademark dilution is usually reserved for brands that are "household name[s]"). For a plaintiff to establish that the mark is being used in commerce, "the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark." *Thane Int'l,* 305 F.3d at 905 (noting that this circuit's description of dilution by blurring and by tarnishment requires a defendant to use the plaintiff's actual mark) (citation omitted). In order to be nearly identical, two marks "must be 'similar enough that a significant segment of the target group of customers sees the two marks as essentially the same.' " *Id.* at 906 (quoting *Playboy Enters. Inc. v. Welles,* 279 F.3d 796, 806 n. 41 (9th Cir.2002)).

Plaintiff fails to plead sufficient facts that its Vampire mark is actually famous or a household name. *See* FAC ¶ 127.  Plaintiff conclusory alleges that its Vampire wines "have developed a fame all of their own catapulting the VAMPIRE brand into the category of a famous mark."  FAC ¶ 127.  This allegation is insufficient as a matter of law to meet the high bar of fame for dilution claims.

---

[2] During the meet and confer process, Plaintiff agreed to withdraw its dilution claim (Count VI) as to Tri-Vin and Bracus. Defendants anticipate Plaintiff will file a Rule 41 stipulation of dismissal or amend its pleadings shortly. As this Count is still currently pending, Defendants must address it below.

-17-

MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*Arcsoft, Inc. v. Cyberlink Corp*., 153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015)

**5.  Counts VII & VIII Fail: VFB's Unfair Competition Claims Under California Business and Professions Codes §§ 17200 and 17500**

Because VFB's state law claims are predicated upon the alleged Lanham Act violations, which are insufficient as discussed above, those state claims also fail. *Pom Wonderful LLC v. Tropicana Prod., Inc.* No. CV 09-566 DSF (CTX), 2009 WL 10674426, at *4(C.D. Cal. July 6, 2009) (Finding state law claims under §17200 and §17500 failed to plead with sufficient particularity after an analysis and dismissal of plaintiff's Lanham Act claim). Plaintiff's Lanham Act and state law claims rise, and in this case, fall together. *Id.*

**6.  Counts III, IV, V, VI, and VII Fail: VFB's Request for Punitive Damages Fails**

In its Counts III, IV, V, VI, and VII for intentional interference with contractual relations, trademark infringement, false designations, dilution, and unfair competition violations, and prayer for relief, Plaintiff seeks punitive damages under Cal. Civ. Code Section §3294 in connection with Plaintiff's Lanham Act claims, in addition to and separate from allegations requesting treble damages upon a finding of an exceptional case under the Lanham Act.  This is improper and unsupported by law.  Plaintiff's prayer for punitive damages should be dismissed because punitive damages are neither appropriate nor provided for in Lanham Act claims, and in any event, Plaintiff fails to plead its entitlement to punitive damages for its state law claims.

**a.  Plaintiff's Request for Punitive Damages Must Be Dismissed**

The Ninth Circuit has not departed from the majority rule that punitive damages are not appropriate in Lanham Act claims.  *Duncan v. Stuetzle,* 76 F.3d 1480, 1490 (9th Cir. 1996); *Harper House, Inc. v. Thomas Nelson, Inc*., 889 F.2d 197, 200 n. 1 (9th Cir. 1989);  *Nurmi v. Peterson* 1989 U.S. Dist. LEXIS 9765 *10-11,10 U.S.P.Q.2d (BNA) 1775 (C.D. Cal. 1989); *see also Getty Petroleum Corp. v.*

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1   *Bartco Petroleum Corp.*, 858 F.2d 103, 109 (2nd Cir. 1988);

2   Despite this clear holding, Plaintiff prays for punitive damages in paragraphs

3   116 and 124 of the FAC. FAC ¶¶ 116, 124. Such a request is improper and should

4   be stricken because, as a matter of law, Plaintiff is not entitled to punitive damages

5   under the Lanham Act or any other relevant statute.

### b.   Plaintiff's Complaint Does Not Allege Facts Supporting Punitive Damages

8   VFB's claims for punitive damages under its state claims for unfair

9   competition are insufficiently pled and should be dismissed. FAC ¶¶ 102, 137,

10   prayer ¶ 7. To sufficiently plead entitlement to punitive damages, Plaintiff must

11   allege facts demonstrating that Tri-Vin and Bracus are guilty of "oppression, fraud,

12   or malice." Cal. Civ. Code § 3294(a). "Malice" is conducted that is intended to

13   cause harm or "despicable" conduct carried on with a conscious disregard for the

14   rights of others. Cal. Civ. Code § 3294(c)(1). "Oppression" is also despicable

15   conduct and it must subject a person to cruel and unjust hardship in conscious

16   disregard for the person's rights. Cal. Civ. Code § 3294(c)(2). "Used in its ordinary

17   sense, the adjective 'despicable' is a powerful term that refers to circumstances that

18   are 'base,' 'vile,' or 'contemptible.'" *Coll. Hosp., Inc. v. Super. Ct.*, 8 Cal. 4th 704,

19   725 (1994). "Fraud" is "an intentional misrepresentation, deceit, or concealment

20   of a material fact known to the defendant" intended to deprive a person or property

21   or rights or cause injury. Cal. Civ. Code § 3294(c)(3).

