HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
777 S. Figueroa Street, Suite 4200
Los Angeles, California 90017
Telephone:  (213) 395-7620
Facsimile:   (213) 395-7615

Attorneys for Defendant S.C. Cramele Recas, S.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| Vampire Family Brands, LLC, | Case No. 2:20-cv-8223-VBF-PVC |
|---|---|
| Plaintiff, | **Memorandum of Points and Authorities In Support of Defendant S.C. Cramele Recas, S.A's Motion to Dismiss (FRCP 12(b)(1), (b)(6), and 12(b)(7))** |
| v. | |
| S.C. Cramele Recas, S.A., Tri-Vin Imports, Inc., Bracus Imports, LLC, and Does 1-20, | |
| Defendants. | Judge:   Hon. Valerie Fairbank |

# **TABLE OF CONTENTS**

**Page**

I.    Introduction ........................................................................................ 1

II.   Legal Standard .................................................................................. 2

      A.   Fed. R. Civ. P. 12(b)(6) ....................................................... 2

      B.   Fed. R. Civ. P. 12(b)(7) ....................................................... 3

III.  Argument ........................................................................................... 4

      A.   To the extent Counts IV through VIII rely on the VAMPIRE mark and U.S. Reg. No. 2263907, they must be dismissed for failure to join the mark's co-owner as an indispensable party.............. 4

      B.   Counts V, VII, and VIII must additionally be dismissed because Vampire has not plausibly alleged common-law rights in the DRACULA'S BLOOD or THE LEGEND LIVES marks, or its alleged trade dress ........................................................................ 7

      C.   Counts IV, V, VII, and VIII must be dismissed because Vampire has not plausibly alleged a likelihood of confusion between its VAMPIRE marks and Cramele's alleged use of "Bloody Merlot," "Blood Suckers," and "Land Der Vampires" .................... 11

      D.   Count VI must be dismissed because Vampire has not adequately pled fame sufficient to support a dilution claim.............................. 16

      E.   Vampire's requests for punitive damages in Counts IV through VII are insufficiently pleaded and unjustified, and must be dismissed........................................................................................ 18

      F.   Count II must be dismissed because Vampire has not alleged a breach of the covenant of good faith and fair dealing separate and apart from breach of contract.................................................. 20

      G.   If the Court dismisses Vampire's Lanham Act claims, Vampire's state-law claims should be dismissed for lack of subject matter jurisdiction ............................................................................... 22

IV.   Conclusion ........................................................................................ 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*91 Enter., LLC v. Body Frenzy, Inc.*,
   2018 WL 6787348 (C.D. Cal. Oct. 24, 2018) ................................................ 24

*Adobe Sys. Inc. v. Christenson*,
   809 F.3d 1071 (9th Cir. 2015) ................................................................... 12

*Aegis Software, Inc. v. 22nd Dist. Ag. Ass'n.*,
   255 F. Supp. 3d 1005, 1009–10 (S.D. Cal. 2017) ......................................... 8

*Americold Realty Trust v. Conagra Foods, Inc.*,
   136 S. Ct. 1012 (2016) ............................................................................. 23

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) .................................................................... 12

*Antiaging Inst. of California, Inc. v. Solonova, LLC*,
   2015 WL 12792028 (C.D. Cal. Nov. 19, 2015) (Birotte, J.) ....................... 7, 8

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 454 (1994) ............................................................................... 21

*Arcsoft, Inc. v. Cyberlink Corp.*,
   153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) ........................................... 17

*Aromatique, Inc. v. Gold Seal*,
   28 F.3d 863 (8th Cir. 1994) ...................................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 3

*Avery Dennison Corp. v. Sumpton*,
   189 F.3d 868 (9th Cir. 1999) .................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 3

*Binder v. Disability Grp, Inc.*,
   772 F. Supp. 2d 1172 ............................................................................... 18

*Brookfield Communications, Inc. v. West Coast. Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999).................................................................14, 15

*Careau & Co. v. Security Pac. Bus. Credit, Inc.*,
    222 Cal. App. 3d 1371 (1990)...............................................................20, 22

*Carma Developers (California), Inc. v. Marathon Development*
    *California, Inc.*,
    2 Cal. App. 4th 342 (1992).........................................................................20

*Caviness v. Horizon Community Learning Center, Inc.*,
    590 F.3d 806 (9th Cir.2010) .........................................................................3

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988).....................................................................13

*Choice Sports Medicine Prods., Inc. v. Eurow & O'Reilly Corp.*,
    2013 WL 12077438 (S.D. Cal. Nov. 12, 2013)............................................8

*Chronicle Pub. Co. v. Legrand*,
    1992 WL 420808 (N.D. Cal. Sept. 3, 1992) ...............................................19

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ........................................................................3

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001)......................................................................9

*Coll. Hosp., Inc. v. Super. Ct.*,
    8 Cal. 4th 704 (1994)..................................................................................19

*Color Image Apparel, Inc. v. Honey*,
    2006 WL 8434610 (C.D. Cal. Aug. 23, 2006).............................................15

*Credit One Corp. v. Credit One Fin., Inc.*,
    661 F. Supp. 2d 1134 (C.D. Cal. 2009) ........................................................7

*Doppes v. Calif. Scents, LLC*,
    2018 WL 3583052 (C.D. Cal., Jul. 25, 2018)..............................................24

*Duncan v. Stuetzle*,
    76 F.3d 1480 (9th Cir. 1996) ......................................................................18

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir.2002).....................................................................14

-iii-

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir.1996) ........................................................................3

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
    545 U.S. 546 (2005) ...............................................................................23

*Ferrer v. Hollywood for Children, Inc.*,
    2018 WL 5267084 (C.D. Cal. Mar. 14, 2018) (Marshall, J.)............................5

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010)......................................................................22

*Gibson v. Chrysler Corp.*,
    261 F.3d 927 (9th Cir. 2001) .......................................................................24

*Golden Temple of Oregon, LLC v. Wai Lana Prods., LLC*,
    2011 WL 6070385 (D. Or. Dec. 5, 2011).........................................................5

*Hanginout, Inc. v. Google, Inc.*,
    54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014).....................................................7

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989) ......................................................................18

*Hurst v. Dezer/Reyes Corp.*,
    82 F.3d 232 (8th Cir. 1996) ........................................................................10

*Ismail v. Freeman*,
    936 F. Supp. 2d 1157 (C.D. Cal. 2012) (Fairbank, J.)................................. 2, 23

*Jeffrey Milstein, Inc. v. Gregor, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995)..............................................................................9

*JL Beverage Co., LLC v. Beam, Inc.*,
    899 F. Supp. 2d 991 (D. Nev. 2012) ...........................................................16

*Johnson v. Columbia Props. Anchorage, LP*,
    437 F.3d 894 (9th Cir. 2006) .......................................................................23

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) .......................................................................23

