HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
777 S. Figueroa Street, Suite 4200
Los Angeles, California 90017
Telephone:  (213) 395-7620
Facsimile:   (213) 395-7615

Attorneys for Defendant S.C. Cramele
Recas, S.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Vampire Family Brands, LLC, | Case No. 2:20-cv-8223-VBF-PVC |
| Plaintiff, | **Reply Memorandum in Support of Defendant S.C. Cramele Recas, S.A.'s Motion to Dismiss First Amended Complaint** |
| v. | |
| S.C. Cramele Recas, S.A., Tri-Vin Imports, Inc., Bracus Imports LLC and Does 1–20, | Judge:   Hon. Valerie A. Fairbank |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.    Introduction ...................................................................................1

II.   The Court Should Grant Cramele Recas's Motion.......................3

    A.    VFB belatedly cured its failure to join a necessary and indispensable party only after Cramele Recas's Motion ....................3

    B.    VFB's infringement claims are not plausibly pled ............................3

        1.    VFB has evidently abandoned all claims to common-law rights in the marks DRACULA'S BLOOD, THE LEGEND LIVES, or its alleged trade dress for Counts V, VII, and VIII.........................................................................3

        2.    VFB has not shown that its claims of infringement of its VAMPIRE mark are plausibly pled .......................................4

    C.    VFB concedes dismissal of its dilution claim..................................4

    D.    VFB identifies no breach of the covenant of good faith and fair dealing separate and apart from breach of contract, because there is no contractual purpose other than avoiding likelihood of confusion.....................................................................................5

    E.    VFB offers no legal basis for its claim for punitive damages under the California-law claim .......................................................7

    F.    The Court should grant the Motion with prejudice and deny leave to amend .....................................................................................8

III.  Conclusion .....................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
    545 F.3d 733 (9th Cir. 2008) ...................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................8

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
    2 Cal. 4th 342 (1992)..............................................................................6

*Cobb v. Ironwood Country Club*,
    233 Cal. App. 4th 960 (2015) ..................................................................6

*Ducre v. Veolia Trans.*,
    2010 WL 11549862 (C.D. Cal. June 14, 2010) (Morrow, J.) ...........................8

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................8

*Getty Petrol. Corp. v. Island Transp. Corp.*,
    862 F.2d 10 (2d Cir. 1988) ......................................................................8

*Griffin v. Green Tree Servicing, LLC*,
    166 F.Supp.3d 1030, 1054–55 (C.D. Cal. 2015) (Morrow, J.) .........................4

*Guz v. Bechtel Nat'l Inc.*,
    24 Cal.4th 317 (2000)..............................................................................7

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013)...................................................................3

*IV Solutions, Inc. v. Connecticut Gen. Life Ins. Co.*,
    2014 WL 12603215, at *6 (C.D. Cal. 2015)..............................................6, 7

*Longest v. Green Tree Servicing LLC*,
    74 F. Supp. 3d 1289, 1301 (C.D. Cal. 2015) ...............................................7

*Monster Energy Co. v. Integrated Supply Network, LLC*,
    821 Fed.Appx. 730 (9th Cir. 2020)............................................................8

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013)........................................................................9

*Schreiber Distrib. Co. v. Serv–Well Furniture Co.*,
  806 F.2d 1393 (9th Cir.1986).........................................................................8

**Statutes**

Cal Civ. Code § 3294(a)...................................................................................7

## I.      Introduction

VFB's First Amended Complaint (Dkt. 27, "Complaint") contains roughly 18 pages of salient factual allegations, both a laundry list of VFB's asserted trademarks and a panoply of complained-of conduct by Cramele Recas in various forms. Complaint 4–22. Cramele Recas moves to dismiss the entirety of the complaint, both the various trademark infringement claims and the ancillary contract and tort claims. Dkt 35 ("Motion").

In its Opposition (Dkt. 38, "Opposition" or "Opp."), VFB has apparently conceded the following:

- VFB failed at the outset to join a necessary and indispensable party, and only belatedly corrected the issue by executing a corrective assignment in response to the Motion;

- VFB has not stated a claim for trademark dilution (Count V), which plaintiff decided to add when it amended its complaint the first time;

- VFB has not adequately alleged common law rights in its common-law marks or trade dress; and

- VFB has not stated a claim for punitive damages under the Lanham Act.