22   For punitive damages, there must be more than the commission of a tort.

23   *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 328 (1992). In the case

24   of California common law unfair competition claims, a defendant must have acted

25   in conscious disregard for the rights of another. *Chronicle Pub. Co. v. Legrand*,

26   No. C-88-1897-DLJ, 1992 WL 420808, at *3 (N.D. Cal. Sept. 3, 1992) *See also Id.*

27   at no. 5 ("it appears to the Court that only passing-off cases should give rise to

28   punitive damage claims").

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-19-
MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  Plaintiff does not sufficiently allege any conduct by Tri-Vin or Bracus that is

2  "vile," "base," "contemptible," or fraudulent.  At best, Plaintiff alleges that Tri-Vin

3  and Bracus sold the accused Bloody Merlot and Bloody Cabernet products, not that

4  Tri-Vin and Bracus participated in the design and selection of the commonplace

5  vampire imagery and thematic elements (they did not).  Plaintiff cannot and does

6  not allege any conduct beyond resale of wine products using the term "bloody"

7  descriptively for its color and reflecting generic folkloric imagery, not actual use,

8  much less infringement, of Plaintiff's actual registered marks. Thus, Plaintiff's

9  claim for punitive damages fails as a matter of law and should be dismissed.

10  **B.**  **Plaintiff Failed to Join a Party, Fior Di Sole, LLC, Under Rule 19**

11  **1.**  **Legal Standard Under Rule 12(b)(7)**

12  A motion to dismiss for failure to join an indispensable party pursuant to

13  Rule 19 poses "three successive inquiries": (1) whether an absent party is a

14  necessary party; (2) whether joinder is feasible; and (3) whether an absent party is

15  indispensable. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir.

16  2005). In deciding a Rule 12(b)(7) motion, courts may consider evidence outside

17  of the pleadings.  *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960);

18  *Camacho v. Major League Baseball*, 297 F.R.D. 457, 461 (S.D. Cal. 2013).

19  **a.**  **Fior Di Sole is a necessary party**

20  Necessary persons for purposes of Rule 19's mandatory joinder rule are

21  persons who are subject to service of process and whose joinder will not deprive

22  the court of subject matter jurisdiction, who "hav[e] an interest in the controversy,

23  and who ought to be made parties, in order that the court may act." Fed. R. Civ.

24  Proc. 19(a); *Peabody W. Coal Co.*, 400 F.3d at 779.

25  "Courts have consistently held that the owner of an allegedly infringed

26  intellectual property right is a person needed for just adjudication under [Fed. R.

27  Civ. P.] 19." *Golden Temple of Oregon, LLC v. Wai Lana Prods., LLC*, No. 03:09-

28  CV-902-HZ, 2011 WL 6070385, at *2 (D. Or. Dec. 5, 2011). This applies equally

-20-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  to *co-owners* of trademarks—all owners must be joined as plaintiffs to an
2  infringement action. *See Ferrer v. Hollywood for Children, Inc.*, No. 2:17-CV-
3  7318-CBM-FFM, 2018 WL 5267084 (C.D. Cal. Mar. 14, 2018).

4       Fior Di Sole, LLC, a California company, co-owns the Vampire trademark
5  registration number 2263907 for wine, which is the principal mark at the heart of
6  this matter. *See* RJN, Exhibits 15-16. As a practical matter, Fior Di Sole, as a fifty
7  percent owner of the Vampire mark, has an interest in the action, which will likely
8  impact its ownership interest. Its omission renders Tri-Vin and Bracus subject to
9  the possibility of a duplicative action for substantially the same conduct, in
10  violation of Rule 19. Fior Di Sole is a necessary party. *See Parkinson v. Robanda
11  Int'l, Inc.*, 2016 WL 6953456 at *2 (C.D. Cal. Sep. 6, 2016) (Real, J.) (requiring
12  plaintiff to join trademark co-owner as co-plaintiff in response to Rule 12(b)(7)
13  motion); *see Razavi v. Caliber Home Loans, Inc.*, 2018 WL 6016168 at *4 (C.D.
14  Cal. Apr. 9, 2018) (Staton, J.) (granting motion to dismiss claim under Fed. R. Civ.
15  P. 12(b)(7) and directing plaintiff to either join necessary party as co-plaintiff in
16  amended complaint or comply with Fed. R. Civ. P. 19(c)).

17          **b.**    **Joinder is Feasible**

18       If an absentee is a necessary party under Rule 19(a), the second stage is for
19  the court to determine whether it is feasible to order that the absentee be joined.
20  *Peabody W. Coal Co.*, 400 F.3d at 779.  Fior Di Sole is a California company and
21  co-owner of the Vampire mark at issues in this case. There is no reason to believe
22  that Fior Di Sole is not subject to service of process in this Court. According to the
23  public assignment documents recorded under the Vampire trademark registration,
24  Fior Di Sole is a limited liability company formed under the laws of California
25  with an address of record in Napa, California.  As such, it is feasible to join Fior Di
26  Sole. As joinder is feasible, the third prong is not analyzed.

27  ///

28  ///

MEMORANDUM OF POINTS AND AUTHORITIES

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Tri-Vin and Bracus respectfully request the Court dismiss the First Amended Complaint based on a failure to state a claim, in the first instance, and given the failure to join an indispensable party, in the alternative.

Respectfully submitted,

Dated:   March 10, 2021

GORDON REES SCULLY
MANSUKHANI, LLP

By:   /s/ Craig J. Mariam
_____
Craig Mariam
Dinesh Joshi
Attorneys for Defendant
TRI-VIN IMPORTS, INC. and
BRACUS IMPORTS LLC

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1225042/56980655v.1

MEMORANDUM OF POINTS AND AUTHORITIES