*Lisseveld v. Marcus*,
    173 F.R.D. 689 (M.D.Fla.1997) ...................................................................5

17346597.1

*Marvel Enter., Inc. v. NCSoft Corp.*,
2005 WL 878090 (C.D. Cal. Mar. 9, 2005) (Klausner, J.)..............................16

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
290 F.Supp.2d 1083 (C.D.Cal. 2003) ...........................................................14

*Mintz v. Subaru of Am., Inc.*,
2016 WL 5909360 (N.D. Cal. Oct. 11, 2016)................................................16

*Mock v. Mich. Millers Mut. Ins. Co.*,
4 Cal. App. 4th 306 (1992)...........................................................................19

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
331 F.Supp.2d 1214 (C.D. Cal. 2004) ..........................................................14

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015) ........................................................................12

*Murray v. Cable Nat. Broadcasting Co.*,
86 F.3d 858 (9th Cir. 1996)....................................................................13, 16

*Nature's Way Products, Inc. v. Nature-Pharma, Inc.*,
736 F. Supp. 245 (D. Utah 1990)..................................................................10

*NewGen, LLC v. Safe Cig, LLC*,
840 F.3d 606 (9th Cir. 2016) ........................................................................23

*Next Level Sportsystems, Inc. v. S&S Activewear*,
2019 WL 1077129 (N.D. Ill. Mar. 7, 2019)....................................................6

*Official Airline Guides, Inc. v. Goss*,
6 F.3d 1385 (9th Cir.1993)............................................................................15

*One Industries, LLC v. Jim O'Neal Distributing, Inc.*,
578 F.3d 1154 (9th Cit. 2009).......................................................................14

*Parkinson v. Robanda Int'l, Inc.*,
2016 WL 6953456 (C.D. Cal. Sep. 6, 2016) (Real, J.)....................................6

*Pasadena Live, LLC v. City of Pasadena*,
114 Cal. App. 4th 1089 (2004).....................................................................20

*Razavi v. Caliber Home Loans, Inc.*,
2018 WL 6016168 (C.D. Cal. Apr. 9, 2018) (Staton, J.).................................6

*Reno Air Racing Ass'n., Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006)..................................................................12

*Revlon, Inc. v. Jerell, Inc.*,
    713 F. Supp. 93 (S.D.N.Y. 1989) ..........................................................10

*In re Rigel Pharms., Inc. Securities Lit.*,
    697 F.3d 869 (9th Cir.2012) ....................................................................3

*Sebastian Brown Prods., LLC v. Muzooka, Inc.*,
    143 F. Supp. 3d 1026, 1040–41 (N.D. Cal. 2015)..................................8

*Shaterian v. Wells Fargo Bank*,
    829 F. Supp. 2d 873 (N.D. Cal. 2011).................................................20

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
    305 F.3d 894 (9th Cir. 2002) ................................................................17

*Walker & Zanger, Inc. v. Paragon Industries, Inc.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) ................................................10

*Woodsmith Publishing Co. v. Meredith Corp.*,
    904 F.2d 1244 (8th Cir. 1990)...............................................................10

**Statutes**

15 U.S.C. § 1125...............................................................................11, 16

15 U.S.C. § 1127........................................................................................21

28 U.S.C. § 1331.......................................................................................22

28 U.S.C. § 1332.......................................................................................22

28 U.S.C. § 1338.......................................................................................22

28 U.S.C. § 1367.......................................................................................22

Cal. Civ. Code § 3294.........................................................................18, 19

California Business and Professions Code § 17200 .............................12, 13, 18

**Other Authorities**

1 McCarthy on Trademarks and Unfair Competition § 8:6 ...........................9, 10

1

4 McCarthy on Trademarks and Unfair Competition § 23:76.............................. 21

2

5 McCarthy on Trademarks and Unfair Competition § 30:97............................. 18

3

Fed. R. Civ. P. 8........................................................................................... 8

4

5

Fed. R. Civ. P. 12 ................................................................................. *passim*

6

Fed. R. Civ. P. 19 ................................................................................. *passim*

7

LR 7-3 ..................................................................................................... 17

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      Introduction

Plaintiff Vampire Family Brands, LLC's ("VFB") First Amended Complaint (Dkt. 27) (referred to herein as the operative "Complaint") represents an attempt to address the paucity of allegations and deficiencies in its original complaint by taking the "shotgun approach" with new disorganized and incoherent allegations of trademark infringement, trademark dilution, and breach of contract. But, after piecing together VFB's claims with its alleged trademark and trade dress rights, VFB's position is clear: it owns a monopoly over all horror and Halloween-themed words and imagery in the field of alcoholic beverages somehow related to vampires, including apparently drops of blood, bats, Dracula, or Transylvania.

The Complaint is deficient at its very foundation. VFB's trademark infringement claims under federal and state law are based principally on its trademark VAMPIRE, allegedly used in connection with wine, and its corresponding United States trademark registration. But VFB failed to join the co-owner of the VAMPIRE mark and registration, a California-based company named Fior Di Sole, LLC, which is a necessary and indispensable party under Fed. R. Civ. P. 19. Because VFB's Complaint fails to comply with Fed. R. Civ. P. 19(c) and lacks allegations detailing why the trademark co-owner cannot be joined, the Court should dismiss the infringement claims to the extent they rely on the VAMPIRE mark in connection with wine. VFB has also failed to allege facts sufficient to show that it has protectable common-law trademark rights in certain Halloween-themed imagery that it claims to own, particularly in VFB's purported DRACULA'S BLOOD mark, THE LEGEND LIVES mark, and its alleged unregistered trade dress. So, for the same reasons, VFB cannot state a claim for trademark infringement to the extent it relies on these common-law marks.

Considered in this more narrow frame, VFB takes an implausible view of the strength of its trademark rights, and it accordingly cannot state a claim for trademark infringement based on the alleged use by Cramele Recas of the words BLOOD or

1  BLOODY, LAND OF THE BLOOD SUCKERS, or LAND DER VAMPIRE on its
2  wine. There simply is no likelihood that consumers will be confused.

3      This is not the only deficiency in the Complaint. VFB's claim for dilution of
4  its trademark must also fail because it has neglected to adequately plead the fame of
5  its marks, which is a statutory requirement for the claim. Indeed, VFB has already
6  represented to counsel for Defendants that it would withdraw this claim. VFB's
7  prayer for punitive damages also fails, in part because punitive damages are simply
8  not available for Lanham Act claims and in part because VFB has not alleged
9  Cramele Recas engaged in conduct of oppression, fraud, or malice. And VFB asserts
10  a claim for breach of the covenant of good faith and fair dealing arising out of the
11  Stipulated Judgment entered into between TI Beverage Group, Ltd. ("TI Beverage")
12  (VFB's alleged predecessor-in-interest) and Cramele Recas in 2008. But the conduct
13  it complains of is entirely identical to the conduct it alleges constitutes a breach of
14  that agreement's express terms. California law does not recognize a distinction
15  between these two substantially identical claims.