Further, cutting through all the noise, VFB's Opposition reveals that the trademark-infringement component of this action really concerns only 1) VFB's VAMPIRE trademark, as specifically represented by U.S. Reg. No. 2263907; and 2) the alleged use by Cramele Recas of the phrases "Land of Vampires" and "Land of Bloodsuckers." Nowhere does VFB defend its alleged marks DRACULA, VAMPYRE, VAMP H20, VAMPIRE TACO, TASTE OF IMMORTALITY, SIP THE BLOOD OF THE VINE, FANGRIA, THE LEGEND LIVES, DRACULA'S BLOOD MERLOT, or DRACULA'S BLOOD PINOT NOIR. Nor does VFB specifically address Cramele Recas's alleged used of the phrase "Bloody Merlot" and take the position that use of that phrase is infringing. Indeed, VFB refers to Cramele Recas's arguments on confusion based on VFB's common-law marks as a

1   "red-herring." That comes as a surprise to Cramele Recas considering that VFB
2   devoted significant space in its Complaint to alleging likelihood of confusion with
3   its menu of asserted marks. VFB does not devote any space in its Opposition to
4   defend the validity or enforceability of its asserted common-law trademark rights,
5   and does no more than assert, as a conclusory afterthought, that it has pleaded trade-
6   dress infringement. Cramele Recas has no desire to spend more of its resources
7   arguing against claims than VFB cares to spend pursuing them.

8   Further, VFB's arguments to save its claim for breach of the covenant of good
9   faith and fair dealing amount to nothing more than hand waving. VFB has not
10  identified the particular purpose or benefit of the Stipulated Judgment that Cramele
11  Recas could have frustrated if its conduct did not constitute breach of contract. That
12  is because VFB cannot do so, because there is no purpose to the Stipulated
13  Judgment other than avoiding trademark infringement.

14  VFB's remaining ancillary claims have either been conceded as improperly
15  pled or insufficiently defended. VFB, consistent with its pre-Motion representations,
16  has not opposed dismissal of its dilution claim; but it is important to note that the
17  claim would be subject to dismissal even without VFB's consent. Likewise, VFB
18  has conceded to dismissal of its claims for punitive damages under its Lanham Act
19  claims. In defending its claims for punitive damages under California-law claims,
20  VFB offers no more than the observation that such damages "are available" under
21  the law—without identifying allegations in the Complaint that sufficiently establish
22  the statutory elements necessary to show entitlement to such relief.

23  VFB again conceded that Cramele Recas's Motion is meritorious by filing a
24  clean-up assignment to rectify its failure to join a necessary and indispensable party
25  two weeks after the Motion. Cramele Recas regrets that motion practice was
26  necessary to resolve this issue, but nevertheless withdraws that portion of its
27  Motion. For the reasons stated herein, however, the Court should grant the
28  remainder of the Motion.

## II.   The Court Should Grant Cramele Recas's Motion

### A.   VFB belatedly cured its failure to join a necessary and indispensable party only after Cramele Recas's Motion

In light of VFB's eleventh-hour assignment of the entire interest in its VAMPIRE trademark to itself (Opp., Ex. 1), Cramele Recas will no longer pursue its Motion to dismiss Counts IV through VIII to the extent they rely on the VAMPIRE mark under Fed. R. Civ. P. 12(b)(7).[1]

### B.   VFB's infringement claims are not plausibly pled

#### 1.   VFB has evidently abandoned all claims to common-law rights in the marks DRACULA'S BLOOD, THE LEGEND LIVES, or its alleged trade dress for Counts V, VII, and VIII

VFB has decided not to defend its infringement claims to the extent they are based on its asserted common-law trademarks and trade dress, as it has not substantively addressed the issue in its Opposition. VFB's only reference to the issue comes as an afterthought: "Defendants' arguments at the alleged lack of confusion between defendants' accused product and VFB's common law marks is nothing more than a red-herring." Opp. 19. At best, this argument misses the point— VFB's claims of infringement of its common-law marks are subject to dismissal because it has not *sufficiently alleged ownership of those marks and priority*, which is of course a necessary first step *before* deciding likelihood of confusion. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (to plead trademark infringement, a plaintiff must establish that it is "the owner of a valid, protectable mark"). At worst, VFB has dismissively acknowledged that much of its Complaint is largely superfluous and immaterial, as it is devoted to "red