16      Finally, if the Court grants this Motion and dismisses the infringement claims,
17  it should dismiss VFB's breach of contract claim which arises under state law. With
18  no federal Lanham Act claims remaining, the Court should decline to exercise
19  supplemental jurisdiction. And with VFB's new joinder of co-Defendant Bracus
20  Imports, LLC, VFB has failed to allege that there is diversity of citizenship to
21  support the Court's diversity jurisdiction. Cramele Recas respectfully requests,
22  therefore, that the Complaint be dismissed in its entirety.

23  **II.  Legal Standard**

24      **A.  Fed. R. Civ. P. 12(b)(6)**

25      Rule 12(b)(6) authorizes the Court to dismiss a claim for "failure to state a
26  claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Ismail v. Freeman*,
27  936 F. Supp. 2d 1157, 1160 (C.D. Cal. 2012) (Fairbank, J.). "To avoid dismissal, a
28  claim 'must provide more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do.'" *Id.* (citing *In re Rigel Pharms., Inc. Securities Lit.*, 697 F.3d 869, 875 (9th Cir. 2012) (internal quotations omitted)).

Ultimately, the well-pled factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Rigel*, 697 F.3d at 875 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has facial plausibility, for 12(b)(6) purposes, only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Conclusory allegations of law and unwarranted inferences, of course, are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness*, 590 F.3d at 812 (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996)). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." See *Iqbal*, 556 U.S. at 677.

**B.    Fed. R. Civ. P. 12(b)(7)**

Federal Rule of Civil Procedure 12(b)(7) permits a party to file a motion to dismiss for failure to join a party as required under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or

-3-

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If "a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

## III.   Argument

### A.   To the extent Counts IV through VIII rely on the VAMPIRE mark and U.S. Reg. No. 2263907, they must be dismissed for failure to join the mark's co-owner as an indispensable party

For its trademark infringement and related state-law claims, Counts IV through VIII, VFB relies in part on the trademark VAMPIRE and the corresponding U.S. Reg. No. 2263907 for that mark in connection with wine (the "'907 Registration"). First Amended Complaint, Dkt. 27 ("Compl."), ¶ 12. The '907 Registration, according to the records of the USPTO, is co-owned by VFB and Fior Di Sole, LLC ("Fior Di Sole"), a California limited liability company. *See* Request for Judicial Notice ("RJN") Ex. 1. In an assignment document effective as of December 20, 2016 and recorded with the USPTO, VFB's predecessors-in-interest (including one of VFB's attorneys in this matter, in his personal capacity) assigned a "fifty percent (50%) interest" in the VAMPIRE trademark and the '907 Registration to Fior Di Sole. *See* RJN Ex. 2. On the same date, the other fifty percent interest was assigned to VFB. *See* RJN Ex. 3. Accordingly, Fior Di Sole and VFB are equal co-owners of the VAMPIRE trademark and the '907 Registration.[1]

Under Rule 19, Fior Di Sole is an indispensable party whose joinder is required in this action. First, there is no reason to believe that Fior Di Sole is not

---

[1] It is important to note that these assignments to Fior Di Sole and Vampire assigned not only the '907 Registration but also the VAMPIRE mark itself, "the goodwill represented thereby," and "all right, title and interest" therein. RJN Ex. 2. Accordingly, the mark and registration represent a single interest and Vampire cannot assert common-law rights in the VAMPIRE mark under Rule 19 without Fior Di Sole apart from whatever rights are afforded by the '907 Registration.

subject to service of process in this Court. According to the public assignment documents recorded under the '907 Registration, Fior Di Sole is a limited liability company formed under the laws of California with an address of record in Napa, California. *See* RJN Ex. 2. According to the most recent records maintained by the California Secretary of State, Fior Di Sole maintains an agent for service of process in California. *See* RJN Exs. 4, 5.

Second, joinder of Fior Di Sole would not deprive this Court of subject-matter jurisdiction. This action is brought in part under federal-question jurisdiction, specifically the Lanham Act and VFB's allegations of trademark infringement, and in part under supplemental or pendant jurisdiction for VFB's state-law claims, which would be unaffected by Fior Di Sole's joinder. Compl. ¶ 2.

Under Rule 19(a)(1)(B)(ii), Fior Di Sole naturally has an interest relating to the subject of this action because it is listed as co-owner of the VAMPIRE mark, and disposing of this action without Fior Di Sole would leave Cramele Recas subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Without joinder of Fior Di Sole, this Court may only render a judgment in Cramele Recas's favor *only good as against VFB* and not Fior Di Sole. In other words, Cramele Recas may be subject to a *second* infringement claim by Fior Di Sole even after it prevails in this action against VFB, because Fior Di Sole has an equal and undivided interest. "Courts have held consistently that the owner of allegedly infringed intellectual property rights is a person needed for just adjudication under Rule 19." *Golden Temple of Oregon, LLC v. Wai Lana Prods., LLC*, 2011 WL 6070385 at *2 (D. Or. Dec. 5, 2011) (*citing Lisseveld v. Marcus*, 173 F.R.D. 689, 693 (M.D.Fla.1997)). Evidence that a third party is "a co-registrant and co-owner of the trademarks at issue in [an] action demonstrate he is a necessary party because he has an interest in the case." *Ferrer v. Hollywood for Children, Inc.*, 2018 WL 5267084 at *2 (C.D. Cal. Mar. 14, 2018) (Marshall, J.) (citing *Golden Temple*).

Courts facing analogous situations have held that joinder of a co-owner of a trademark is required under Rule 19. In *Next Level Sportsystems, Inc. v. S&S Activewear, LLC*, a plaintiff who was a co-owner of a trademark asserted infringement against one defendant. 2019 WL 1077129 (N.D. Ill. Mar. 7, 2019). The court there noted that, under Rule 19(a)(1)(B)(ii), "a judgment in [defendant's] favor would only be good as against [plaintiff]." *Id.* at *1. The un-joined co-owner, "not being a party, could still sue to protect the trademark, creating the potential for multiple and inconsistent judgments." *Id.* That court also found that, under Rule 19(b)(1), the case should not proceed without the co-owner's joinder because the defendant, "which is of course an 'existing party'—could be prejudiced by multiple inconsistent judgments if [the co-owner] is not joined." *Id.*, at *2.