---

[1] But VFB is incorrect that Cramele Recas's Rule 12(b)(7) Motion was "based on the false assertion that VFB is not the sole owner of the registration." Opp. 9. Cramele Recas was entirely *correct* that the VAMPIRE mark was owned by two parties both as of the date of the filing of this action and of the Motion. Indeed, VFB inherently conceded the issue by filing an assignment with the USPTO on March 24, 2021, two weeks *after* the Motion. If it was not true that VAMPIRE had two owners, then VFB's last-minute corrective assignment is inexplicable.

herrings," and violates the requirement that pleadings be "short and plain" statements of entitlement to relief. Fed. R. Civ. P. 8(a). VFB expressly cited the purported DRACULA'S BLOOD mark as a basis for its infringement claim under Count V. Complaint ¶ 119.

For the reason alone that VFB has not substantively opposed this part of the Motion, Counts V, VII, and VIII may be dismissed by the Court as abandoned to the extent they rely on these alleged common-law trademark rights. *Griffin v. Green Tree Servicing, LLC*, 166 F.Supp.3d 1030, 1054–55 (C.D. Cal. 2015) (Morrow, J.). But they are also subject to dismissal because, as explained in the Motion, VFB has failed to plead seniority of use or market penetration for its marks DRACULA'S BLOOD, THE LEGEND LIVES, or its alleged trade dress. *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014).

> 2.   VFB has not shown that its claims of infringement of its VAMPIRE mark are plausibly pled

Now, narrowed by apparent concession, VFB addresses at length only the following claim: that VFB's VAMPIRE trademark for wine is plausibly infringed due to a likelihood of confusion with Cramele Recas's alleged use of "Land of Vampires" and "Land of Bloodsuckers." Opp. 8–17. The crux of VFB's claim must be based on the alleged argument that "vampire" is the equivalent of "bloodsucker," such that the marks are "the same." *Id.* 12–13. VFB's trademark infringement cause of action has not been plausibly claimed, and the only facts cited by VFB from its pleading to support this conclusion is that VFB also offers "Sip the Blood of the Vine" and other marks. *Id.* But evidence that VFB offers a certain collection of products is not a fact that tends to show that consumers are likely to be confused.

## C.   VFB concedes dismissal of its dilution claim

VFB has not opposed dismissal of Count VI, its claim for trademark dilution. Opp. 7. The Court may dismiss claims that a plaintiff neglects to defend against a motion to dismiss as abandoned. *Griffin*, 166 F.Supp.3d at 1054–55. VFB's

gratuitous statements in its Opposition that it "believes it can make out a claim for dilution" cannot be squared with the face of the operative Complaint, which objectively failed to plead fame amongst the general consuming public that arose at a date prior to Cramele Recas's activities. *See* Motion 16–18. Regardless of VFB's consent, Count VI was subject to dismissal because it legally failed to state a claim. The Court's dismissal of this claim should be with prejudice.[2]

### D. VFB identifies no breach of the covenant of good faith and fair dealing separate and apart from breach of contract, because there is no contractual purpose other than avoiding likelihood of confusion

VFB's defense of Count II is based on a logical fallacy. Count II, VFB argues, is an alternative claim that may create liability for use of the phrase "land of bloodsuckers," should the Court determine such use is not expressly prohibited by the Stipulated Judgment, because that use would violate the "purpose of the contract." But VFB conspicuously omits in its Opposition *what* the purpose of the Stipulated Judgment *specifically* is, and how it would have been violated by the conduct alleged in the Complaint—or what benefits of the contract Cramele Recas denied to VFB. This is because VFB cannot acknowledge the flaw in its reasoning: if two word, designs, or other marks are not confusing similar, then there is no legally-recognizable *harm* to the senior user. VFB comes close to recognizing this point when it characterizes the term "bloodsuckers" as "obviously meant to convey the term 'vampire.'" Opp. 18. Similarity in sight, sound, and meaning is the core analysis for determining confusing similarity of two marks. [cite] If "bloodsuckers" conveys to consumers "vampire," then VFB may arguably have been harmed in the