When asserting a claim for relief, a party must state the name of any party required to be joined if feasible under Rule 19 and the reasons for not joining that person. Fed. R. Civ. P. 19(c). VFB's pleading does not mention Fior Di Sole once. Accordingly, Cramele is unable to determine whether Fior Di Sole's joinder is feasible or whether Fior Di Sole has refused or would refuse to join and thus must be made an involuntary plaintiff under Rule 19(a)(2). It follows, then, because it is clear that the Court cannot render judgment in this case without prejudice to Cramele if Fior Di Sole is absent, that the Court should dismiss and require VFB to join Fior Di Sole as a plaintiff to this action. *See Parkinson v. Robanda Int'l, Inc.*, 2016 WL 6953456 at *2 (C.D. Cal. Sep. 6, 2016) (Real, J.) (requiring plaintiff to join trademark co-owner as co-plaintiff in response to Rule 12(b)(7) motion). If VFB is unable to do, the Court must direct it to comply with Rule 19(c) and explain the reason for non-joinder of Fior Di Sole in its pleading. *Razavi v. Caliber Home Loans, Inc.*, 2018 WL 6016168 at *4 (C.D. Cal. Apr. 9, 2018) (Staton, J.) (granting motion to dismiss claim under Rule 12(b)(7) and directing plaintiff to either join necessary party as co-plaintiff in amended complaint or comply with Rule 19(c)).

The '907 Registration covers wine in International Class 33, which is naturally central to VFB's claims of infringement. Without it, VFB's claims of infringement fall even further below the plausibility threshold. Absent the remediation to VFB's Complaint described in this section, Counts IV through VIII must be dismissed pursuant to Rule 12(b)(7) to the extent they rely on the VAMPIRE trademark or the '907 Registration.

**B.**  **Counts V, VII, and VIII must additionally be dismissed because VFB has not plausibly alleged common-law rights in the DRACULA'S BLOOD or THE LEGEND LIVES marks, or its alleged trade dress**

"To establish common law trademark rights in the absence of federal registration, a plaintiff must plead and prove that it is the senior user of the mark with sufficient market penetration to preclude the defendant from using the mark in a specific geographic market. . . . [T]he Court finds these are two independent determinations—seniority of use and market penetration—both of which must be satisfied in the absence of federal registration." *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014) (denying preliminary injunction where plaintiff had shown priority but not market penetration); *Antiaging Inst. of California, Inc. v. Solonova, LLC*, 2015 WL 12792028 (C.D. Cal. Nov. 19, 2015) (Birotte, J.) (dismissing § 1125 claim where plaintiff failed to plead that it was the first ever to use an asserted mark in commerce, even where plaintiff had pled priority as to defendant). Sufficient market penetration is determined by "examining the trademark user's volume of sales and growth, number of persons buying the trademarked product in relation to the number of potential purchasers, and the amount of advertising" in a given market. *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009).

VFB asserts common-law trademark rights in the mark DRACULA'S BLOOD, which forms part of the basis for Count V. Compl. ¶¶ 77, 119. But VFB's allegations go no further than asserting that it "has sold wine" under this brand—

*without* describing *when* those sales first took place and in what geographic market. *Id.* ¶¶ 23, 77. Indeed, later in the Complaint, VFB incongruously changes its allegation to assert that "*at one point*, Plaintiff's *predecessors in interest* were actively selling" wine under this brand. *Id.* ¶ 119 (emphases added). When did sales begin, by whom, and in what geographic market? Under what basis does VFB claim continuity of trademark rights with its predecessor? Did sales cease at any point in time? Further, the Complaint contains no allegations whatsoever attesting to the market penetration of VFB's DRACULA'S BLOOD mark, whether in terms of volume or in terms of geographic reach. This falls far short of both the standard to plead ownership of a common-law mark as well as the requirement under Fed. R. Civ. P. 8 that pleadings give fair notice to defendants. Accordingly, VFB cannot sustain any trademark infringement or unfair competition claim to the extent it is based on common-law rights in DRACULA'S BLOOD.[2] Courts routinely dismiss trademark infringement claims where plaintiffs fail to adequately allege protectable common-law trademarks. *See Antiaging Inst.*, 2015 WL 12792028 (dismissing complaint); *Pro.'s Choice Sports Medicine Prods., Inc. v. Eurow & O'Reilly Corp.*, 2013 WL 12077438 at *3–4 (S.D. Cal. Nov. 12, 2013) (dismissing claims based on common-law trademark infringement where plaintiff's allegations lacked facts related to priority of use and market penetration); *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1040–41 (N.D. Cal. 2015) (dismissing infringement claim where plaintiff failed to adequately allege when its common-law trademark priority arose).

---

[2] Additionally, Vampire's own allegations that "*its own warehouse and staff* would often confuse its DRACULA PINOT NOIR . . . with [Vampire's] less expensive DRACULA'S BLOOD PINOT NOIR and sometimes ship" one instead of the other is a fact that *lessens the distinctive strength of its own mark*. Compl. ¶ 77 (emphasis added). This is not an instance of *consumer confusion*, but confusion among Vampire's own personnel; *i.e.*, a matter not of consumer confusion but of failure to select a distinctive brand and failure to train one's own staff.

The same deficiencies exist with respect to VFB's alleged mark THE LEGEND LIVES. Again, VFB alleges no more than that it owns this common-law mark in conclusory fashion. *Id.* ¶ 16. In support, VFB alleges it has garnered rights "[t]hrough substantial use in commerce in connection with the sale of wine, not only in California but throughout the U.S." *Id.* But there is no support for *when* VFB's sales—and therefore its trademark priority—began. Instead, VFB pleads only—vaguely—that it began using THE LEGEND LIVES at the time it began selling wine, but VFB carefully avoids specifics. *Id.* ¶ 35. There are no allegations supporting the amount and scope of VFB's market penetration in THE LEGEND LIVES. Accordingly, VFB cannot sustain any trademark infringement or unfair competition claim to the extent it is based on common-law rights in THE LEGEND LIVES.

Finally, for much the same reasons, VFB's allegations surrounding rights in its unregistered trade dress are insufficient to support its claims. In addition to the requirements to allege priority of use and market penetration for common-law marks generally, to "plead a claim for trade dress infringement, a plaintiff must allege: (1) that its claimed dress is non-functional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Trade dress does not protect "an idea, a concept, or a generalized type of appearance." *Jeffrey Milstein, Inc. v. Gregor, Lawlor, Roth, Inc.*, 58 F.3d 27, 32–33 (2d Cir. 1995). "The concept of 'trade dress' is pliable, but it cannot be stretched to give exclusive rights to a vague and abstract image or marketing theme of a product." 1 McCarthy on Trademarks and Unfair Competition § 8:6 (5th ed.) "'Protection of a marketing approach [as trade dress] under [Lanham Act] section 43(a) would be inconsistent with the goals of our free enterprise system.' While

similar marketing techniques may be considered in comparing the similarity of allegedly conflicting marks, 'it is clear that such techniques are not, in and of themselves, independently protectable.' . . . The Lanham Act is designed to protect specific trademarks, not a generalized marketing practice. *Id.* (citing *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244 (8th Cir. 1990); *Revlon, Inc. v. Jerell, Inc.*, 713 F. Supp. 93 (S.D.N.Y. 1989); *Nature's Way Products, Inc. v. Nature-Pharma, Inc.*, 736 F. Supp. 245 (D. Utah 1990)) (alterations and emphases in original). "The rule that generalized concepts and marketing themes are not protectable property cannot be side-stepped by using the tort of conversion and suing for 'conversion' of a business concept. McCarthy § 8:6 (citing *Aromatique, Inc. v. Gold Seal*, 28 F.3d 863 (8th Cir. 1994) ("Trade dress does not protect one from a competitor's imitation of one's marketing concept."); *Hurst v. Dezer/Reyes Corp.*, 82 F.3d 232 (8th Cir. 1996) (concept and theme for a bar-restaurant could not be "converted" as property apart from traditional trademark law)).