---

[2] VFB complains that Cramele Recas would not consent to a second amended complaint for the purpose of dismissing this claim. Opp. 1. Because, as a result of the parties' meet and confer, VFB did not agree to withdraw anything other than its dilution and Lanham Act punitive damages claims, a further amended complaint would only delay proceedings needlessly because Cramele Recas would have been compelled to move to dismiss a second amended complaint anyway. Cramele Recas has no interest in remaining in a pleading limbo after VFB already amended its complaint once.

1  form of trademark infringement based on likelihood of confusion. But use of
2  *confusingly similar* marks is expressly what VFB contracted to forbid in the
3  Stipulated Judgment. There simply is no room within the unwritten penumbra of the
4  Stipulated Judgment for *another* purpose that would give rise to a breach of the
5  covenant of good faith and fair dealing—and, indeed, VFB has identified none. To
6  allow otherwise would grant VFB a monopoly on all blood-related or phlebotomic
7  terms well beyond what was contracted for in the Stipulated Judgment.

8       VFB's characterization of the cases cited in its brief does not save the claim.
9  First, VFB attempts to color Cramele Recas's alleged conduct as an exercise of
10 discretionary power granted to it by VFB. Opp. 17–18; *Cobb v. Ironwood Country*
11 *Club*, 233 Cal. App. 4th 960, 966 (2015) (quoting *Carma Developers (Cal.), Inc. v.*
12 *Marathon Development California, Inc.*, 2 Cal. 4th 342, 372 (1992)). This is
13 incorrect. The Stipulated Judgment did not grant Cramele Recas discretion to
14 operate its business in the manner it sees fit; rather, Cramele Recas inherently
15 possesses this power circumscribed only by the express, agreed limitations of the
16 Stipulated Judgment. There is no preclearance requirement in the Stipulated
17 Judgment, nor any clause purporting to invest Cramele Recas with any discretionary
18 power. VFB's citations do not support a different conclusion. *Cobb*, 233 Cal. App
19 4th at 965–66 (finding violation of covenant where country club, which was *granted*
20 by contract the right to enact club bylaws, used its discretion to retroactively enact
21 an oppressive arbitration bylaw); *Carma*, 2 Cal. 4th at 372 (considering and
22 concluding that landlord's exercise of a recapture clause in commercial lease, a
23 contract term that *granted* the landlord certain discretion, was *not* a violation of
24 good faith and fair dealing).

25      Second, the claim for breach of the covenant of good faith and fair dealing
26 cannot be employed automatically on an alternative basis for any situation in which
27 a plaintiff "cannot prove that the contract was breached." Opp. 18. VFB grossly
28 oversimplifies its case law supporting this point. In *IV Solutions, Inc. v. Connecticut*

*Gen. Life Ins. Co.*, the court did not simply allow the plaintiff's claim for breach of the covenant to survive a motion to dismiss because of a blanket rule that such claims are *always* not duplicative with breach of contract; rather, the court specifically identified that "Plaintiff's breach of the covenant of good faith and fair dealing claim alleges that the breach of the covenant is the lengthy *delay* in adjudicating the claims, not Defendant' ultimate *failure to pay* the claims," in an insurance dispute. 2014 WL 12603215, at *6 (C.D. Cal. 2015). Again, VFB has identified no theory under which Cramele Recas's conduct frustrates the purpose of the Stipulated Judgment other than by use of a *confusingly similar* word, and its case law arises from dissimilar situations. *See also Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1301 (C.D. Cal. 2015) (in an insurance dispute, finding that separate covenant claim survived motion to dismiss because plaintiffs alleged that defendants exercised their discretion to pick affiliated insurance companies as a form of self-dealing); *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 353 n.18 (2000) (affirming dismissal and commenting, in dicta, of hypothetical situations in which the covenant *may* apply to *employment* contracts).

So Count II should be dismissed.