There are no exclusive trademark or trade dress rights in thematic designs and concepts emanating from styles or trends in existence long before a plaintiff's trademark claims. For example, in *Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007), the court held that there were no trade dress protections for designs for decorative tiles described by terms such as "a palette of colors reminiscent of Provence" and "a rustic look." McCarthy § 8:6 (citing *Walker & Zanger*, 549 F. Supp. 2d at 1176 (N.D. Cal. 2007)). The court held that these designs and concepts "fail to prove adequate notice to competitors in the decorative tile business regarding the breadth of plaintiff's exclusivity rights." *Id.* The design was held to be "generic" because it was used by several other competitors in the market to copy "styles that craftsmen have used for centuries." *Id.* "While a product or package may be the embodiment of a new idea or concept, the only candidate for the market exclusivity granted by trade dress protection is the specific embodiment, not the idea or concept itself." McCarthy § 8:6.

To the extent VFB claims trade-dress rights in "illustrations of vampires, vampire bats, and blood" (Compl. ¶ 15) and "coffin shaped boxes . . . vampire capes . . . and . . . blood red capsules" (*Id.* ¶ 16), its allegations do not establish when it began sales featuring this trade dress, the extent and amount of sales, market penetration, or geographic scope. Nor does the Complaint allege that the trade dress is inherently distinctive or has acquired secondary meaning. Accordingly, VFB cannot sustain any trademark infringement or unfair competition claim to the extent it is based on common-law rights in trade dress based on vampires, bats, blood, and related imagery.

Count V alleges Lanham Act unfair competition and trademark infringement under 15 U.S.C. § 1125(a). A claim under § 1125(a) may be based in part on unregistered trademarks. In the allegations specific to this Count, VFB cites its "VAMPIRE Family of Brands" (Compl. ¶ 118) and its DRACULA'S BLOOD common-law mark (*Id.* ¶ 119). But, as explained above, VFB has failed to allege protectable common law rights in its asserted unregistered marks. And, as explained in Section III.C, its VAMPIRE-based claims (to the extent they are based on registered marks) do not plausibly plead likelihood of confusion. Accordingly, Count V must be dismissed in its entirety. For the same reason, Counts VII and VIII must also be dismissed because they are based on the same faulty allegations of common-law trademark rights.

**C.   Counts IV, V, VII, and VIII must be dismissed because VFB has not plausibly alleged a likelihood of confusion between its VAMPIRE marks and Cramele's alleged use of "Bloody Merlot," "Blood Suckers," and "Land Der Vampires"**

Although it can be difficult to parse from the Complaint, VFB appears to allege ownership of roughly ten trademarks. First, it claims registered trademarks in the marks VAMPIRE for wine, chocolate, coffee, olive oil, vinegar, beverage wear, and restaurant and bar services; DRACULA for wine; VAMPYRE for spirits; VAMP H20, for water; and VAMPIRE TACO for tacos. Compl. ¶ 12. Second, VFB claims

-11-

registered trademarks in TASTE OF IMMORTALITY and SIP THE BLOOD OF THE VINE for wine and spirits. *Id.* ¶ 14. Third, it claims the registered trademark FANGRIA. *Id.* ¶ 15. Fourth, from the most generous reading of VFB's complaint, it appears to claim *unregistered*, common-law rights in THE LEGEND LIVES (*Id.* ¶ 16) as well as DRACULA'S BLOOD MERLOT and DRACULA'S BLOOD PINOT NOIR (*Id.* ¶ 77).

In turn, the complained-of conduct relating to Cramele Recas for purposes of VFB's trademark infringement claims relates to Cramele Recas's alleged use of, in sum, BLOODY MERLOT, LAND OF VAMPIRE, LAND OF BLOOD SUCKERS, and BLOODY CABERNET. *Id.* ¶¶ 44–45. VFB's Complaint appears to generally allege that Cramele Recas's use of all of these marks infringes all of VFB's trademark rights referenced above. But no matter which trademark it bases its alleged rights on, VFB cannot state a plausible claim for infringement as to any of Cramele Recas's conduct.

To establish a claim for trademark infringement under the Lanham Act, a plaintiff must demonstrate: "(1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) The "core element of trademark infringement" is "[p]rotecting against a likelihood of confusion," which helps to "ensur[e] that owners of trademarks can benefit from the goodwill associated with their marks" and "that consumers can distinguish among competing producers." *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015).

In analyzing likelihood of confusion, courts utilize the eight-factor test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015). The *Sleekcraft* factors require consideration of the: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of sight, sound, meaning; (4) evidence of actual confusion;

-12-

1   (5) marketing channels; (6) type of goods and purchaser care; (7) intent; and

2   (8) likelihood of expansion. *Sleekcraft*, 599 F.2d at 348–49. The confusion must "be

3   probable, not simply a possibility." *Murray v. Cable Nat. Broadcasting Co.*, 86 F.3d

4   858, 861 (9th Cir. 1996).

5          Pleading a likelihood of confusion is also required to assert state and common

6   law claims for unfair competition and trademark infringement. "Th[e Ninth] Circuit

7   has consistently held that state common law claims of unfair competition and

8   actions pursuant to California Business and Professions Code § 17200 are

9   'substantially congruent' to claims made under the Lanham Act." *Cleary v. News*

10  *Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (dismissing claims for common law

11  unfair competition and unfair competition pursuant to California Business and

12  Professions Code § 17200 where plaintiff failed to establish a likelihood of

13  confusion under the federal trademark law); *Century 21 Real Estate Corp. v.*

14  *Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) ("The ultimate test for unfair

15  competition is exactly the same as for trademark infringement: whether the public is

16  likely to be deceived or confused by the similarity of the marks.").

17         As explained in Section III.A, VFB cannot rely on the VAMPIRE mark for

18  wine or the corresponding '907 Registration because its co-owner is absent from this

19  action. And as explained in Section III.B, VFB has failed to adequately plead

20  ownership of its unregistered, common-law trademarks. Accordingly, its Lanham

21  Act and California infringement claims in Counts IV, V, VII, and VIII may only

22  properly be based on its registered marks: VAMPIRE,[3] DRACULA, VAMPYRE,

23  VAMP H20, VAMPIRE TACO, TASTE OF IMMORTALITY, and SIP THE

24  BLOOD OF THE VINE. Cutting through all of the noise in the Complaint, there is

25

26

27  [3] *Only* in connection with "chocolate and coffee," "Olive oil and Balsamic vinegar," "Restaurant and Bar services," and "Glass beverage-ware," as these pleaded registrations are VFB's only

28  VAMPIRE registrations that it owns without a co-owner, and *not* in connection with "wine." Compl. ¶ 12; *see* § III.A.