**E.     VFB offers no legal basis for its claim for punitive damages under the California-law claim**

VFB acknowledges that it has agreed to withdraw its claims for punitive damages under the Lanham Act because such relief is not available and it mistakenly copy-and-pasted the relevant text into Counts IV and V. Opp. 7. But, VFB maintains, it has adequately pleaded its entitlement to punitive damages under its *California*-law claim. *Id.*, 8. This, VFB argues, because "Punitive damages are also available for state trademark infringement claims." *Id.* But this is not enough. VFB has not opposed the substance of Cramele Recas's Motion on this point: that VFB has failed to plead the statutory elements of oppression, fraud, or malice in connection with Count VII. Cal Civ. Code § 3294(a). It is not sufficient that such

1   damages "are available"; a plaintiff must plead facts showing an entitlement to

2   them. *Ducre v. Veolia Trans.*, 2010 WL 11549862 at *5 (C.D. Cal. June 14, 2010)

3   (Morrow, J.) (federal courts must analyze allegations supporting California-law

4   punitive damages claims under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

5       The only authority cited by VFB in support of its argument provides no more

6   than that punitive damages are theoretically available.  None of these cases hold that

7   a plaintiff is free from pleading the elemental facts showing entitlement to such

8   relief. *Getty Petrol. Corp. v. Island Transp. Corp.*, 862 F.2d 10, 14 (2d Cir. 1988)

9   (after jury trial on infringement, remanding to district court to determine whether

10  "plaintiff proved any non-Lanham Act claims for which punitive damages would be

11  available under New York law"); *Monster Energy Co. v. Integrated Supply Network,*

12  *LLC*, 821 Fed.Appx. 730, 734 (9th Cir. 2020) (remanding to district court to vacate

13  punitive damages award, after jury trial, where jury failed to award prerequisite

14  actual damages). Accordingly, *all* of VFB's claims for punitive damages against

15  Cramele Recas, both under the Lanham Act in Counts IV and V and under

16  California law in Count VII, should be dismissed.

17  **F.     The Court should grant the Motion with prejudice and deny leave**
        **to amend**

18

19      VFB has already amended its complaint once, after Cramele Recas previously

20  met and conferred concerning defects in its original pleading and after Defendant

21  Tri-Vin Imports, Inc. ("Tri-Vin") moved to dismiss the original complaint. Dkt. 23.

22  Leave to amend may be denied if a court determines that "allegation of other facts

23  consistent with the challenged pleading could not possibly cure the deficiency."

24  *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th

25  Cir.1986). Leave to amend may also be denied for repeated failure to cure

26  deficiencies by previous amendment. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d

27  733, 742 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). To

28  show entitlement to leave to file a successive amended complaint, a plaintiff must

specifically outline the facts it could allege to cure the defects after a motion to dismiss is granted. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A plaintiff may not in substance say 'trust me,' and thereby gain a license for further amendment when prior opportunity to amend had been given."). VFB has not explained how it could cure the Complaint's defects in conjunction with its request for further leave to amend. Opp. 20. Accordingly, the Court should grant Cramele Recas's Motion with prejudice and without leave to amend.

## III.   Conclusion

Because VFB has not opposed the relevant parts of Cramele Recas's Motion, the Court may dismiss the following claims as abandoned: Count IV for trademark dilution; and Counts V, VII, and VIII to the extent they are based on common-law rights in the marks DRACULA'S BLOOD, THE LEGEND LIVES, or *any* unregistered trade dress. Additionally, VFB's claims for punitive damages under the Lanham Act may be dismissed, in Counts IV and V, may be dismissed as conceded and legally impermissible.

Cramele Recas further respectfully requests the Court also dismiss Count II because VFB has failed to plead a breach of the covenant of good faith and fair dealing; Counts IV, V, VII, and VIII for trademark infringement because VFB has not plausibly alleged a likelihood of confusion; and VFB's plea for punitive damages in Counts VII and VIII. The dismissal should be with prejudice and without leave to amend.

1    DATED:  April 7, 2021                    HANSON BRIDGETT LLP

2

3

4                                             By:      /s/ Justin Thiele
                                                      RAFFI V. ZEROUNIAN
5                                                     JUSTIN P. THIELE
                                                      Attorneys for Defendant S.C. Cramele
6                                                     Recas, S.A.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28