-13-

simply no plausible likelihood of confusion between these marks and BLOODY MERLOT or BLOODY CABERNET, or the minor references to LAND DER VAMPIRE or LAND OF BLOOD SUCKERS allegedly appearing on the wine labels at issue in this lawsuit.

Principally, neither VAMPIRE nor DRACULA are confusingly similar to the word BLOODY. Marks are compared for similarity according to their "sight, sound, and meaning." *Brookfield Communications, Inc. v. West Coast. Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). VAMPIRE and DRACULA are neither visually nor phonically similar to BLOODY, sharing no syllables or common sounds. Although BLOODY shares allusions or connotations in relation to Halloween or "spooky" imagery, it cannot be said that the word BLOODY is confusingly similar in meaning to either VAMPIRE or DRACULA. BLOODY plainly refers to blood, the bodily substance; and VAMPIRE and DRACULA refer to the mythical creatures and characters from folklore and popular culture.

This lack of likely is confusion is reinforced by the ample field of BLOOD-formative marks, which weakens the likelihood of confusion further. Even an "arbitrary mark may be classified as weak where there has been extensive third party use of similar marks on similar goods." *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F.Supp.2d 1083, 1091 (C.D.Cal. 2003). "This is known as the 'crowded field' doctrine." *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F.Supp.2d 1214, 1224 (C.D. Cal. 2004) (citation omitted). "In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd." *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1164 (9th Cit. 2009). "[T]hat the marketplace is replete with products using a particular trademarked word" or symbol "indicates not only the difficulty in avoiding its use but also, and directly, the likelihood that consumers will not be confused by its use." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir.2002). There are many examples of BLOOD-formative trademarks

-14-

registered with the USPTO, indicating that consumers can be expected to distinguish between them and not be confused as to source. *See* RJN Ex. 6. To afford VFB a monopoly on all words or designations that are evocative of one of the most pervasive vampire- or Dracula-themed tropes in popular culture would defy the purposes of trademark law.

For much the same reasons, it is not plausible that consumers will confuse SIP THE BLOOD OF THE VINE with BLOODY MERLOT, BLOODY CABERNET, or LAND OF BLOOD SUCKERS. Marks "must be considered in their entirety and as they appear in the marketplace[.]" *Brookfield*, 174 F.3d at 1054. Under "the anti-dissection rule, the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993). VFB's SIP THE BLOOD OF THE VINE mark, *as an un-dissected phrase*, conveys an entirely different overall commercial impression than the simple word BLOODY. Further, "the first part of a mark . . . is most likely to be impressed upon the mind of a purchaser and remembered." *Color Image Apparel, Inc. v. Honey*, 2006 WL 8434610 (C.D. Cal. Aug. 23, 2006) (citation omitted). The dominant first word of VFB's mark is SIP, and is therefore readily distinguishable from both BLOODY and LAND OF BLOOD SUCKERS.

Finally, VFB has alleged that Cramele Recas has used the phrase "LAND OF VAMPIRE." Compl. ¶¶ 44, 63, 65, 71, 75. VFB's own evidence, incorporated by reference into the Complaint, does not support its allegations—each cited instance shows use of the phrase "LAND DER VAMPIRE." *Id.*, Exs. 4, 11, 12, 14–16. Regardless of the language used, consumer confusion is not plausible because the meaning of the phrase LAND OF or DER VAMPIRE refers to a *place*, either fictional or real, rather than the distinct reference of an actual vampire, without even considering that this phrase is used in smaller letters on the wine bottles at issue in this lawsuit. So VFB has failed to plead a plausible likelihood of confusion.

"If the pleadings show that confusion between the alleged infringing term and the registered trademark is unlikely, the claim for infringement should be dismissed." *Murray v. Cable NBC*, 86 F.3d 858, 860 (9th Cir.1996). Courts facing similar facts have reached the same conclusion. *See, e.g., JL Beverage Co., LLC v. Beam, Inc.*, 899 F. Supp. 2d 991 (D. Nev. 2012) (denying preliminary injunction where plaintiff asserted trademark rights in JOHNNY LOVE VODKA and a design of lips, finding that defendant's use of PUCKER and a similar but non-identical lip design was not likely to be held infringing because plaintiff's mark lacked conceptual strength in a crowded field, marks sounded nothing alike and used different fonts and colors, and the lips designs were distinguishable); *Marvel Enter., Inc. v. NCSoft Corp.*, 2005 WL 878090 at *4 (C.D. Cal. Mar. 9, 2005) (Klausner, J.) (dismissing claim for trademark infringement finding no plausible likelihood of confusion between STATESMAN and CAPTAIN AMERICA); *Mintz v. Subaru of Am., Inc.*, 2016 WL 5909360 at *1–2 (N.D. Cal. Oct. 11, 2016) (dismissing claim for trademark infringement finding no plausible likelihood of confusion between SHARE THE LOVE and A WORLD OF LOVE). Accordingly, VFB's trademark-infringement claims, Counts IV, V, VII, and VIII, must be dismissed for failure to state a claim under Rule 12(b)(6).

### D. Count VI must be dismissed because VFB has not adequately pled fame sufficient to support a dilution claim

Relief for dilution by blurring or tarnishment is available only for a plaintiff who owns "a famous mark that is distinctive, inherently or through acquired distinctiveness" against a defendant whose use occurred "after the owner's mark has become famous." 15 U.S.C. § 1125(c)(1). A mark is famous for dilution purposes "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A). The factors a court may consider in determining dilution fame include:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.* The famousness prong of the claim is meant to "carefully [limit] the class of trademarks eligible for dilution protection." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). "[A] mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way, the mark must be a household name." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002).

Regarding dilution fame, VFB alleges no more than that its VAMPIRE wine "and related Vampire Family of Brands" have appeared on a number of television programs and in a number of magazines and newspapers. Compl. ¶ 127. The nature and dates of these publications are not described. Crucially, these allegations do not allege facts that speak to *wide recognition by the general consuming public* of the VAMPIRE brand. And, equally as fatal, VFB fails to allege *when* its mark became famous and therefore cannot allege that any infringing use by Cramele occurred after such point. This falls well short of the threshold required by courts to state a claim for dilution. A complaint that alleged that 1) 60 million users had downloaded plaintiff's app globally, and 20 million in the US; 2) plaintiff had marketed its app throughout the US; 3) plaintiff's app was used by celebrities; and 4) plaintiff's app generally received media mentions in *The New York Times*, *The Washington Post*, and *Huffington Post*, among others was held insufficient to plead fame and therefore dilution generally. *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) ("Crucially, however, ArcSoft does not allege when any of these things occurred—i.e., before or after February 2014. Nor does it allege any details

-17-

regarding its advertising or promoting of the Perfect365 Mark, or the particular contexts in which the Perfect365 Mark appeared in the various publications."); *see also Aegis Software, Inc. v. 22nd Dist. Ag. Ass'n.*, 255 F. Supp. 3d 1005, 1009–10 (S.D. Cal. 2017) (complaint which alleged media mentions generally, sales which did not extend far beyond California, and celebrity endorsements fails to establish fame for dilution purposes).

Accordingly, Count VI must be dismissed in its entirety.[4]

### E. VFB's requests for punitive damages in Counts IV through VII are insufficiently pleaded and unjustified, and must be dismissed

In its trademark-infringement claims against Cramele Recas, both under the Lanham Act and California law, VFB asserts it is entitled to punitive damages under Cal. Civ. Code § 3294. Compl. ¶¶ 116, 124, 137, Prayer for Relief 7. VFB's prayer for punitive damages is unsupported both by its factual allegations and by the law, and accordingly these claims must be dismissed in part.

First, it is established law in the Ninth Circuit that punitive damages are not appropriate in Lanham Act cases. *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 200 n.1 (9th Cir. 1989); *Binder v. Disability Grp, Inc.*, 772 F. Supp. 2d 1172, 1183 ("Punitive damages are not available under the Lanham Act.") (citing 5 McCarthy on Trademarks and Unfair Competition § 30:97). Accordingly, this remedy does not lie in VFB's Counts IV, V, and VI, and those claims for punitive damages must be dismissed.

Second, under Count VII, the California-law claim for unfair competition based on Cal. Bus. & Prof. Code § 17200, VFB has not pled sufficient facts to

---

[4] After the parties' LR 7-3 conference in advance of this Motion, counsel for Vampire represented to Cramele Recas that it would withdraw Count VI from the Complaint. Accordingly, Cramele Recas expects that Vampire will not oppose this portion of the Motion as the most expedient way to dispose of the claim as opposed to a further amended complaint under Rule 15.

establish entitlement to punitive damages under Cal. Civ. Code § 3294. To sufficiently plead entitlement to punitive damages, a plaintiff must allege facts demonstrating that defendants are guilty of "oppression, fraud, or malice." § 3294(a). "Malice" is conduct that is intended to cause harm or "despicable" conduct carried on with a conscious disregard for the rights of others. § 3294(c)(1). "Oppression" is also despicable conduct, and it must subject a person to cruel and unjust hardship in conscious disregard for the person's rights. § 3294(c)(2). "Used in its ordinary sense, the adjective 'despicable' is a powerful term that refers to circumstances that are 'base,' 'vile,' or 'contemptible." *Coll. Hosp., Inc. v. Super. Ct.*, 8 Cal. 4th 704, 725 (1994). "Fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant" intended to deprive a person or property or rights or cause injury. Cal. Civ. Code § 3294(c)(3).

For punitive damages, there must be more than the commission of a tort. *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 328 (1992). In the case of California common law unfair competition claims, a defendant must have acted in conscious disregard for the rights of another. *Chronicle Pub. Co. v. Legrand*, 1992 WL 420808 at *3 (N.D. Cal. Sept. 3, 1992); *see also id*. at n.5 ("it appears to the Court that only passing-off cases should give rise to punitive damage claims").

VFB does not sufficiently allege any conduct by Cramele Recas that is "vile," "base," "contemptible," or fraudulent. Indeed, VFB's allegations against Cramele Recas, read in the most light most favorable to the plaintiff, amount to no more than that Cramele Recas used a confusingly-similar designation on its wine products. These allegations fall far short of those required under the high bar of Cal. Civ. Code § 3294. Accordingly, VFB's prayer for punitive damages must be dismissed in its entirety as against Cramele Recas in Counts IV through VII.

**F.    Count II must be dismissed because VFB has not alleged a breach of the covenant of good faith and fair dealing separate and apart from breach of contract**

In support of Count II (which is brought only against Cramele Recas), VFB alleges that "Defendants collectively conspired to utilize Plaintiff's VAMPIRE mark on beverages by selecting a term (i.e. BLOOD SUCKER . . .) to attempt to frustrate Plaintiff's enjoyment of rights under the Contract." Compl. ¶ 98. This conduct cannot form the basis of a breach of the implied covenant of good faith and fair dealing under California law because it is substantially the same conduct that VFB alleges constitutes a breach of the Stipulated Judgment.

> Allegations which assert such a claim must show that the conduct of the defendant … demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. …

> If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.

*Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395–96 (1990); *see also Shaterian v. Wells Fargo Bank*, 829 F. Supp. 2d 873, 884 (N.D. Cal. 2011). The claim "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093–94 (2004). Furthermore, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 2 Cal. App. 4th 342, 373 (1992).

In Count I, VFB alleges that Cramele Recas breached the Stipulated Judgement by using the word VAMPIRE, using the phrase BLOOD SUCKERS, and

-20-

by otherwise implying that Cramele Recas's products were authorized, sponsored, or endorsed by VFB. Compl. ¶¶ 88–89. Count II, therefore, is based on the *exact same* conduct as Count I to the extent it arises from use of the phrase BLOOD SUCKER, with the implication that such use is improperly similar to VFB's VAMPIRE mark. The dubious additional allegation—that "Defendants collectively conspired" in this conduct—is meaninglessly vague and does not describe any actionable conduct beyond the actual use of the phrase BLOOD SUCKER. In any case, alleging a conspiracy to breach the covenant makes no sense in the present context, where Count II is asserted *only against* Cramele Recas. Under California law, because "a party to a contract owes no tort duty to refrain from interference with its performance, he or she cannot be bootstrapped into tort liability by pejorative plea of conspiracy." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 454, 514 (1994).

Count II cannot be saved by reframing it as an alternative claim for relief should the breach of contract claim fail. VFB's allegations supporting breach of the Stipulated Judgment concern that contract's provisions which prohibit Cramele Recas from using VAMPIRE, similar VAMP-formative words, and "any other word or words or marks which are **confusingly similar to**, or a **colorable imitation of**"[5] those words. Compl. ¶ 88; Ex. 1, § I.A.1.a (emphasis added). If it is ultimately determined that Cramele Recas's use of the word BLOOD SUCKER is not confusingly similar to or a colorable imitation of VAMPIRE, the breach of contract claim must fail as to that conduct because Cramele Recas will not have violated any term of the agreement. With that result, there is then logically no theory under which

---

[5] Under trademark law, there is no meaningful difference between "confusingly similar" and "colorable imitation." "The term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127. The leading authoritative trademark treatise describes the term as an "archaic synonym for 'likelihood of confusion.' . . . 'Colorable imitation' is sometimes used in contracts and consent decrees as shorthand for likelihood of confusion." 4 McCarthy on Trademarks and Unfair Competition § 23:76 (5th ed.).

use of BLOOD SUCKER would "frustrate Plaintiff's enjoyment of rights" in the Stipulated Judgment. *Id.* ¶ 98.

The rights that VFB may enjoy from the Stipulated Judgment cannot in any case extend further than its object: settlement of 2006 litigation in this Court *for trademark infringement* between Cramele Recas and TI Beverage (VFB's alleged predecessor). Compl. ¶¶ 37–38; *Careau*, 222 Cal. App. 3d at 1395 (the claim covers conduct which "unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party"). VFB specifically contracted in the Stipulated Judgment to preclude certain trademark-related conduct by Cramele Recas, and not others. Trademark infringement, in turn, operates fundamentally on the "core element" of likelihood of consumer confusion. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010). If Cramele Recas's conduct is *not confusingly similar to* or a colorable imitation of— the precise language to which VFB agreed—the VAMPIRE mark, there can be no harm to TI Beverage and therefore no frustration of its enjoyment of the Stipulated Judgment. VFB's claim for breach of the covenant of good faith and fair dealing is simply a backdoor effort to re-draft the scope of disallowed and allowed conduct under the Stipulated Judgment. Accordingly, it must be dismissed.

### G. If the Court dismisses VFB's Lanham Act claims, VFB's state-law claims should be dismissed for lack of subject matter jurisdiction

With no federal-law claims remaining should the Court dismiss VFB's Lanham Act claims in Counts IV, V, and VI in whole, this Court will then lack subject-matter jurisdiction over VFB's remaining claims, which all arise under state law. Without federal-law claims, arising out of trademark or otherwise, VFB cannot assert that this Court has federal-question jurisdiction under 28 U.S.C. § 1331 or § 1338(a). VFB's remaining assertion for subject-matter jurisdiction arises under the Court's supplemental ("pendent") jurisdiction and diversity jurisdiction. Compl. ¶¶ 2–3; 28 U.S.C. § 1332. If the Court dismisses the federal claims, the Court should

1  naturally decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

2  *Ismail*, 936 F. Supp. 2d at 1168–69 (absent "extraordinary or unusual

3  circumstances," courts should dismiss state-law claims after dismissing all federal

4  claims). And, having joined Bracus Imports, LLC ("Bracus") as a defendant to this

5  action, VFB has failed to carry its burden to allege that the parties are diverse in

6  citizenship.

7         Diversity jurisdiction requires that all plaintiffs be of different citizenship than

8  all defendants, and joinder of a single non-diverse party "contaminates" a complaint

9  in its entirety. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 561–62

10  (2005). Bracus, according to VFB's own Complaint, is a California limited liability

11  company with its principal place of business in Richmond, California. Compl. ¶ 7.

12  VFB itself is a Delaware limited liability company with its principal place of

13  business in Los Angeles County, California. *Id.* ¶ 4. For diversity purposes, the

14  citizenship of an unincorporated association such as an LLC is determined by the

15  citizenship of its owners or members. *Americold Realty Trust v. Conagra Foods,*

16  *Inc.*, 136 S. Ct. 1012, 1015 (2016); *Johnson v. Columbia Props. Anchorage, LP*, 437

17  F.3d 894, 899 (9th Cir. 2006). The burden of establishing the Court's jurisdiction

18  falls on the party asserting diversity—here, VFB. *Kanter v. Warner-Lambert Co.*,

19  265 F.3d 853, 857–58 (9th Cir. 2001). In order to properly plead diversity

20  jurisdiction in a case where the parties include LLCs, "the citizenship of all the

21  members must be pled." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 611 (9th Cir.

22  2016); *Kanter* 265 F.3d at 858 (failure to allege citizenship is "fatal to . . . assertion

23  of diversity jurisdiction"). VFB's Complaint does not identify any of the members

24  or owners of Vampire Family Brands, LLC. VFB does allege the identity of two

25  *managers* of Bracus Imports LLC, but fails to allege their individual citizenship or

26  indeed whether they are also owners or members. Compl. ¶ 8[6]. Accordingly, VFB

27  _____

28  [6] Exhibit 2 to the Complaint, a California Secretary of State Statement of Information for Bracus,

-23-

17346597.1

1   has failed to carry its burden of establishing subject-matter jurisdiction absent any
2   federal claims.

3          The fact that VFB may allege that Cramele Recas consented to this Court's
4   jurisdiction, or waived any jurisdictional objection, to enforce the Stipulated
5   Judgment cannot sidestep this fundamental defect created by the joinder of Bracus.
6   Parties may not contract around the foundational jurisdictional bounds of federal
7   courts. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) ("Subject matter
8   jurisdiction cannot be established by consent of the parties, and a lack of subject
9   matter jurisdiction is a non-waivable defect."). VFB brought an action sounding in
10  *breach of contract* (a state-law claim). Accordingly, based on the lack of sufficient
11  allegations in the Complaint related to the parties' diversity of citizenship, the state-
12  law claims must necessarily be dismissed following dismissal of VFB's Lanham Act
13  claims pursuant to Fed. R. Civ. P. 12(b)(1).

14  **IV.   Conclusion**

15         For the reasons stated above, the Court should dismiss Counts IV and V to the
16  extent they rely on U.S. Reg. No. 2263907 for failure to join an indispensable co-
17  plaintiff, and Count V to the extent it relies on common-law rights to the mark
18  VAMPIRE'S BLOOD. The Court should also dismiss Counts II, IV, V, VI, VII, and
19  VII from VFB's Complaint for failure to plausibly plead likelihood of confusion,
20  fame for dilution purposes, and a breach of the covenant of good faith and fair
21  dealing, as well as VFB's prayer for punitive damages. And, if the Court dismisses
22  Counts IV, V, and VI as requested, the Court should then dismiss the remainder of
23  VFB's claims for lack of subject-matter jurisdiction.

24

25  lists two trustees and two individuals  as *either* managers or members of Bracus, without
    specification.  A manager of a California LLC is not necessarily also a member or owner, but,
26  more importantly,  the addresses listed on this form are insufficient to establish *citizenship* for
    diversity purposes.  *See 91 Enter., LLC v. Body Frenzy, Inc.*, 2018 WL 6787348 (C.D. Cal. Oct.
27  24, 2018) (remanding case to state court where removing party's only allegation of diversity was
    based on mailing addresses contained in LLC Statement of Information); *Doppes v. Calif. Scents,*
28  *LLC*, 2018 WL 3583052 (C.D. Cal., Jul. 25, 2018) (same).

-24-

1

2  DATED:  March 10, 2021                  Respectfully submitted,

3                                          HANSON BRIDGETT LLP

4

5

6                                   By:      /s/ Justin P. Thiele

7                                          RAFFI V. ZEROUNIAN
                                           JUSTIN P. THIELE
8                                          Attorneys for Defendant S.C. Cramele
                                           Recas, S.A.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28